Case 11-40155    Filed 09/19/11    Doc 48

FILED
September 19, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003777441

Timothy M. Ryan, Bar No. 178059
Austin T. Beardsley, Bar No. 270046
THE RYAN FIRM
A Professional Corporation
1100 N. Tustin Avenue, Suite 200
Anaheim, California 92807
Telephone (714) 666-1362; Fax (714) 666-1443

Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership,

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Dwight Bennett<br><br>Debtor, | CASE NO.: 11-40155<br>Chapter: 11<br>Dated Filed: August 18, 2011<br><br>Assigned for All Purposes to<br>Hon. Michael S. McManus<br>Courtroom: 28<br><br>**DECLARATION OF VICKI LOZANO IN SUPPORT OF CREDITORS WELLS FARGO BANK, N.A. AND BAC HOME LOANS SERVICING, LP'S MOTION FOR RELIEF FROM STAY**<br><br>Date:       October 17, 2011<br>Time:       10:00 a.m.<br>Courtroom: 28<br><br>Trial Date:  None set. |

I, Vicki Lozano, declare:

1. I am over the age of eighteen and I am competent to make this declaration.

2. I am the court appointed receiver of the real property commonly referred to as 695-725 Highway 36, Susanville, CA 96130 (the "Subject Property"). I was appointed as the receiver by the Court in a written order issued on July 21, 2011. I have personal knowledge of the facts stated in this declaration, and if called upon to do so, I could and would competently testify thereto.

1

Declaration of Vicki Lozano

3. On the same day I was appointed the receiver in this matter (July 21, 2011), I personally visited the Subject Property in order to begin my investigation and inventory of the items present.

4. During my inspection, I took photographs of the conditions present on the Subject Property, some of which are attached as Exhibit 6 to the List of Exhibits, filed concurrently herewith. These photographs depict my observation of the conditions of the Subject Property and the animals thereon. I am familiar with the content of the photographs because I personally reviewed them when I downloaded them from my camera, and when I transmitted them to counsel for Wells Fargo Bank, N.A. I am therefore familiar with the content depicted therein, and the photographs fairly and accurately depict the conditions I observed during my inspection.

5. During my inspection, I observed the following conditions:

    a) That the equines on the Subject Property were roaming freely, without restraint. (See Ex.6, photographs 1-4, attached to List of Exhibits filed herewith.)

    b) That many of the equines on the Subject Property appeared malnourished, and had ribs markedly showing. (See Ex. 6, photographs 5-9, attached to List of Exhibits filed concurrently herewith)

    c) That several of the equines on the Subject Property appeared to be pregnant, due to the fact that a stallion is allowed to roam free among over thirty (30) mares. (See Ex. 6, photographs 10-12, attached to the List of Exhibits.)

    d) That the fencing and stables are in a high degree of disrepair and largely inadequate to pen in any animals. (See Ex. 6, photographs 13-27, attached to the List of Exhibits filed concurrently herewith.) I have determined, upon counseling with several contractors, that repairs will cost many thousands of dollars.

THE RYAN FIRM
A Professional Corporation

2

Declaration of Vicki Lozano

  e)  That there are approximately twenty-four horse carcasses in various states of decay that had been left to rot. (See Ex.6, photographs 28-34, attached to List of Exhibits filed concurrently herewith.)

  f)  That there are several vehicles, trailers, and farm equipment littering the Subject Property, and that these vehicles, trailers, and farm equipment appear to be inoperable. (See Ex. 6, photographs 35-40, attached to List of Exhibits.)

  g)  That the Subject Property is littered with discarded personal items, such as a toilet, washing machine, plastic hampers, and other debris, and that the animals on the Subject Property are freely roaming amongst the garbage heaps. (See Ex. 6, photographs 41-59, attached to the List of Exhibits filed concurrently herein.)

  h)  That the equines are kept in filthy conditions, such as un-cleaned "muck" (i.e., voluminous horse feces). For example, the majority of the stalls in the stable are filled with mountains of feces. One of these stalls has a front loading tractor in it, indicating that someone was attempting to clean up the stalls immediately prior to my arrival. (See Ex. 6, photographs 66-72, attached to the List of Exhibits filed concurrently herewith.)

6. During my inspection, I also observed that the equines appeared to have been in a near starvation state for quite some time. For example, when I had hay delivered to the Subject Property on July 21, 2011, the equines immediately flocked around and followed the delivery truck and tried eating directly from the truck bed. Since that time, I have been providing regular feedings of hay to alleviate their hunger. Upon my discovery of the state of the horses I immediately contacted the County of Lassen, who in conjunction with the Grace Foundation of Northern California, have provided for the same transfer of the horses for the time being.

7. Due to the state of the manifest disrepair of the facilities on the Subject Property and in my capacity as receiver, I have gathered detailed information regarding

the costs associated with rehabilitating the property. I have found that in order for the Subject Property to be insured as a riding and boarding stable, the following improvements must be made:

    a)    Repair of the barn including replacement of rotted boards and welding of hinges and latches. These repairs will take an estimated eight (8) to ten (10) days of carpentry work and an additional one (1) day of welding work. These costs are estimated at a minimum of $4,000.00. Material costs are estimated at $100.00 per stall, or $3,000.00 for thirty (30) stalls.

    b)    Runs for each of the thirty (30) stalls must be built at an estimated cost of $400.00 per stall for materials and labor.

    c)    Excavation of a pit for disposal of the existing mounds of manure and approximately twenty five (25) horse carcasses will cost between $5,000.00 and $7,500.00.

    d)    Ten (10) man-days for digging the mounds of waste from the thirty (30) stall barn.

    e)    Removal of all junk and debris would cost $3,000.00 minimum for dump fees (10 truck loads x 20 yards per load x $15.00 per yard) and another $3,000.00 for truck rental and labor.

    f)    Installation of a watering system for each stall and pen. This system is estimated to cost $300 to $400 per stall for a total of $9,000.00 to $12,000.00.

    g)    Replacement of all barbed wire on the perimeter fences with smooth wire.

    h)    Anchoring all small outside pens to avoid danger in high winds.

    i)    Implementation of a system to dispose of manure, instead of compiling mounds of manure on the grounds of the stables.

    8.    Furthermore, during my interactions with Dwight Bennett since I was appointed Receiver over the Subject Property, he has insisted, and continues to insist that he will not cooperate with the receivership.

9. Furthermore, there are three squatters who inhabit the Subject Property. I have requested that they relinquish possession of the Subject Property pursuant to the order appointing receiver. On or about August 22, 2011, they informed me that they will not leave because Dwight Bennett has advised them to retain possession of the Subject Property.

10. On more than one occasion, I have observed these squatters burning garbage on the Subject Property, establishing a serious threat of danger to the property.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 9/19/2011 at Susanville, California.

VICKI LOZANO—DECLARANT

THE RYAN FIRM
A Professional Corporation

5