UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
CIVIL MINUTES

| | | | |
|---|---|---|---|
| Case Title : | Dwight Alan Bennett | Case No : | 11-40155 - A - 11 |
| | | Date : | 10/17/11 |
| | | Time : | 10:00 |

Matter :  [46] - Motion for Relief from Automatic Stay   OPPOSED
[TRF-2] Filed by Creditors BAC Home Loans
Servicing, LP, Wells Fargo Bank, N.A. (Fee
Paid $0.00) (jris)
[46] - Motion/Application to Excuse Turnover
by Receiver [TRF-2] Filed by Creditors BAC
Home Loans Servicing, LP, Wells Fargo
Bank, N.A. (jris)

Judge :  Michael S. McManus
Courtroom Deputy :  Sarah Head
Reporter :  Diamond Reporters
Department :  A

APPEARANCES for :
Movant(s) :
    Creditor's Attorney - Timothy Ryan
Respondent(s) :
    Debtor(s) Attorney - Carolyn Chan
    Debtor - Dwight Alan Bennett
    U.S. Trustee's Attorney - Allen Massey


MOTION was :
Granted in part
Denied in part
See final ruling below.

ORDER TO BE PREPARED BY :       Movant(s)

Final Ruling: The motion will be granted in part and denied in part.

The movants, Wells Fargo Bank and BAC Home Loans Servicing, seek relief from the automatic stay as to a 40-acre real property in Susanville, California (APN 099-260-69), seek relief so the movants may complete their state court action in which they seek an "equitable mortgage" on the property, and ask that the state court receiver in that action be excused from the turnover requirements of 11 U.S.C. § 543.

The motion will be granted on the basis that this bankruptcy petition was filed in bad faith.

In deciding whether bad faith exists, courts consider the totality of the circumstances. Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994). The totality of the circumstances test was upheld also by Morimoto v. United States (In re Morimoto), 171 B.R. 85, 86 (B.A.P. 9th Cir. 1994) and In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992). The totality of the circumstances test includes factors such as misrepresented facts in the bankruptcy petition, unfair manipulation of the Bankruptcy Code, preemption of the chapter 7 trustee's administration of the case, proposal of a chapter 13 plan in an inequitable manner, failure to file tax returns, or otherwise inequitable circumstances surrounding the petition filing and egregious behavior. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999); In re Barnes, 275 B.R. 889, 894-95 (Bankr. E.D. Cal. 2002); Morimoto, at 86 (dismissing the bankruptcy case only after the debtor had proposed a chapter 13 plan, the IRS had objected to confirmation of the debtor's plan, and the debtor had objected to IRS' proof of claim).

A finding of bad faith, however, does not require fraudulent intent, malice, ill will or an affirmative attempt to violate the law. In re Leavitt, 171 F.3d at 1224 (quoting In re Powers, 135 B.R. 980, 994 (Bankr. C.D. Cal. 1991)); see also Cabral v. Shabman (In re Cabral), 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002).

In or about May 2005, the debtor sold a 14.03-acre parcel of real property (APN 099-260-70) to Norman Allen. Mr. Allen obtained a loan from Option One Mortgage to finance the purchase. The resulting deed of trust was assigned to Wells Fargo Bank in June 2005. BAC Home Loans Servicing is the servicer for the loan. Some time after the purchase of the 14.03-acre property by Mr. Allen, the movants along with Mr. Allen and the debtor discovered that the improvements on the 14.03-acre property were on an adjacent 40-acre parcel, APN 099-260-69, still owned by the debtor.

State court litigation was initiated to reform the deed of trust, where the movant Wells Fargo Bank sought an equitable mortgage on the 40-acre property. At a hearing on July 21, 2011, the state court granted Wells Fargo Bank's motion for the appointment of a receiver and granted its motion for summary adjudication, conferring equitable mortgage on the 40-acre property in favor of Wells Fargo Bank. The order appointing the receiver was entered by the state court on July 29, 2011. The debtor filed the instant bankruptcy case on August 18, 2011. An order granting equitable mortgage on the 40-acre property to Wells Fargo Bank has not been entered.

The court concludes that this bankruptcy petition was filed in bad faith for several reasons.

At the July 21, 2011 state court hearing, the debtor and counsel for the movants spoke several times, first in connection with the appointment of the receiver and then in connection with Wells Fargo Bank's motion for summary adjudication for the granting of equitable mortgage. The one consensus among all parties in the state court litigation was that the original deed of trust granted to Option One should have included the improvements on the 40-acre property. The debtor did not dispute this even though counsel for Wells Fargo Bank and other parties stated many times that there was an agreement that the improvements should have been subject to the deed given to Option One. See Docket 50, Ex. 5 to Motion at 9 ln.16-10 ln.2, 28 ln.25-29 ln.1, 30 lns.13-17, 33 lns.10-14, 38 ln.15, 39 lns.13-14.

At one point, even the debtor acknowledged that "it is true that that was the intention of the loan for the improvements to go on the 14 acres." See Docket 50, Ex. 5 to Motion at 11 lns.23-25.

When the state court ruled on the summary adjudication motion, it took the consensus among the parties, that the improvements should have been encumbered, to be paramount. See Docket 50, Ex. 5 to Motion at 42 lns.1-4. "[I]t does appear appropriate that that motion should be granted, and the Court will grant that at this time, all parties basically agreeing that the improvements were supposed to be on the 14 acre parcel." Id.

