FILED
October 19, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003846401

Timothy M. Ryan, Bar No. 178059
tryan@theryanfirmm.com
Austin T. Beardsley, Bar No. 270046
Abeardsley@theryanfirm.com
THE RYAN FIRM
A Professional Corporation
1100 N. Tustin Avenue, Suite 200
Anaheim, California 92807
Telephone (714) 666-1362; Fax (714) 666-1443

Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership,

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Dwight Bennett<br><br>   Debtor, | CASE NO.: 11-40155<br>Chapter: 11<br>Dated Filed: August 18, 2011<br><br>Assigned for All Purposes to<br>Hon. Michael S. McManus<br>Courtroom: 28<br><br>**CREDITORS WELLS FARGO BANK, N.A. AND BAC HOME LOANS SERVICING, LP'S OPPOSITION TO THE U.S. TRUSTEE'S MOTION TO DISMISS OR CONVERT CASE TO CHAPTER 7**<br><br>Date:  October 31, 2011<br>Time:  10:00 a.m.<br>Courtroom: 28<br><br>Trial Date: None set. |

  Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership ("Creditors") hereby submit their opposition to the United States Trustee's ("Trustee") opposition ("Opposition") to Creditors' motion for dismissal or conversion of this case to

1

chapter 7, or in the alternative, appointment of a chapter 11 trustee ("Motion")

## 1. INTRODUCTION AND SUMMARY

Creditors hereby oppose the U.S. Trustee's Motion insofar as the Motion seeks to convert the case to a chapter 7, or to appoint a chapter 11 trustee. In support of its argument, the U.S. Trustee alleges that there are estate assets that could be liquidated for the benefit of the creditors. (Motion, p. 6:9-10). However, as will be shown below, the values of the "assets" described in debtor Dwight Bennett's ("Debtor" or "Bennett") bankruptcy schedules are wildly overstated, if those assets exist at all. Furthermore, many of the "assets" alleged to be part of the bankruptcy estate are actually the property of other parties. Therefore, there are not sufficient assets in the bankruptcy estate to effect any liquidation that is beneficial to any creditors.

Furthermore, pursuant to LBR 9014-1 (2) (ii), Creditors are not required to provide written opposition. However, Creditors provide the same in order to apprise all parties of their arguments and facts prior to the hearing on this motion. Last, Creditors request that this Court take judicial notice of all documents filed in this case. F.R.C.P. § 201.

## 2. THE HORSES AND OTHER ANIMALS LISTED AS ESTATE ASSETS DO NOT HAVE THE VALUE ESTABLISHED IN BENNETT'S BANKRUPTCY SCHEDULES

In his bankruptcy schedule "B," Bennett lists as assets approximately thirty-six (36) horses that are currently in the possession of the Grace Foundation of Northern California. These horses were ordered by the Lassen County Superior Court to be surrendered to the county of Lassen. (Docket No. 50, Ex. 9). Bennett "estimates" the value of these horses to be approximately $185,000.00. (Docket No. 40, p. 9). In addition, Bennett alleges that other miscellaneous animals that are currently in the possession of the Grace Foundation are valued at over $7,000.00. In both case, Bennett's purported valuations are wildly inflated, if not altogether fictitious. Therefore,

2

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7

liquidation of these assets is very unlikely to provide any value to any creditors.

### a. Bennett's valuation of the horses is patently erroneous

Bennett's valuation of the horses is inconceivable. Currently, the market for sale of horses is dismal. For instance, the Grace Foundation currently receives approximately 30 calls and emails per week, requesting that the Foundation take possession of the requesting owner's horses free of charge. (Declaration of Beth DiCaprio, "Dec. of DiCaprio" ¶ 7 (a)). Additionally, there are over 100,000 unwanted horses in the United States, many of which are being sold to slaughterhouses in Canada and Mexico. (Dec. of DiCaprio ¶ 7 (a)). Therefore, the market for horse buyers is small, if not non-existent in this financial climate.

In addition to the diminished buyer's market for horses, the individual pedigree of the subject horses also establishes their value. Bennett's schedule B lists a broad array of horses including "pure fox trotters," "pure mountain," "pure arab," "xs mustang," and "specialty." (Docket No. 40, p. 9). Regardless of the label Bennett attributes to the horses, one major factor prevails in determining the market value of a horse, its registration papers, or any other indication that it has been a champion or show horse. (Dec. of DiCaprio ¶ 7 (b)). Absent registration papers or any other proper showing, a horse could not expect to be sold for even a quarter of the price had the horse been registered. (Dec. of DiCaprio ¶ 7 (b)). The unregistered value will be much lower where horses are in need of training. (Dec. of DiCaprio ¶ 7 (b)). Also, the unregistered value presupposes that there is a market with interested buyers willing to purchase the horses. Therefore, though each of the subject horses is beautiful and brimming with intrinsic value, they are unregistered and untrained and their market value will likewise be severely diminished.

