Case 11-40155   Filed 03/02/12   Doc 137

FILED
March 01, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004101619

```
 1  10
 2  Carolyn Chan sbn147978
    2485 Notre Dame B. Ste. 370
 3  Chico, CA 95928
    Telephone: 530.359.8810
 4
 5
    Attorney for
 6  Dwight Bennett
 7
 8
```

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIV.

| In re | Case No.: 11-40155-A-7 |
|---|---|
| DWIGHT A. BENNETT | DEBTOR DWIGHT BENNETT'S MOTION TO TERMINATE RECEIVER FOR GOOD CAUSE, ALLOW INVENTORY OF DEBTOR'S PROPERTY INCLUDING ANIMALS, FOR CAUSE and ALLOW DEBTOR'S RETURN TO POSSESSION |
| Debtor. | Date: 03 /12 /2012 Time: 10:00am   Dept: Ctr 28 |

To all Parties:

Debtor Dwight A. Bennett hereby notices all parties of the Motion herein to be heard in Sacramento Eastern District Bankruptcy Court as stated above.

---

Debtor Bennett's Motion to Terminate Receiver for Good Cause

BACKGROUND OF THE CASE

1. This rather complicated case involving debtor's real property in Lassen County, was recently heard in Lassen State Court on **February 23, 2012,** where Judge *again refused to sign* the order for Wells Fargo's request of equitable mortgage, after it had been proferred by Wells Fargo attorney Timothy M. Ryan, on July 21 2011,(not signed)  November 17, 2011 (not signed) and on January 18, 2012 Judge also refused to sign the order.

Wells Fargo has no order giving them any colorable title to debtor's land, and never did have it. Wells Fargo only wanted the "deed" so they could comport with the code which would allow them to bring in a receiver. Then they could foreclose without having to prove up their "actual" title which doesn't exist due to predatory loan tactics and subterfuge foreclosure.

2. Wells Fargo now has TWO receivership orders (July 2011-pre petition and November 2011-post petition, receivership "amended") *neither* of which have an underlying order supporting it, **because Judge has *never signed an order* which allegedly gives Wells Fargo any rights at all, over debtor's property.**

3.  It would be *premature* to attempt to determine how an equitable mortgage, if anything, could be fashioned without *first* determining whether Wells Fargo even has any colorable title at all over debtor's property.  Wells Fargo is not even an actual creditor over debtor's property but they claim that they are. What documents can actually prove up the rights, if any, that

Wells Fargo claims it might have?

4. If no order in Wells Fargo's favor *has been obtained in 8 months of trying*, plus Wells Fargo's relentless contempt hearings, putting debtor in jail, ignoring the automatic stay, kicking him out of the residence, illegally seizing debtor's animals, using the animals as a way to get rid of debtor, evicting tenants without eviction process right before Christmas, and then allowing the residence to become filthy and mired in animal feces inside, etc.—

*State Court Judge obviously does not believe Wells Fargo should even have such an order*. If he did, he would have signed it by now, 8 months later.

5. Such denied order(s) (as drafted by attorney Ryan) was defective on its face, as it exceeded the State Court's jurisdiction, as the motion request to the *court was only to be for "equitable mortgage." Yet the order submitted* purported to grant Wells Fargo reformation "to include a first priority security interest in the 40 acre parcel bearing the Assessor's Parcel number 099-260-69." A reformation for first deed of trust was never *requested* by movant, and in any event, such request would not conform with the original intent of the buyer-seller contract between debtor and Mr.Allen [to sell Allen the 14.03 acre parcel.]

Even further, the lending companies and their agents, when

3

the loan was made by Option One, *selected* all of the associated other entities-the surveyors, the appraisers, etc. Therefore the acts of those agents would appear to be covered by insurance even if the surveyor made errors. In addition, the real estate is covered by an ALTA title policy which only the lender can assert, after proving they hold viable title.

6. The net result of these acts indicate that debtor's automatic stay means very little to Wells Fargo, and that the order by the Federal Bankruptcy Judge in October 2011 has not only been blatantly ignored, but Wells Fargo by Timothy M. Ryan has constructively and physically evicted debtor and the tenants without any need, apparently, for any foreclosure or eviction process.

A continuing pattern and practice of misrepresentation by Wells Fargo attorney Timothy M. Ryan is taking place, in both the State and Federal Courts upon the debtor's due process rights, and property rights, to say the least.

7. This case was last heard in Eastern District Federal Bankruptcy Court on the issue of "turnover" in October 2011. At the last hearing re turnover under 11 U.S.C. Section 543, debtor had, against counsel's advice, unwittingly agreed to movant's request to seek an order for "equitable lien/mortgage."

Movant further requested that the state court "receiver" be excused from the turnover requirements under the same section.

8. Debtor's counsel at that October 2011 hearing did not want debtor to enter into an instant replay of shenanigans by Wells Fargo, which counsel believed had already transpired due to illegal seizure of the animals, due process violations, misrepresentation by Wells Fargo, substantive due process issues, procedural due process issues, conversion of debtor's personal property, and false information filed into the State court records, the Federal bankruptcy court record, plus much more.

9. As it turns out, counsel was correct because Wells Fargo led by Timothy M. Ryan, simply bulldozed ahead, ousted debtor via civil contempt, evicted renters without any eviction process, claimed civil 'contempt' numerous times against renters/debtor, post petition, violated the automatic stay, and continued using a "receivership" that at best, is/was void at inception.

