Case 11-40155    Filed 03/15/12    Doc 166

FILED
March 15, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004126548

Timothy M. Ryan, Bar No. 178059
Austin T. Beardsley, Bar No. 270046
THE RYAN FIRM
A Professional Corporation
1100 N. Tustin Avenue, Suite 200
Anaheim, California 92807
Telephone (714) 666-1362; Fax (714) 666-1443

Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Dwight Bennett<br><br>   Debtor, | CASE NO.: 11-40155<br>Chapter: 11<br>Dated Filed: August 18, 2011<br><br>Assigned for All Purposes to<br>Hon. Michael S. McManus<br>Courtroom: 28<br><br>**CREDITORS WELLS FARGO BANK, N.A. AND BAC HOME LOANS SERVICING, LP'S OPPOSITION TO DEBTOR DWIGHT BENNETT'S MOTION TO TERMINATE RECEIVERSHIP; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      March 19, 2012<br>Time:      10:00 a.m.<br>Courtroom:  28<br><br>Trial Date:   None set. |

   Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, (hereafter referred to as "Creditors") hereby submit their opposition to Debtor Dwight Bennett's

1

purported "Motion to terminate Receiver for good cause, allow inventory of debtor's property including animals, for cause and allow for debtor's return to possession."

DATED:     March 15, 2012                    THE RYAN FIRM
                                             A Professional Corporation


                                             By: /S/ AUSTIN T. BEARDSLEY
                                                 TIMOTHY M. RYAN
                                                 AUSTIN T. BEARDSLEY
                                                 Attorneys for Creditors WELLS
                                                 FARGO BANK, N.A., as Trustee for
                                                 MLMI Trust Series 2005-HE3; and
                                                 BAC HOME LOANS SERVICING,
                                                 LP

Case 11-40155   Filed 03/15/12   Doc 166

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION AND SUMMARY

Debtor Dwight Bennett's ("Debtor" or "Bennett") purported "motion to terminate receiver for good cause, allow inventory of debtor's property including animals, for cause and allow debtor's return to possession" (the "Motion") is as substantively perplexing as its title suggests. Nowhere throughout its twelve (12) meandering pages does the Motion provide support any of the relief sought. Rather, the Motion mixes alleged facts of dubious origin with analysis of an even more dubious nature, resulting in a concoction that cannot possible be construed as a reasoned conclusion. Therefore, the Motion should be summarily denied, in its entirety.

To summarize, as an initial matter, Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, (hereafter referred to as "Creditors") have obtained a signed order granting them an equitable lien over the real property , commonly known as 695-725 Highway 36, Susanville, California 96130 (the "Subject Property"). Second, all of the issues Bennett has attempted to raise in the present Motion are directly in the purview of the California Superior Court for the County of Lassen ("Lassen Court"), this court having vested the Lassen Court with authority over the receivership in its relief from stay order entered October 21, 2011. Third, all issues Bennett may have regarding the horses mentioned in the Motion should be directed to the Lassen Court, the horses having been surrendered pursuant to a validly issued state court order, and abandoned by the bankruptcy estate. Last, the Motion is completely devoid of any admissible evidence showing any wrongdoing by anyone associated with Creditors. Rather, the Motion resorts to making unsupported attacks on the character of the appointed receiver and counsel for Creditors that are as ignorable as they are ignorant. Therefore, the Motion should be denied in its entirety, and the subject receivership should continue as ordered by this Court and the Lassen Court.

## 2. BENNETT'S MOTION IS FATALLY FLAWED BECAUSE THERE IS A SIGNED ORDER GRANTING CREDITORS A LIEN OVER THE SUBJECT PROPERTY

As an underlying premise for the Motion, Bennett repeatedly and resoundingly asserts that Creditors have not obtained an equitable lien over the Subject Property that supports the appointment of a receiver. (*See* Motion, Docket Number 149, p.3:1-3). In making this assertion, Bennett concludes that the receivership should be terminated for lack of "legal authority." (Motion, p.1:22-23). However, Bennett is gravely mistaken in stating that "Wells Fargo has NEVER been able to secure a signed order from Lassen State Court which might possibly give them any rights to the property. Judge has refused to sign the order by Wells Fargo attorney Timothy M. Ryan at least 4 (four) times now over 8 months." (Motion, p.:1-3). As will be established below, Creditors have obtained a signed order from the Lassen Court, and have served it on Bennett and his quasi-counsel of record, Carolyn Chan. Therefore, the Motion should be summarily denied as it is founded on a patently false assertion.

On or about October 21, 2011, this court entered an order granting Creditors relief from the automatic stay to obtain a signed order on a motion for summary adjudication ("MSA Order") granted by the Lassen Court on or about July 21, 2011. (*See* Order, Docket No. 103). On or about November 17, 2011, the Lassen Court executed and entered the signed order granting Creditors' motion for summary adjudication. (Request for Judicial Notice, "RFJN," Item a, List of Exhibits, "LOE," Item 1). Furthermore, the executed MSA Order was served on Bennett, and his counsel Carolyn Chan. (RFJN Item b, LOE Item 2).

