**FILED**

June 23, 2012

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004305485

**9**

Carolyn Chan sbn147978
2485 Notre Dame B. Ste. 370
Chico, CA 95928
Telephone: 530.359.8810

Attorney for
Dwight Bennett

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIV.

| | |
|---|---|
| In re | Case No.: 11-40155-A-7 |
| | DECLARATION OF CAROLYN CHAN IN SUPPORT OF FACTS AND DEBTOR'S TEMPORARY INABILITY TO DETERMINE EXEMPTIONS PROPERLY |
| Debtor.                    ` | Date:   07/02 /2012 |
| | Time:  10:00   Dept: Ctr 28 |
| _____/ | |

I, Carolyn Chan do hereby declare as follows:

  I am over the age of eighteen years of age and if called upon to testify in court, could do so competently as to the facts below.

  I have been trying to help debtor on his case for about 10 months. Although familiar with the bankruptcy case at the turnover point of October 2011, I was not readily familiar with all of the very involved and complex facts that had gone on in Lassen County.

---

Declaration of C. Chan

From the first time I filed anything in this Court on this case, I attempted to shed light on the suspicious tactics of Ryan as bank counsel, because in illegal seizure cases, due process is always an element. Due process being an integral issue in many Federal cases, it stands to reason that we cannot, as court officers, stand by idly while we seem to be viewing it (loss of due process) in Court documents.

Thus it was my opinion that Ryan had engaged in illegal seizure from looking at the filed documents and that such seizure, *payment of alleged amounts of $40,000 or $80,000 or more to another party (animal group) whom Ryan also claimed to represent*, and Ryan apparently having debtor's property *seized BEFORE he had any relief from the stay*, and before any excusal of turnover was granted — such actions indicated harm to the debtor and fraud on the courts.

In particular, using the sham "Receiver" is a complete fraud on the courts in my opinion, because an equity type receiver is normally reserved for large corporate entities, or at least medium sized multi family units or retail liquidation of some type, and this sham "Receiver" was under alleged rents and profits. We had to have research done on the issue of receivers and how they function in such a situation. Accordingly, there was nothing we could find that would support the methods USED by Wells Fargo Ryan with the sham "Receiver."

Apparently the "Receiver" issues were perhaps, not clear enough, or egregious enough for the Court at that time, to think that perhaps Wells Fargo Ryan via "Receiver" had done something amounting to fraud on the court, or illegal acts, abuse of process, or perhaps several violations of the stay, or lies about the automatic stay, or payment by Wells Fargo Ryan to a third party to seize the illegally gained property, and then claim it was all debtor's fault, which seems so far fetched that it was almost laughable. If only it wasn't true and not so illegal. Unfortunately, it is true and it is illegal.

2

Lassen State Court would never find fault with the "Receiver" because the state court already allowed the sham "Receiver" to be appointed. There is absolutely no chance in the world that Lassen County court could ever properly consider any claims against the sham "Receiver" because the Lassen County State Court couldn't even determine whether a "Receiver" was appointed under a valid order, much less anything else.  Further, I was present in Lassen Superior Court for one hearing only, and that was enough to convince me that there was no chance whatsoever to be able to obtain any semblance of justice, it might well have been the dog and pony show of the year.  Anything that Wells Fargo Ryan pursued was immediately granted, so I then realized what type of actions debtor was facing. It was definitely hopeless to obtain any ground for debtor.

We will recall that this Judge stated he did not know what a bankruptcy petition was, after 30 years on the bench, claimed that it did not appear to be a legal document having much effect, and the *Judge ignored the bankruptcy petition* , listened to Wells Fargo Ryan, and put debtor in jail because Ryan stated it was not a creditor action,  they kicked him out of his house via the sham "Receiver."  They cited it as contempt of the sham "Receiver" order. What we would call it is a violation of the automatic stay. But not in Lassen County.


What Lassen County did not either realize or care about,  was why the Receiver was a sham, yet an "order" (alleged for adjudication of equitable lien-mortgage)  exceeding the court's authority/jurisdiction got signed.  Does Judge even know how to read an order there?   It is true that state court judge has refused to *enter a judgment* on the order that he signed (which was void) – but that doesn't mean it won't happen. If Lassen State Court judge can't figure out a bankruptcy petition, or how it would affect an alleged contempt,  I certainly don't see how he would know an invalid order exceeding the court's jurisdiction, or whether an order granting

3

"equitable" mortgage was correct, since DEBTOR pointed that out a year ago, and Judge ignored debtor. Judge also considered debtor's opposition in November and ignored it again. Since the antics of Ryan closed off the appeal of the order, it would not be appealable now. I only found out earlier this year that Ryan claimed to have served it to me. He did not do so. Had he done so I would have immediately told the client.

