

FILED
August 07, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004378132

**14**
Carolyn Chan sbn147978
2485 Notre Dame Bl. Ste. 370
Chico, CA 95928
Telephone: 530.359.8810

Attorney for
Dwight Bennett

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIV.

| | |
|---|---|
| In re | Case No.: 11-40155-A-7 |
| | **POINTS AND AUTHORITIES** |
| DWIGHT BENNETT, | IN SUPPORT OF DEBTOR'S REQUEST |
| | FOR ATTORNEY FEES ON  MOTION |
| | TO INVENTORY AND OBTAIN |
| Debtor | PERSONAL PROPERTY FOR DUE and |
| | GOOD CAUSE |
| -----------------------------------------/ | |
| | Date:  08/ 13  /2012 |
| | Time:  10:00am        Dept: Ctr 28 |

## BACKGROUND OF THE CASE

This case is actually a land dispute foreclosure case which was turned into a national debacle against the Debtor personally,  by the attorney Timothy M. Ryan, for the banks (Wells Fargo and Bank of America) who alleged they were first the "non monetary" interest, but upon being held to answer,  then changed, to alleged  "creditors" according to the testimony of Mr. Ryan and as shown on all of the court documents.

Inasmuch as one cannot be "both" the non monetary and the "creditors" it goes without saying that this case is HIGHLY suspect to say the least, giving rise to the question of validated standing, which, quite frankly, has never been proven up. In addition,  attorney Timothy M. Ryan has been sued upon the basis of fraud and misconduct by the non profit third party

("The Grace Foundation") which worked in concert with Ryan to seize Debtor's animals via illegal seizure and who was paid [by the banks] ---- to take the Debtor's animals.

Upon Mr. Ryan and Grace mounting a personal, national campaign to defame the Debtor as an abuser of animals, both Ryan and Grace engaged in defamatory actions against Debtor. This resulted in significant, provable harm to Debtor, which compounded over time. Strangers in public places would cast aspersions and grab their children, trying to shield them from Debtor's presence. That is how successful the defamation caused by Ryan and Grace was.

When Debtor filed bankruptcy after the illegal seizure, both Ryan and Grace then worked to give the District Attorney data so that Debtor would be 'prosecuted', since the District Attorney did not believe there was evidence to bring a prosecution forward. Remarkably, Ryan himself then attempted to use subterfuge upon the State and Federal Bankruptcy Courts to hide the fact that the Debtor's animals had been illegally seized; further, Ryan then filed bankruptcy court documents which alleged that the "seizure" was valid because Ryan's "Receiver" had filed the seizure motion.  Unfortunately, the seizure was illegal, and was done illegally by Mr. Ryan, violating California law, the Penal Code-- even though he claimed it was the sham "Receiver."

Subsequently, Mr. Ryan and his law firm have prevented Debtor and the Chapter 7 Trustee,  from being able to properly categorize Debtor's property by holding Debtor's property hostage, and at all times have refused to let Debtor view, touch, or otherwise take his own property, most of which [after Receiver allowed theft] is likely not worth much, and likely exempt.

Ryan  using his employees and the sham "Receiver", ensured that Debtor could not go inside the residence to take back his own personal belongings, nor was he allowed to view any of his property, *despite* attempts by the Chapter 7 Trustee in 2011, and then again in 2012.

**Debtor therefore is forced to bring this motion forward, especially since he received new** evidence that the third party (The Grace Foundation) had given away, sold, or otherwise converted some of the Debtor's property (animals) without legal authority.

The Grace Foundation does not own Debtor's animals and has no legal authority over them
except as temporary physical custody, nothing more.

        And the Grace Foundation was **recently "offered"   $400,000** by **Mr. Ryan's clients the
banks,** to sign a 10 pg. release and go away.  CLEARLY this indicates Debtor's case is far, far
from being done. This is not a simple case within a bankruptcy.  This is a fraud case running
rampant and Debtor filed Bankruptcy in desperation to stop it.

        Very suspect, highly irregular, and while Debtor's counsel can prove such fraud, Debtor's
counsel does not work for free and must be paid a down payment, at the very least,  by Debtor
selling some of his personal property. Other attorneys have quoted Debtor between $10,000
upward to $70,000– so the Court can see this case is not a simplistic one.  Debtor's attorney has
yet to be paid since the alleged "Receiver" is holding all of Debtor's property hostage.

---

I

### ALLEGED CREDITOR BANKS and "RECEIVER"  HAVE NO LEGAL
### RIGHT TO KEEP DEBTOR'S PROPERTY HOSTAGE

        Debtor believes there is no authority under the Bankruptcy Code which would enable
creditors to keep a debtor's unencumbered  personal property hostage. We are not talking about
secured items that such alleged creditors have any claims to in this case.