When the debtor spoke at the July 21 hearing, he disputed only Wells Fargo Bank's standing to assert an interest in the property, disputed alleged "occupancy fraud" in obtaining the loan from Option One, disputed contentions about Ms. St. John's involvement in obtaining the loan, and disputed how the down payment for the loan was acquired. See Docket 50, Ex. 5 to Motion at 12-19, 25-27, 35-38.

More, the state court overruled the debtor's objection to Wells Fargo Bank's assertion of an interest in the property. See Docket 50, Ex. 5 to Motion at 41.

Given that even the debtor agreed in the state court action that the loan with Option One was intended to encumber the improvements that happened to be on the 40-acre property and not on the 14-acre property, as the parties thought, the debtor has no prospect of reorganization in this case because the property he sold to Mr. Allen was intended to include the improvements. In other words, the bankruptcy estate does not even appear to own the improvements. And, without the improvements, the debtor has no ability to reorganize.

The court also takes note of couple other factors, namely that the loan with Option One has been in default for at least two years and that the improvements at issue were without insurance coverage, at least as of the July 21, 2011 state court hearing.

Hence, the debtor's filing of this chapter 11 reorganization bankruptcy case, without any means to reorganize and even acknowledging in state court that the improvements should be encumbered by the Option One loan, was in bad faith. This is cause for the granting of prospective relief from stay to the movants, for them to complete the state court action and the state court to enter an order on the requested equitable mortgage against the 40-acre property. No other relief is awarded. The court is not awarding relief for the movants to foreclose on the property.

After the state court determines how to fashion the equitable mortgage relief requested by the movants as to the 40−acre property, the parties shall come back to this court for any determination of whether and to what extent the 40−acre property is an asset of the bankruptcy estate, assuming there is a dispute over this.

The court will deny retroactive relief from stay because the movants have not identified what post−petition actions have been taken by them or the receiver without knowledge of this bankruptcy case.

Next, the court will excuse the receiver from the turnover requirements of section 543.

11 U.S.C. § 543 provides that:

"(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall

(1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) After notice and hearing, the bankruptcy court

(1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

(2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice."

Section 543(d)(2) does not apply here because the receiver was appointed by the state court less than 120 days before the petition filing. The receiver was appointed on or about July 21, 2011, whereas the subject petition was filed on August 18, 2011, 28 days after the appointment date.

Section 543(d)(2) also does not apply because the receiver here is not "an assignee for the benefit of the debtor's creditors." An assignee for purposes of section 543(d)(2) is one to whom the debtor voluntarily assigns property for administration or liquidation for the benefit of the debtor's creditors. In re Sundance Corp., 83 B.R. 746, 748 (Bankr. D. Mont 1988).

There is no evidence here that the debtor voluntarily assigned the property to the receiver for the benefit of all its creditors.

As to section 543(d)(1), the court will excuse the receiver from the turnover requirements of section 543,

given:

(A) The granting of relief from stay for the state court action to be completed.

(B) That the improvements on the 40−acre property were without insurance coverage prior to the filing of this petition.

(C) That the movants have not received payment on the Option One loan for over two years now.

(D) Given the debtor's position in the state court action that the improvements should have been subject to the Option One loan.

(E) The allegations of mismanagement of the business operated at the improvements on the 40−acre property. Prior to the appointment of the receiver, a veterinarian found the horses at the property to be in seriously poor health. 20 of them were in such a dire condition that they had to be removed immediately to save their lives. To stabilize the health condition of the remaining horses, the receiver has been working closely with the Department and a non−profit rescue shelter. On July 29, 2011, the state court entered an order directing the transfer of the remaining horses to Lassen County as most of the horses require immediate medical attention.

Nevertheless, the receiver must comply with the Bankruptcy Code and Rules and must report to this court by filing periodic reports, for no more 120 days. All reports should be served on the debtor, the U.S. Trustee, and the 20 largest unsecured creditors.

If and when the court determines that the property in possession of the receiver is not an estate asset, the receiver will be discharged of her duties to the Bankruptcy Court. The motion will be granted in part and denied in part.

The court will not grant any relief requested by the debtor in his opposition to this motion. The court rejects the debtor's contention that the movants have no standing. As noted earlier, the state court overruled the same objection by the debtor at the July 21, 2011 hearing. The state court concluded that Wells Fargo Bank has sufficient standing to be entitled to an equitable mortgage on the 40−acre property. This satisfies the requirement that "[a] party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." Veal v. American Home Mortgage Servicing, Inc., (In re Veal), 450 B.R. 897, 914−15 (B.A.P. 9th Cir. 2011).

In addition, the court will not dispose of the strong−arm powers argument raised by the U.S. Trustee in connection with this motion. At this stage, the court notes only that on the day the petition was filed, the property was controlled by a receiver and there was a recorded notice of pending action. Hence, the application of 11 U.S.C. § 544(a) would be problematic a trustee likely would have inquiry and constructive notice of the movant's equitable lien on the date the petition was filed. If this is incorrect, granting the motion and allowing the movant to perfect its lien will not prevent the application of section 544(a). Its application is determined by the state of title at the time the petition was filed.

Given the arguments made at the hearing the court feels compelled to spell out what it is not doing by granting this motion.

First, it is allowing the movant to complete the state court action and enter a judgment. It is not permitting the movant to foreclose on any "equitable mortgage" granted it by the state court. And, any judgment may be challenged by the debtor or other party in the state trial and/or appellate courts.

Second, the court is not authorizing the movant or the receiver to take any action against anything other than the subject real property.