Notwithstanding the poor financial climate and the fact that the Bennett horses are unregistered, the subject horses' value is greatly diminished by another astonishing fact. Approximately eighteen (18) of the horses are pregnant. (Dec. of DiCaprio ¶ 9). The

THE RYAN FIRM
A Professional Corporation

3

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7

cost associated with medical care for an expectant horse, and its subsequent foal is varied. At a minimum, vaccinations and new foal examinations cost upwards of $275.00 per pregnancy. (Dec. of DiCaprio ¶ 9 (a), (c)). However, if there are any complications with foaling, emergency veterinarian care will cost at least $1,300.00. (Dec. of DiCaprio ¶ 9 (b)). An emergency can be expected in twenty percent of pregnancies. (Dec. of DiCaprio ¶ 9 (c)). Last, plasma treatments for foals cost up to $500.00 and antibiotics for foals range up to $125.00. (Dec. of DiCaprio ¶ 9 (d)-(e)). Therefore, if the horses are sold, half of them will subject the buyer to these additional costs.

In consideration of all of the foregoing factors, the valuation that Bennett ascribes to the subject horses is unrealistic at best. The market for horses in the region of this region is severely limited. The horses are unregistered and do not carry any indicia of being champion or show horses. In addition, 18 of the horses are pregnant and will be subject to all of the costs associated with successfully foaling. It is therefore likely that the horses, if liquidated, would only fetch the "adoption donation" fee common in today's market. (Dec. of DiCaprio ¶ 7 (b)). This fee averages anywhere between $250.00 and $500.00. (Dec. of DiCaprio ¶ 7 (b)).

Last, any amount that would be received upon liquidation of the horses is subject to the costs the Grace Foundation has incurred in providing care and training for the horses. Upon intake, the Grace Foundation provided deferred care to make up for primary care that had been denied to the horses for many months. (Dec. of DiCaprio ¶ 7 (i)). This care included all necessary medical care, teeth floating and de-worming, vaccinations, etc., at a cost of approximately $18,000.00. (Dec. of DiCaprio ¶ 7 (i)). Additionally, The Grace Foundation incurs costs totaling, at a minimum, $10,800.00 per month for the care, feed and boarding of the horses. (Dec. of DiCaprio ¶ 7 (i)). Therefore, there is no possibility that a sale of all of the horses would bring $185,400.00.

///

///

4

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7

**b.    Bennett's valuation of the "other animals and livestock" is wildly inaccurate**

Bennett claims that the "other animals and livestock" surrendered to the County of Lassen and boarded at the Grace Foundation have a market value of $7,300.00. (Docket No. 40, p. 9). As with his estimation of the value of the horses, Bennett's calculations are specious and unrealistic. First, Bennett claims that two unregistered goats are worth $800.00. (Docket No. 40, p. 9). However, in today's market an unregistered goat averages $25.00 to $100.00 maximum. (Dec. of DiCaprio ¶ 8 (a)). Therefore, the two goats surrendered by Bennett are worth at least $600.00 less than his valuation.

Second, Bennett alleges that the donkey he surrendered is worth $1,500.00. (Docket No. 40, p. 9). The higher end price for a donkey today, with limited training, in this market averages $500.00. (Dec. of DiCaprio ¶ 8 (b)). Bennett's estimate of $1,500.00 is therefore inflated by at least $1,000.00.

Last, Bennett claims that the dogs removed from the Subject Property and transferred to the Grace Foundation are worth $5,000.00. (Docket No. 40, p. 9). The dogs surrendered to The Grace Foundation are unregistered and mixed breed. (Dec. of DiCaprio ¶ 8 (c)). These dogs are readily available at shelters around the country. (Dec. of DiCaprio ¶ 8 (c)). Therefore, they carry a market value of no more than an animal control agency or shelter would charge to adopt a nice mixed breed dog. (Dec. of DiCaprio ¶ 8 (c)). The average adoption fee around the Country is $100.00 each. (Dec. of DiCaprio ¶ 8 (c)). Therefore, the valuation given by Bennett for the subject dogs is utterly inaccurate.

**3.    THE STATE COURT APPOINTED RECEIVER HAS NOT CONVERTED ANY ESTATE ASSETS, AND THEREFORE, THE ASSETS BENNETT LISTS AS "CONVERTED" ARE EITHER NON-EXISTENT OR WERE REMOVED FROM THE SUBJECT PROPERTY BY BENNETT**

5

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7

In his bankruptcy schedule "B," Bennett alleges that a significant amount of valuable property was removed from the Subject Property by the receiver appointed by the Lassen County Superior Court on July 21, 2011. (Docket No. 40, p. 9). The U.S. Trustee, presumably, believes that these assets may also be gathered and liquidated if the case is converted to chapter 7. However, these items have not been removed by the receiver. Therefore, to the extent that they are not within the possession and control of Bennett, they either do not exist or have been removed by Bennett or someone acting under his direction. These items are therefore unlikely to be recovered and/or liquidated.

On the day a receiver was appointed over the Subject Property, July 21, 2011, the receiver entered the property in order to begin an investigation and inventory of the items present. (Declaration of Vicki Lozano "Dec. of Lozano" in support of this opposition, ¶ 3). Having been ordered to possess and control all improvements and business property over the Subject Property, the receiver made a complete inventory of the same on July 21, 2011, and controlled the property until September 2, 2011, the date the receivership was subjected to the turnover requirement of 11 U.S.C. § 541. (Dec. of Lozano ¶ 4).