10. The intent behind these acts is simple as to Wells Fargo. Wells Fargo cannot prove title or ownership to the land of debtor's [which was mentioned by Mr. Massey, from U.S. Trustee's Office back in October 2011]--- and has sought to do so via deceptive tactics.**

_____
**CCP Section 564(b)(11) clarifies authority for appointment of a receiver,see Points/authorities; see new Civil Code 2938(g) Perfected deed of trust or signed contract is required. Movant Wells Fargo has *never proven* a perfected deed of trust.In fact they should be required to do so if they intend to continue their quest to foreclosure.

5

11. As The court will recall that there are two parcels of land, not one. Further, at various times Wells Fargo has held itself out to be a party with non monetary interest (meaning trustee) but **apparently after Wells Fargo was held to answer** when sued by Mr. Allen, *Wells Fargo decided they were the creditor instead*. In fact, Wells Fargo had filed a non judicial foreclosure prior, and then pulled it when they *realized they could not prove up* their "title" to debtor's land.

12. Mr. Timothy M. Ryan has been quoted online as stating when the bankruptcy court abandons the property of debtor the "receiver" will be the one to see who receives specific property.

It should be noted Well Fargo:

(1) hired a realtor who had NEVER before done a receivership, and failed to do the initial undertaking

(2) never produced an inventory listing of debtor's property

(3) has a past history of having her license suspended for fiduciary duty related breaches.

(4) allowed the inside of the residence to be fouled by animal feces, garbage debris, and other trash.

//

6

**WHEREFORE**, the Debtor Respectfully

Requests the Following Relief:

(1) Immediately put debtor's property and real property back to debtor, so he can work under the Chapter 7 Trustee, where the "receiver" has absolutely no power whatsoever over debtor's property

(2) Find that the "receiver" failed to produce any inventory list to either the debtor, state, or Federal Bankruptcy Court and has not acted reasonably or with due diligence or neutrality;

(3) Immediately place debtor back into physical possession of the real property, including the improved land containing the house and barn areas, and return all of debtor's property and possessions to him, including animal-related tack with a copy of the alleged inventory that was done;

(4) Immediately stop any cell tower revenue from going to the Receiver and place such payments to Chapter 7 Trustee

(5) Issue a finding that all orders involving the "receiver" were never based upon any underlying order, valid order or even signed orders, and therefore being interlocutory, do not fall under the Rooker Feldman doctrine; and for sake of argument, if such "receiver" was somehow valid, receiver breached fiduciary duties, allowed animals to partially ruin the inside of the property, and failed to ever turn over inventory lists, or even

to winterize the home as stated, and has never accounted for debtor's property in any fashion.

(6) All parties involved in debtor's state case which have claims against debtor, be stayed immediately, including but not limited to Wells Fargo Bank, Timothy M. Ryan, Judith St. John and her attorney Mr. Close.

(7) The Grace Foundation rescue which has temporary custody of debtor's horses shall immediately allow debtor accompanied by at least 2 Certified Humane Officers registered in California from the USSPCO, Inc, a non profit SPCA, to positively identify and inventory the number of horses that were illegally "seized" by Wells Fargo's so-called receiver and given to the Grace Foundation. Further, the information mentioned in the Reply to Trustee's Motion to Abandon Property (animals) be required to be given to the Humane Officers who conduct the inspection.

This is necessary because *according to* the Grace Foundation, led by Beth Decaprio:

(a) Claimants against debtor are supposedly allowed to pursue 'ownership' claims against debtor's animals --this was even announced in the newspaper by the Grace Foundation. Debtor's counsel **completely objects to Grace having any say whatsoever as to which horse is owned by whom, and she has no authority to make those property decisions, nor is she qualified under law to do so. Further, Mr. Timothy M. Ryan claims to represent the rescue (Grace) and he has no authority to liquidate the animals as well.**

8

Further, there is a lien on all the horses potentially owned by anyone but debtor, for failure to ever pay the feed/board costs which contributed to debtor's hardships to begin with.

(b) Grace Foundation only has temporary custodial care, not ownership, but claims they own debtor's horses. This is completely untrue since there was never any authority to seize the animals to begin with, as mentioned supra.

(c) It is believed that the Grace Foundation failed to take all of the seized horses to the property of Grace, and that Grace has admitted to killing several horses, with questionable facts being issued to the press, which conflict with testimony given in legal hearings, plus the fact that *Grace was paid by Wells Fargo and Bank of America, possibly $40,000 (minimum) to $80,000+ to take the horses.*

**Most clearly – this was NOT paid by Lassen County**. Lassen County alleged, according to Wells Fargo, that they (Lassen) could not afford to take care of the horses, they had nowhere to put them, and that they did not have resources to do so. What Lassen County did not mention was, they had no actual reason to seize them in the first place.

Only a properly authorized party could "give away" any of debtor's property, and Mr. Timothy M. Ryan alleged that his "receiver" was seizing animals "for" Lassen County. One notes that at no time had Lassen County ever attempted to seize any horses from debtor. ONLY upon Wells Fargo "receivership" did this

9

occur, and this indicates collaboration by Lassen County and Wells Fargo which is already admitted in Mr. Timothy M. Ryan's own pleadings.

(8) Allow debtor's counsel to proceed with adversary claims against various parties; if special counsel authority is required, *debtor asks that such request be given consideration*.

Attorney Timothy M. Ryan announced via the Internet that the 'receiver' was going to parcel out all of debtor's possessions and property and then selling the balance "after it is abandoned by the BK court."  <u>This will not happen</u>.

Respectfully submitted,

Dated: February 22, 2012　　　　By: /s/ Carolyn Chan
　　　　　　　　　　　　　　　　　　　　Attorney for Dwight Bennett