Therefore, not only has Bennett brought this Motion feigning ignorance of the entered MSA Order, Bennett, and his counsel, have brought this Motion, having been served with the MSA Order. Clearly, there is absolutely no foundation, in fact or law, for the Motion. Therefore, the present opposition should be well taken, and the Motion should be denied, in its entirety.

3.  **ALL ISSUES REGARDING THE STATE COURT RECEIVER'S PERFORMANCE SHOULD BE ADDRESSED IN THE LASSEN COURT**

Although entirely unfounded and unsupported by evidence, the Motion alleges that the state court appointed receiver, Vicki Lozano, has not properly performed her duties. (Motion, p.7:5-6). In doing so, Bennett has not properly sought relief. As clearly outlined in item 5 of this court's order excusing the receiver from the turnover requirement, the receiver has been reinstated, as of October 21, 2011, pursuant to the receivership order granted by the Lassen Court ("Receivership Order"). (Order, Docket No. 103, Item 5). Therefore, any allegations of improprieties lodged against the receiver should be directed to the Lassen Court. Bennett has not done so, and the Motion should be denied on these grounds.

4.  **BENNETT'S ASSERTIONS REGARDING DISMISSAL OF THE STATE COURT ACTIONS ARE PATENTLY FALSE**

In its section alleging "bad faith" by Creditors and the receiver, the Motion uses three (3) pages to allege that the underlying civil cases involving Bennett have been dismissed. (Motion, p.2:22–p.4:7). As support for this wildly inaccurate assertion, Bennett has proffered an alleged handwritten, proposed settlement agreement. ("Exhibit", Docket No. 151). However, notwithstanding the fact that Bennett has not provided any authentication for the purported document, the document itself is insufficient to support the false allegation that the underlying civil court actions have been dismissed with prejudice.

First, Bennett has attached this handwritten instrument as an exhibit to the Motion without any underlying authentication. Clearly, as a stand-alone document, it would be improper to admit any of the assertions made without proper authentication. Here, the only evidence accompanying the Motion is a declaration by Bennett. Nowhere in that declaration does Bennett make any statements authenticating the document. In addition, were the underlying civil cases actually dismissed, it would behoove Bennett to provide any executed and entered requests for dismissal. Bennett clearly has not done so.

3

Bennett's reliance on an unauthenticated, unenforceable, partially executed, proposed settlement agreement speaks to the Motion's abject lack of merit. Therefore, the Motion should be denied in its entirety.

**5.     BENNETT'S REQUEST FOR INSPECTION OF HORSES IS IMPROPER AS THE HORSES ARE NOT PART OF THE BANKRUPTCY ESTATE AND THE STATE COURT HAS PROVIDED BENNETT A MEANS FOR ADDRESSING ISSUES RELATED TO THE HORSES**

In addition to improperly seeking relief related to the state court receivership, Debtor's Motion requests that this court "allow an inspection" of the horses that were removed from the Subject Property on or about August 28, 2011. In doing so, Bennett ignores the fact that all animals have been abandoned by the appointed chapter 7 trustee, and that the horses were surrendered to Lassen County pursuant to a valid state court order. Therefore, Bennett's request for an inspection is improper and should be denied in its entirety.

Bennett's Motion makes several disjointed, poorly reasoned arguments as to why this court should order an inspection of horses. (Motion, p.7:18–10:3). As part of this narrative, Bennett alleges he was not afforded notice or a hearing prior to the seizure. Bennett also invokes the penal code to describe how a proper seizure of animals should be performed. In both case, Bennett is wildly mistaken. First, the horses are no longer a part of the bankruptcy estate. On or about December 9, 2011, Susan Didriksen, the appointed Chapter 7 Trustee in this case filed a motion to abandon any and all animals alleged to be part of the bankruptcy estate. (Motion to Abandon, Docket No. 122). On or about January 3, 2012, this court granted the motion to abandon, and entered an order abandoning the animals alleged to be estate property. (Docket Nos. 135-136). Therefore, the animals are no longer property of the bankruptcy estate, and it is therefore improper to bring the present Motion in this court.

As the subject animals are not property of Bennett's bankruptcy estate, the Lassen Court therefore has jurisdiction over all legal issues regarding their disposition.

Currently, as has been shown by Creditors in this case, and as admitted by Bennett, the horses were surrendered to the County on a showing of Bennett's abject mismanagement. (*See* RFJN, Ex. C, LOE, Ex. 3; Motion, p.7:18-20).  Therefore, the Lassen Court currently has jurisdiction over the animals, and all requests to address or modify the order should be directed to it.  Additionally, pursuant the aforementioned order, any seized animals may be released to their record owner upon a sufficient showing of ownership and ability to care for the horses.  (RFJN, Ex. C, LOE, Ex. 3).  As a result, this Motion is entirely improper because Bennett's rights and remedies regarding the seized animals should be addressed in, and have been defined by, the Lassen Court.