Nevertheless, having seen those issues, I did report them to this Court. When the seized animals were abandoned, I did not oppose the 'abandonment' because it gave debtor back his property, however *I did state for the record that I believed the seizure was illegal*. I also noted that we would be requesting an inventory of the animals with the help of certified humane officers.

I plan to further help debtor on his bankruptcy case, but am limited due to debtor not having any funds to pay up-front costs, and due to personal medical issues on my part which temporarily, but seriously, limit my ability to do all that I would like to do on debtor's case.

In any event, I did also review many of the available state court documents. My *understanding of how equitable lien-mortgage would be carried out would indicate that Ryan has not done any of the items that would be needed* in order to calculate a dollar amount in any fashion whatsoever. Even worse, in reviewing more of the state court file, it seems somewhat doubtful that Wells Fargo has even properly proven their standing to assert their creditor status. As indicated in my filing several months ago, I noted that the sham "Receiver" was way out of bounds and debtor's property was not to be found. In addition Wells Fargo Ryan continued to press to have his "Order" for "equitable" lien [which is a void order] turned into a Judgment in Lassen County. Presently, Judge has opposition from most attorneys for the other parties, and debtor, and has not issued a judgment, despite Wells Fargo Ryan's pleas.

The order that I finally saw, filed late by Ryan in *this* court, in March 2012, indicated that he obtained an order which in my estimation, is void, since it exceeded the state court's jurisdiction (by adding reformation and first deed of trust) where reformation does not mean equitable lien or mortgage. My opinion is that in the context of such an order, reformation means that Ryan's firm obtained all of debtor's land parcel (est. 54 acres total) and all improvements, without regard to any equity considerations at all.

If true, that would mean Wells Fargo gave itself ALL of debtor's land without proving up first, or proving that it had a lis pendens filed, or that it was even entitled to obtain ownership by proving standing in the matter.

Under that scenario, I would strenuously be disputing Wells Fargo Ryan's assertion that the debtor's ownership percentage, or any equitable process *has even gone forward*. If such a process is claimed to have been done, *it is not reflected* in the State Court records.

Therefore, if in fact the Wells Fargo Ryan "order" has no force or effect, it makes a huge difference in debtor's case. Obviously, debtor is entitled to his exemptions. But how can debtor list an exemption for any part in dollar amount, if there has never been a legal accounting for that parcel? If debtor owns his 40 raw acres with co-owner, shall he value it without any improvements or shall he value it with the actual improvements that are actually on it?

That is the exact question that Wells Fargo Ryan cannot prove, because Wells Fargo Ryan keeps attempting to use a sham "Receiver" coupled with some bogus equitable claim but he doesn't have a lis pendens, doesn't get numbers for assessment values, and has not calculated the data, [on purpose]– because he simply IS NOT GOING TO DETERMINE ANY EQUITABLE LIEN AND MORTGAGE, PERIOD....

which is why they just keep trying to illegally take all of it and dump debtor.

In addition, AS FOR EXEMPTING personal property,  it is not disputed that debtor did own quite a bit of hard goods as he is known for obtaining goods via trade and then selling them. Witnesses can attest to many years of this, and many people have seen debtor's property.  If such hard goods were converted due to Ryan implementing the "Receiver" who he knew would do nothing (since she had no idea what to do but had to follow instructions from the Ryan firm which she admitted in Court) then it is fairly safe to say that whatever debtor finds is missing is in part due to the subterfuge of Wells Fargo Ryan, and the sam "Receiver",  since debtor was kicked off the property *illegally long ago post petition*, and  Ryan apparently told the media and the public,  *the property "was foreclosed upon", which would have triggered the Tenants in Foreclosure law of 2009.*   Even if there was no foreclosure then Ryan *would have had to evict debtor* appropriately.

This did not happen, instead Ryan used the sham "Receiver" (under no valid order) and contempted him to jail-- post petition. No attorney was appointed, and the contempt was apparently even noted by Trustee Massey last fall when excuse from turnover was denied by the Bankruptcy Court the first time around. The sham "Receiver" strikes again.