        Alleged creditors have, if anything, only a potential interest in the disputed
land/improvements "claim", but nothing more. In fact, such alleged creditors have not even
FILED any proof of claims whatsoever. Nor have they even filed a lis pendens.

        Upon this set of facts, it seems highly unlikely and virtually impossible to believe that
such alleged creditors have any rights at all to even engage in such conduct.

        Without more, the alleged "Receiver" and alleged creditors are simply holding Debtor's
possessions and personal belongings so that he can neither see, touch, or take or use such

3

everyday items.  Such behavior should never be allowed or condoned by the Bankruptcy Court.

Debtor has no funds, and remains homeless and jobless thanks to the widespread defamation created by Ryan and the The Grace Foundation while alleged "Receiver" and creditors ejected him from the residence ( without using due process statutory eviction proceedings.)

Therefore Debtor has been unable to pay his attorney to bring forward any motions. Unfortunately, Debtor's attorney is now working without compensation and thus must ask for fees in this egregious matter.


## II

### BANKRUPTCY CODE SECTION 725, SECTION 726<br>DO NOT AFFECT DEBTOR'S PERSONAL POSSESSIONS OF EVERYDAY<br>NECESSITY, AND THERE ARE NO CLAIMS FILED BY BANK CREDITORS


The Disposition of certain property (Code Section 725) and Distribution of Property of the Estate (Code Section 726) regulate claims specified in, and in the order specified in, Section 507 of the same title.  Administrative and community claims do not apply to alleged creditors and they definitely do not apply to the alleged "Receiver."  Nothing in these code sections have any effect on the alleged creditors' claims, therefore, it is nearly impossible to find any reason for having held Debtor's mostly likely exempt property --- hostage.

The only possible reasons would be to *prevent Debtor* from viewing or touching or being able to obtain his own property of a personal nature.

There can be no reasonable excuse for this by alleged creditor banks, or their "Receiver" controlled obviously by attorney Ryan.  This is more than proven by the efforts of both Debtor's counsel, working with the United States Chapter 7 Trustee, *in attempts to procure and view and take Debtor's personal property.*

Upon each attempt to retrieve ANY personal property of Debtors,  the Ryan firm controlling the "Receiver" refused to allow it.

4

On other occasions Mr. Beardsley of the Ryan Firm told the Chapter 7 Trustee that she would have to personally, physically carry out each item that Debtor had, in order to bring it to the fence line.

Not unreasonably, Madam Trustee refused to conform to this bizarre and unethical stunt. Debtor is not required to BEG to take his own personal property, nor will Counsel for Debtor stoop to such an extreme and insane position.

While Debtor's counsel understands that this illegal action of blocking Debtor's ability to obtain his own personal property is highly viable in the context of proving overall fraud and willful actions,  Debtor cannot afford to pay his atttorney one cent unless he is able to sell some of his personal property, most of which is exempt [due to conversion, theft, etc under "Receiver" control.] Hence, obtaining the personal property for Debtor must be done without hindrance from either the alleged "Receiver" or the banks attorney.


III

**BANKRUPTCY CODE SECTION 722 DOES NOT APPLY TO ALLEGED CREDITORS**

Bankruptcy Code Section 722 applies to Redemption– usually from a lien securing a dischargeable consumer debt.  Debtor has no such debt. But even if Debtor did have such debt, the alleged creditor banks have nothing to do with any of Debtor's personal property.  Therefore, the alleged creditors could not claim they have liens on consumer debt as to debtor. Further no proofs of claim [OF ANY TYPE AT ALL] have been timely filed by alleged creditors.


IV

**ALLEGED CREDITORS HAVE FAILED TO FILE ANY CODE**

5

### SECTION 523 EXCEPTIONS TO DISCHARGE

The alleged bank creditors have not filed any exceptions to discharge under Section 523 of the Bankruptcy Code. IF such alleged creditors had such claims, they surely would have considered them by now.  Most issues arising from Section 523 in regard to alleged fraud bring up the issues of collateral estoppel or res judicata, and evidentiary issues. In this case, Debtor has neither seen or viewed any claims whatsoever filed by alleged bank creditors.

IF such alleged creditors had any claims, it would seem that they would have filed them timely since it has almost been a year since Debtor filed his petition in the Court.  Since none have been filed or served upon Debtor or Debtor's counsel, it is assumed that no exceptions apply and that such exceptions would not likely apply to everyday household goods.