During the time period between July, 21, 2011, and September 2, 2011, neither the receiver nor anyone under the receiver's supervision removed, converted, damaged or otherwise misappropriated any of the movable business property that was located on the Subject Property. (Dec. of Lozano ¶ 5). Furthermore, having reviewed Bennett's bankruptcy schedule B and its accompanying "Inventory of Missing Items," the receiver maintains that none of the items was removed under the receivership. (Dec. of Lozano ¶ 6).

Therefore, to the extent that any of the items listed in Bennett's schedule B is not in the immediate control of Bennett, it was removed by Bennett, or by one of the three (3) purported "tenants" on the Subject Property, during the time that the receivership has been stayed by the subject bankruptcy proceedings. (Dec. of Lozano ¶ 7). Accordingly, it is not likely that these items can be recovered and liquidated for the benefit of any

6

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7

creditors.

### 4. THE IMPROVED REAL PROPERTY LISTED IN BENNETT'S BANKRUPTCY SCHEDULES IS SUBJECT TO CREDITORS' EQUITABLE LIEN AND EQUITABLE MORTGAGE

On or about May 19, 2005, Bennett sold a parcel of real property commonly known as Lassen County Assessor's parcel 099-260-70[1] to a man by the name of Norman Allen. (Request for Judicial Notice "RFJN" item a; Exhibit 1 attached to the List of Exhibits ("LOE") filed concurrently herewith). In order to obtain funds to consummate the purchase, Mr. Allen obtained a loan secured by a deed of trust from Option One Mortgage. (Docket No. 50, Exhibit 2). On or about June 1, 2005, the deed of trust was assigned to Creditor WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo"). (Docket No. 50, Ex. 3). Creditor BAC Home Loans Servicing, LP, as successor in interest to Wilshire Credit Corporation ("BAC") acts as the servicer of the subject loan on behalf of Creditor Wells Fargo. (Docket No. 50, Ex. 4).

Subsequent to the land sale transaction described above, it was discovered that the improvements (house, stables, riding arena, etc.) believed by Bennett, Mr. Allen and Option One Mortgage (the original lender) to be on Assessor's Parcel number 099-260-70, were actually located on the adjoining lot, Assessor's Parcel number 099-260-69.[2] (*See* Docket No. 49, ¶ 4; Docket No. 50, Ex. 5). On or about July 21, 2011, Creditors Wells Fargo and BAC's (collectively "creditors") moved for summary adjudication based on the collective intent of all parties, including Bennett, to convey and encumber the improvements. This motion was granted and an equitable mortgage and equitable lien in favor of Creditor Wells Fargo were ordered over the Subject Property. (*See* Docket No. 49, ¶ 5; Docket No. 50, Ex. 5, p. 42:1-9; Docket No. 50, Ex. 12). At that same hearing, and at the behest of all parties interested in the Subject Property, except Bennett, a

---

[1] This property adjoins Lassen County Assessor's parcel 099-260-69, together the parcels will be referred to as the "Subject Property."
[2] This lot is held by Dwight Bennett and his ex-partner Judith St. John as joint tenants (*See* Docket No. 50, Ex. 10).

7

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7

receiver was appointed to preserve the property. (Docket No. 49 ¶ 6; Docket No. 50 Ex. 5, p. 27:14- p. 28:2).

Upon the filing of the subject bankruptcy petition by Bennett, Creditors moved for relief from the automatic stay to perfect their equitable lien and mortgage. (Docket No. 55). This court granted Creditors' motion, thereby allowing the interest in the Subject Property to be perfected. (Docket No. 96). With Creditors' equitable lien and equitable mortgage in place, there is no equity in the Subject Property. (Docket No. 55, pp. 4-7). Therefore, there will be no benefit to any creditors if the Subject Property is liquidated pursuant to chapter 7.[3]

## 5. CONCLUSION

For all of the foregoing reasons, the U.S. Trustee's Motion should be denied insofar as it seeks conversion of this case to chapter 7, or the imposition of a chapter 11 trustee.

DATED: October 19, 2011        THE RYAN FIRM
                                A Professional Corporation


By: /S/ AUSTIN T. BEARDSLEY
    TIMOTHY M. RYAN
    AUSTIN T. BEARDSLEY
    Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP

---

[3] The U.S. Trustee has intimated that Creditors' interest is subject to the "strong arm" provision of 11 U.S.C. § 544. However, while this issue was not disposed of during Creditors' motion for relief from stay, this court has advised that avoidance of Creditors' interest is unlikely in light of the facts and arguments raised by Creditors' in their reply to the U.S. Trustee's opposition to Creditors' motion for relief from stay. (Docket No. 82, pages 2-7; Docket No. 96, page 4).

Creditors Wells Fargo Bank and BAC Home Loans Servicing's Opposition to the
U.S. Trustee's Motion to Dismiss or Convert Case to a Chapter 7