## 6. BENNETT'S ACCUSATIONS AGAINST THE APPOINTED RECEIVER AND COUNSEL FOR CREDITORS ARE LTTLE MORE THAN PROJECTIONS OF BENNETT'S OWN BEHAVIOR AND SHOULD BE DISREGARDED BY THIS COURT

Throughout the Motion, Bennett makes wild accusations regarding alleged "bad faith" by the appointed receiver and counsel for Creditors, Timothy M. Ryan.  What Bennett's accusations lack in evidentiary support, he attempts to substitute with pure bombast.  From accusing the receiver of doing damage to the Subject Property, to alleging that counsel for Creditors has made every effort to ruin Bennett's life, the Motion is a practice in projection- Bennett having participated in the very things he alleges have befallen him.  Not only are these allegations devoid of any evidentiary support, they do nothing more than provide a dark glimpse into Mr. Bennett's nature.

First, Bennett alleges that the receiver has not properly performed her duties. (Motion, p.7:5-10).  In doing so, Bennett alludes to a failure to "protect the property" on the part of the receiver.  As an initial and dispositive matter, Bennett provides no evidentiary support for this assertion.  Neither in his declaration, nor in his accompanying exhibits does Bennett provide any proof that the receiver has failed to perform her duties adequately.  In addition, this assertion is almost comical in consideration of the well-documented damage sustained by the property, and animals thereon at the hands of Mr.

5

Bennett. For instance in their motion for relief from stay and to excuse the receiver from the turnover requirement, Creditors showed this court, with alarming detail, how Bennett destroyed the Subject Property. (Docket Nos. 48, 50-52). Included in these gruesome details was evidence of Bennett's allowance of several feet of manure to inundate the barn stalls, his failure to provide food for several horses that starved to death, and his complicity in the overall decay of each of the buildings on the Subject Property. (Docket Nos. 48, 50-52). It is difficult to conclude, then, that the receiver took any part in harming the Subject Property.

In addition, the Motion makes the unfounded allegation that the receiver has failed to properly file necessary inventories. (Motion, p.2:1-5). In making this allegation, Bennett actually provides supported evidence. Namely, he admits that he removed and/or concealed all of the documents necessary for the receiver to perform a proper inventory. (Declaration of Bennett, Docket No. 148, p.3:1-3). It is telling that the one assertion Bennett has made with proper evidentiary support is an indictment of his own improper behavior.

In addition to providing a host of misinformation regarding the pendency of the subject receivership, Bennett has also made dastardly allegations against counsel for Creditors, Timothy M. Ryan. In fact, upon reading the entire Motion, one could conclude that its purpose is to simply show the world that Mr. Bennett really does not like Mr. Ryan. However, in none of the improperly alleged, unsupported allegations, does Mr. Bennett make a substantive connection between the purported acts and the relief sought.

For example, the Motion alleges that Mr. Ryan "used the 'receiver' not only to oust the debtor from possession, but had him jailed, illegally seized the animals . . . put together an entire package . . . as the case against debtor for prosecution . . . had the animal rescue gather [sic] volunteers call the District Attorney and force him to file charges on debtor, helped make sure that a SWAT team, heavy artillery, take down (meaning deadly force) was authorized . . . and tried to get others to go along with him by using glib remarks." (Motion, p.4:15-25). Supposing that Bennett had provided

admissible evidence showing these things, none of them, if true, would tend to support the alleged purpose of Bennett's Motion.  For instance, had Mr. Ryan had the power and influence to command a Lassen County SWAT Team with "heavy artillery," it is impossible to conclude this (albeit impressive) power is grounds for termination of a receivership.  On the contrary, these unfounded allegations speak to the level of Bennett's own inability to manage his affairs.  Instead of taking responsibility for his own admitted arrest on animal cruelty charges, Mr. Bennett files a Motion in bankruptcy court alleging that a real estate attorney with a rogue SWAT Team made the arrest.

Clearly, the allegations in the Motion utterly lack evidentiary support. Furthermore, it is clear that the allegations are the fabrication of a man who is in constant conflict with the truth. Therefore, the Motion should be denied in its entirety.

## 7. CONCLUSION

As has been established clearly above, Bennett's Motion is devoid of any legal or factual support.  The very foundations of the Motion are purely fictional, and known by Bennett and his counsel for be false.  Furthermore, Bennett has provided no evidentiary support for any of the factual assertions he has made in the Motion.  For all of the foregoing reasons, this Motion should be denied in its entirety.

DATED:     March 15, 2012                    THE RYAN FIRM
                                             A Professional Corporation



                                             By:   /S/ AUSTIN T. BEARDSLEY
                                                   TIMOTHY M. RYAN
                                                   AUSTIN T. BEARDSLEY
                                                   Attorneys for Creditors WELLS
                                                   FARGO  BANK, N.A., as Trustee for
                                                   MLMI Trust Series 2005-HE3; and
                                                   BAC HOME LOANS  SERVICING,
                                                   LP