Even further, other attorneys are alleged to have viewed the state court file and from documents that I saw, there *appeared to be attempts to create the illusion* that a lis pendens was actually filed on the property, but there is none filed by Wells Fargo.

Only one page alleging the lis pendens is attached in state court documents, leaving out 2 pages.  I know that is because the lis pendens is NOT that of Wells Fargo, purported successor in interest. It belongs to the co-owner of debtor's property.

*Viewing the Lassen Country Recorder's file shows that Wells Fargo has no lis pendens filed.* Surely a lis pendens from another party does not take the place of Wells Fargo filing its

own individual notice. *It is my opinion that Wells Fargo cannot obtain a lis pendens or does not want to do so for fear that their documents would be deemed predatory.*

Based upon the facts as I know them, it is apparent to me that Wells Fargo Ryan has engaged in some highly irregular, probably illegal, and very damaging conduct, including constitutional claims, in regard to debtor's property, possessions, and any equitable claims to his land. **And just this week (which delayed the filing of my document)**– we found out that the Grace Foundation of Northern California (which got paid by the "banks" to take debtor's animals from the illegal seizure done by Timothy M. Ryan's sham "Receiver") ---- alleged that Timothy M. Ryan lied and claimed via misrepresentation, that the debtor filed bankruptcy AFTER the seized animals were taken by Grace. Of course, we know the physical seizure took place about eight days AFTER debtor filed his petition. Which should have stopped the seizure.

Thus Grace is mad because she wanted to allegedly take the animals, abort the foals, and sell the horses which she claimed would "only bring $350" each, if that. Grace issued what appeared to be contradictory statements concerning the horses, but the illegally "seized" horses of August 2011 did not have medical issues requiring "seizure." If Grace knew such horses allegedly had such awful medical problems *then why would she take them* if she knew she was *not able to afford* the foaling? (Foals have one year gestation)

As for bankruptcy procedure, I believe that the actions I have seen taken by Wells Fargo Ryan against debtor are highly suspect, egregious, and tantamount to conduct that could be termed as moral turpitude, especially where Wells Fargo Ryan paid the animal group $40,000-$80,000, possibly more, to *TAKE the debtor's property illegally* and then Ryan subsequently lied about it by misrepresenting when debtor actually filed bankruptcy. The animal group is accusing Ryan of

fraud and misconduct for representing both the animal group and the bank *at same time*, and for lying about the bankruptcy filing date, and causing the animal group to have taken debtor's property in violation of the stay. I have personal knowledge that Ryan held himself out as representing the animal group because he stated that fact to me.

But judging from the Lassen Court files, Wells Fargo Ryan has done this type of questionable conduct since last year, and possibly the year before that.

Example: Wells Fargo Ryan filed 8/25/11 for "excusal of turnover" in this court, which was denied. YET he gave away and transferred debtor's ILLEGALLY SEIZED property, while under bankruptcy, the DAY AFTER HE FILED THE MOTION. It was illegally seized by the sham "Receiver" and purportedly Lassen County was in on it. Were they?

The seizure by the sham "Receiver" struck again.
Ryan isn't fooling us with his sham "Receiver." We know it's really Ryan. It's almost a joke. Ryan uses the sham "Receiver" thinking that no one  recognizes the illegality of how he set it up. Lassen court judge might not know, but we know.


I also believe that Wells Fargo Ryan has attempted to mislead the Trustee's attorney re the debtor. When *Ryan told the Trustee* that debtor could NOT even view his OWN personal property, I believe the *Trustee's attorney* should have told Ryan that debtor is ENTITLED to view ALL of it. And I believe Wells Fargo Ryan led Trustee's attorney to abandon debtor's animals so that Wells Fargo Ryan *could try and lessen the taint to Ryan*.  *It didn't work*.


I do not state this without the knowledge of what occurred in the court files.  In fact I believe that the court files in State Court were tampered with because they differ from what we saw in the record months ago. In fact a document claiming that Judge McManus had ordered the

tenants of debtor off the property was seen in the file. **It is no longer there now**. Judge Mc Manus never ordered any tenants of debtors off any property.

In any event, I stand by my declaration. You can only fool some of the people some of the time. In this case it took awhile but Wells Fargo Ryan and his sham "Receiver" should be shut down for good.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 21, 2012                                 __/s/__Carolyn Chan_____
                                                                    Attorney for Debtor