### V

### BANKRUPTCY CODE SECTION 543 DOES NOT AUTHORIZE ALLEGED CREDITORS or "RECEIVER"  OR  ATTORNEY TO KEEP OR CONTROL THE PERSONAL POSSESSIONS, PROPERTY, EXEMPT ITEMS, OR EVERYDAY HOUSEHOLD GOODS, CLOTHING OR OTHER ITEMS SUCH AS HIGHLY PERSONAL  BELONGINGS OF DEBTOR

### VI

### NOR DOES IT AUTHORIZE ANY PROPERTY NOT HELD AS SECURITY FOR THE ALLEGED  MORTGAGE "LIEN" WHICH IS ONLY UPON THE IMPROVEMENTS IN THIS CASE

Bankruptcy Code Section 543, concerning turnover,  was used by alleged creditor banks to take over the *residence* property of Debtor upon "excusal of turnover"  [Debtor was ejected without proper eviction procedure] -- does not  authorize nor  allow either the alleged "Receiver" or creditor attorney to keep, hold hostage,  or otherwise convert, give away,  or sell of  any of the personal belongings or property  of debtor.  Rather the Code Section replaces the Trustee with the "Receiver" but "Receiver" is still held as an agent of the court and must report to the Court.

Alleged creditors had a "rents and profits" alleged "Receiver" appointed.  **Such a**

**Receiver, even if validly executed, does NOT extend to take the Debtor's personal property.** At best, such "Receiver" is there ONLY to protect the property which is under the order, that being the residence — not all of Debtor's property IN and OUTSIDE of the residence.

It was undisputed that when the "Receiver" was first sought in June 2011, the Debtor had lost some of his business and was not able to necessarily run his former riding stable; however, since the illegal seizure of Debtor's animals cut off his ability to run a riding stable, obviously there was no riding stable left to run regardless. Upon this set of facts, if there was any animal-related property in existence [which there definitely was], the "Receiver" was not authorized to seize and sell such property. Nor was the "Receiver" authorized to pillage the residence, stable or storage of the residence.

It is a well held tenet in California receivership, that taking possession of property in a foreclosure proceeding by a "Receiver", the authority of the superior court does not authorize the "Receiver" to simply sell "all of the property in his possession." *Turner v Superior Court*, 72 Cal.App.3d 804. Justice Cardozo in DuParquet Huot & Moneuse Co. V Evans (1936) 297 U.S. 216, explained that a rents and profits "Receiver" is NOT a full equity or general receiver; the corporation retains its other property, if it has any...[i]f the receivership is one for foreclosure of a mortgage...such a receivership *does not* connote possession of all the property of the debtor, or even all the property within the appointing jurisdiction.

Accordingly, Clark, in his treatise on receivers, states that "Property not involved in complainant's mortgage...is not property in the hands of a receiver." (4 Clark, Law of Receivers (3d ed. 1959) Section 936.) And similarly stated: "a mortgage covers the land and building– not the business enterprise housed." (Osborne, Mortgages (2d ed. 1970) Receivership, section 157, p. 266.)

Unfortunately, State Court Judge has no clue as to how a valid "receivership" works, and with the Debtor being put into JAIL by the Judge upon the Contempt charges by the "Receiver",

it is all but a foregone conclusion that such Judge would never entertain Debtor's assertions on the bogus "Receiver." If Debtor approaches the Court in Lassen County, Ryan simply files another "contempt" and has him jailed. This has already happened.

Based upon recent information and belief, Debtor believes that "Receiver" has allowed much of his personal belongings to be converted, stolen, removed or otherwise damaged. Further all of the horse related items such as tack and other tools used in the horse business were removed by the "Receiver" and none of this property was ever *listed* on the ONE and only "Receiver" inventory---- ever submitted to any court; many items have yet to been accounted for.

Thus it appears obvious that such property was moved or converted without authority under the "Receiver's" watch. This only increases the damages that will accrue to Debtor in the end.    But this is not an isolated  "Receiver issue" — **this is a bankruptcy issue involving the Debtor and his property which is NOT owned by the "Receiver."** The "Receiver" is simply committing unlawful and completely unreasonable acts [such as illegally holding Debtor's personal property hostage, even against the Chapter 7 Trustee...] and is using the "contempt" threat against Debtor, such that Debtor simply cannot approach the residence at all.

———————————————————————————————————————————

*Debtor should NOT have to face being arrested yet again, simply to get his own personal property back. There is a serious corruption issue here. In fact, it appears that Lassen County is even working in collusion with Mr. Ryan or his "clients" since witnesses have indicated that they were paid to take and sell Debtor's personal property, and to steal Debtor's data on a hard drive by feigning friendship in order to access Debtor's personal belongings.  Further, Ryan has obtained privileged emails from Debtor's counsel to another attorney, and emails from Debtor to his attorney; counsel's PACER account + ATM account were hacked, and threats via phone have been made to counsel since representing Debtor stating counsel had better quit the case.
This case is  not yet recognized as a  foreclosure case which has *very* serious implications, and very high financial implications to Wells Fargo, who has no standing in the case. Therefore the desperate actions of Ryan are well-understood based upon the monetary interest riding on the outcome of the foreclosure that Ryan will never get, because we will not allow it. This case should be investigated by the AG/ FBI. Few foreclosure cases go past the 1 year mark. This case is over 5 years old and when the banks already offered the third party **"non profit" $400,000** to sign a waiver/release, [after illegal seizure by Ryan]--  it is  obvious what is going on here.

VII

**THE ALLEGED "RECEIVER" IS A RENTS AND PROFITS, APPOINTED UN DER CCP 564(b)(2) and CCP 568 [Powers of Receiver] and HAS NO POWERS**

## SUCH AS AN EQUITY RECEIVER, WHO CAN TAKE
## POSSESSION OF ALL ASSETS

Equity receivers appointed by federal courts usually are charged with locating, marshaling, and safeguarding assets for ultimate distribution to investors or consumers and determining whether the business for which the receiver is appointed can be operated legally and profitably.

This type of receivership is totally different from a rents, issues and profits receiver. An equity receiver is generally appointed in connection with an action brought by a governmental regulatory agency. The receiver will take possession of all assets, for the benefit of all parties ultimately shown to have an interest in those assets.  A very high burden of proof is required to obtain this type of appointment.

The alleged "Receiver" in Debtor's case is NOT an equity receiver. (The state court judge has no idea how an equity receiver works and apparently is not concerned, since Judge found Debtor in "contempt" and placed him in jail.)  Judge will apparently do this whenever Ryan files a contempt motion.  Debtor is not in a position to be placed in jail again.

*Since the "Receiver" on Debtor's case has no authority over DEBTOR'S personal property*, if such "Receiver" acted as if she was the Chapter 7 Trustee, the protocol is to assess the estate and then only liquidate that which is possible to legally sell, excluding statutory exemptions and exempt property. Since bank creditors have no liens or claims filed against the Debtor, they have not timely asserted claims against the Debtor and do NOT have a lis pendens filed against Debtor's land or the improvements.

Thus it is almost impossible  that ANY of Debtor's personal property would end up benefitting the banks as purported creditors who have failed to show standing as creditors in the first instance.

And surely under the law of receivers, there is absolutely no legal authority for hindering, seizing, or otherwise keeping, converting  or selling off Debtor's personal property.

1    Therefore, there is no reason why Debtor should not be able to inventory and obtain his

2  own property, especially the property that can be reasonably moved, exempted, and kept by

3  Debtor or even sold. It will not run afoul of the Bankruptcy Code regulations as long as an

4  inventory is properly done.

5    The alleged "Receiver" and bank attorney Ryan  has absolutely no legal right to STOP

6  Debtor from accessing his own property.

7

8    **The fact that Ryan obtained an order ejecting Debtor from the property should**

9  **NOT prevent Debtor from being able to physically go into the property to retrieve his own**

10  **belongings, and to inventory the same** * (since the Receiver has only  inventoried  the vehicles

11  and equipment outside.)

12

13    The  huge lawsuit [$20,000,000]  already  filed against attorney Ryan and the alleged

14  creditor banks *for fraud in the illegal seizure by Ryan of Debtor's property*, **indicates there is**

15  **far more wrong in this case than appears on a facial basis.**

16

17

18

19

---

20  *The only possibly result could be that  Lassen county sheriffs are paid to follow, hound and
   arrest Debtor for going anywhere, not just near  the property, therefore if the Bankruptcy Court
21  orders that an inventory/retrieval of Debtor's property is allowed, the county sheriffs should
   abide by that order and not arrest Debtor. Deputies have persistently pulled Debtor over when
22  driving.  As an example, recently Debtor was not in his own car but allowed a friend to drive it
   and when nearby the former residence, the sheriffs swooped down on the driver of Debtor's car
23  and arrested them, even though Debtor was not even IN the car and then impounded the car. It is
   believed the trumped up charges are to be dropped.
24  The Bankruptcy Court can only be the victim of subterfuge by attorney Ryan for so long— it

25  must be stopped.  **Debtor should not have to entertain excessive legal fees when his own**

26  **property is held hostage by the  "Receiver"** who is ACTUALLY Mr. Ryan.  At what point

27

28                                                    10

must the Debtor keep petitioning an inferior court to recognize fraudulent actions?  It is  useless and Debtor will end up in jail. So far ingrained is the subterfuge, fraud and  deception upon the state court,   the state court is simply a mere puppet of attorney Ryans' misconduct, whether knowingly or unknowingly, we are not debating.  It is apparent that under Code Section 543, there has been a decisive breach of duty, under the affected receivership code, CCP 564(b)(2), subterfuge of law, or other illegal action,  because the Bankruptcy Court was MISLED to believe that a LEGITIMATE "Receiver" was actually employed. If such "Receivership" was legitimately employed, we would not be forced to file the instant motion.

FAR FROM IT.

**The Ryan law firm is controlling the "Receiver"** and has been doing so improperly, despite opposition  efforts by Debtor **[including being jailed for contempt  after showing Judge his bankruptcy petition]** and physically hunted down in the county in Ryan's relentless "contempt" motions ------- *it is fairly evident that neither the Ryan law firm or the "Receiver" have any authority or rights to keep Debtor from his own personal property or personal belongings, or necessities.  Yet they have done exactly that.*

SUMMARY

The egregious totality of circumstances in this case indicate not only a highly suspect,

11

patently wild and out of control pattern of abuse upon the Courts, but outright demonstrated and continued behavior by both attorney Timothy M. Ryan for his alleged creditor banks, and the sham "Receiver" set up also by Timothy M. Ryan, under the claim that such "Receiver" is a court appointed entity.  Court appointed yes, but illegally enforced as a claim and delivery agent or complete equity receiver,  and controlled by *Mr. Ryan himself.*

There is no other explanation that can ***explain why*** any "Receiver" in his/her  right mind, being a "neutral" alleged "rents and profits" receiver---- **would purposely withhold any personal property, household goods, or personal possessions from a Debtor.**

There is absolutely no reason, no reasonable apprehension that could explain why the Ryan Firm has purposely prohibited Debtor from viewing and taking personal possessions and household goods.  The sham "Receiver" *does not own* the Debtor's personal possessions, and even if of little or no value, is of little relevance.

**The fact that Madam Trustee herself was told by the Ryan Firm that she should personally and physically hand carry Debtor's personal property, and then walk,  with each item, one by one,  to the fence line is so absurd as to border on bizarre, not to mention unethical.**

**For Chapter 7 Trustee to refuse such an abhorrent request is completely reasonable and sane.  It is quite apparent as to what is continuing in this case, and that is purposeful subterfuge, blatant outrageous conduct, and knowing and willful conduct on the part of attorney Timothy M. Ryan and his sham "Receiver."**

We are not misled by these antics, and should not even be a part to such shameful and lowly behavior.  It goes without saying that such objectionable conduct is FAR beneath that which any officer of the court should subscribe, much less continue to do.

12

We are quick to admit, however, that it is *exactly in line with Mr. Ryan's "penis measuring contest" comment he made online, on Facebook, no less*, in publicly describing a Lassen County hearing where Ryan was bragging about his prowess in getting Debtor's tenants ejected from the premises by using his "contempt" power. Those comments have already previously been filed with this Court, indicating a pattern of such conduct.

Without more, it is quite apparent that if Debtor's counsel does not force the issue of "hostage holding" of Debtor's property—as just one example---- there will never be any progress in this sad case, and there will be no "debt relief" whatsoever for Debtor.

We would find the State court would JAIL the Debtor again for contempt. That would be not only foolhardy, but just plain ridiculous. This is not a state court issue, this is a direct subterfuge upon the law, and the Debtor's rights.

The Bankruptcy Court will have ample evidence brought forward soon, likely creating more long drawn out litigation for Debtor, but Debtor's *counsel cannot work for free while Debtor has been labeled as "an asset case", yet Debtor* **is prohibited** *by alleged creditor's attorney-* "Receiver" from being able to touch, view or take any personal property, or to sell even some of his property to cover any legal fees.

Under this set of facts, it is more than amply demonstrated that Debtor should be entitled to an award of legal fees and costs which, as outlined in the instant motion, are required by being FORCED to FILE such action, since all reasonable attempts at solving this absurd situation

13

have been met by spurious conduct of the Ryan Firm, amounting to that seen on the Jerry Springer Show or Los Angeles based  Reality TV shows---- *not legal actions of purported attorneys and officers of the Court.*

Debtor's counsel's fees  are conservatively calculated at $4,250 and requested *forthwith*.

//


Dated: 08/06/12                                    _____/s/_Carolyn Chan, Esq.___

                                                   Attorney for Debtor Dwight Bennett