**16**

Carolyn Chan sbn147978
2485 Notre Dame Bl. Ste. 370
Chico, CA 95928
Telephone: 530.359.8810
Attorney for Dwight Bennett

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIV.**

In re

DWIGHT BENNETT,

Debtor.

_________________________________/

Case No.: 11-40155-A-7

OPPOSITION TO STAY RELIEF AND NOTICE OF DEBTOR'S OWNERSHIP OF LIVESTOCK PROPERTY AS LISTED IN PETITION SCHEDULE B- #31 AND ADMITTED AS SUCH IN LAWSUIT FILED BY GRACE FOUNDATION CASE NO. PC20120382 AGAINST BANKS+DEBTOR ORIGINALLY FILED EL DORADO CO. JULY 2012

Date: 11/15/2012 Thursday
Time: 3:00P Dept: Ctr 28

Banks Wells Fargo and Bank of America, noticed relief from stay on 11/15/12, at **10:34pm at night via email**, purportedly in order to allow Lassen county to take the livestock currently owned by debtor Dwight Bennett, [Exhibit **_A_** , bankruptcy doc #40, Schedule B] or to change ownership from Dwight Bennett, or to have such livestock moved, sold, "adopted" or otherwise possibly liquidated.

**As can be seen, the "banks" (Wells Fargo and Bank of America) admit they have absolutely no interest in the livestock** and they consistently state this fact, which begs the

question as to why they would petition for relief from the stay when they actually should have no standing to do so, since they have absolutely no interest in the livestock, except for the fact that Mr. Ryan, the attorney who used to represent the banks, and had to be replaced, acted illegally in originally having the livestock seized at all. The illegal seizure is not disputed by any party. By Mr. Ryan (1) setting up a "Receiver" to improperly seize the livestock, who then (2) alleged to have given it to "Lassen county" on paper only who then (3) alleged to transfer it to "Grace." This has never been denied, apparently because it is true.

Background of the Case Related to Livestock Seizure

*As noted in the lawsuit against the banks* by The Grace Foundation, **FRAUD is alleged against the banks and Mr. Ryan, and legal malpractice and breach of fiduciary duty are asserted against both the bank attorney Timothy M. Ryan, and the law firm corporation.**

Essentially, it is alleged that Mr. Ryan set up a seizure using the "Receiver" hired by Mr. Ryan who allegedly seized debtor's livestock via a court hearing, but what is NEVER disclosed, is the fact that:

1. Debtor was never allowed opposition to this "seizure hearing", and there was no deprivation hearing, and no "animal abuse" charges had ever been filed against him (but were only filed 3 months later, at insistence of Ryan and Grace Foundation) That no opposition was ever allowed *has never been disputed by any party.*

2. According to the documentation noted at the time several days prior to the seizure, filed by the "Receiver" Vicki Lozano, Lassen County did not have the legal authority to even remove the horses from the owner.[**Exhibit _B_**, "Receiver" inventory notations submitted to Court] It is likely that no authority existed because Debtor was working with Animal Control on a schedule and the livestock had made significant progress which indicates that Animal Control would not try and seize the livestock.

*Debtor's counsel is General Counsel for an SPCA in Tracy, California, and is readily familiar with many of the circumstances seen in animal related cases. Seizure and improper seizure, is an all too frequent method used to simply take the animals or livestock from owners and businesses without having the oversight required. Due process is an inherent part of the seizure process and when the procedures are ignored or purposely avoided in order to gain charges against owners or businesses, what occurs is a resulting deprivation of property without, in many instances, the legal right to opposition because of tactics used by the seizing agency, police, welfare worker, etc.*

*All parties authorized to actually execute seizure warrants are required by law to comport with specific regulations, which can be under the Business and Professions Code, the Penal Code, Food and Agriculture, Fish and Game, and city and county codes. Where warrants are not required are limited to very small exceptions, much like in general criminal law. Therefore when seizing animals and livestock, it is incumbent upon the seizing party to know exactly how those regulations of the particular city or county, dovetail with California State and Federal laws.*

*When these laws are ignored, or not complied with, due process violations can occur and do occur, creating in many instances, 42 U.S.C. 1983 violations. Invalid search warrants, errant affidavits, improper probable cause, etc. will create many foreseeable hazards. Thus when seizures take place, exigent circumstances is considered as one of the exceptions for a warrant. But when there are no exigent circumstances, then obviously the warrant should issue first. Debtor's seizure was labeled as exigent medical, yet The Grace Foundation did not physically seize the livestock for nearly a month following the "seizure" order.* **Obviously there was no exigent medical nor was there a warrant used for seizure.**

Several issues involving Debtor's owned livestock are shown by the following:

    1.  Illegal seizure of the Debtor's livestock by bank "Receiver" [pg. 6, item #27, line 22-23, *Grace complaint*]

    2.  The Grace Foundation *was paid to take* illegally seized livestock [pg.6,item #26, line 16-17, *Grace Complaint*],

creating a troubling issue for the payor to Grace...no proper paperwork or documentation other than a list was used for the illegal seizure.

3. Mr. Ryan, former bank attorney, lying to the Bankruptcy court and State Court re "seizure" facts and "ownership" [pg. 9, item #36, line 7-9; pg. 9, item #38, line 12-16, failure by Ryan to advise Bankruptcy Court that seizure had already taken place, *Grace complaint*]

4. Mr. Ryan, former bank attorney, stating:

'WE NEED TO BE VERY CAREFUL WITH THE MANNER IN WHICH WE DEAL WITH THE HORSES..IF THE BANKRUPTCY JUDGE DOES WHAT HE IS *SUPPOSED* TO DO, THE BANKRUPTCY CASE WILL BE DISMISSED ON MONDAY, **AND WE WILL NOT HAVE TO WORRY ABOUT THE BANKRUPTCY COURT",** emphasis added [pg. 12, line 10-20, Grace complaint]

.and...."**Now, the bankruptcy court has no jurisdiction over the animals** from Whispering Pines and they can be either reclaimed by their rightful owners...**OR ADOPTED OUT BY THE GRACE FOUNDATION**" ...emphasis added... [pg 13, item 59, line 25-27, Grace complaint]

The obvious question being, why would Mr. Ryan need to "worry" about the Bankruptcy Court? And why would they have to be so very "careful" with the livestock?

5. The Grace Foundation sued the banks and DEBTOR, The Grace Foundation acting as an apparent creditor, *has filed a claim against debtor's bankruptcy estate for $2,000,000 (two million dollars.)*

This brings up the question that if the banks have no interest in the livestock, and if the banks claim they are not responsible for the livestock, then why isn't The Grace Foundation's attorney filing the Relief from Stay? Why is the NON-INTERESTED party claiming they have a "hardship" that they will incur? What is the hardship? Too much bad press in the media?

Where is the prejudice? How is the Stay Relief to the Debtor improved when his evidence for upcoming criminal trial is about to be adopted away or given away without an inventory of where the livestock is, or whether in fact, such livestock still actually exists, or was it already sold, which would have already violated the stay?

Had the Trustee realized Mr. Ryan's errant actions when the "abandonment" occurred, the Trustee would not have necessarily abandoned the livestock so quickly. Had we all known of the deception by Mr. Ryan, which The Grace Foundation CEO withheld, the abandonment issue would have been opposed in order to expose the motivation behind it. At that time, such motivation was being hidden because Grace CEO was working WITH Mr. Ryan. Only when the lawsuit came out was more detail made public.

As can be seen, it is apparent that Mr. Ryan for the banks<br>
did not want the Bankruptcy Court to realize<br>
that Mr. Ryan's actions to have Trustee "abandon" the livestock<br>
was done *on the pretext* that<br>
the livestock was of no consequence to the case.<br>
BUT in fact, the livestock SEIZURE IS THE EXACT REASON<br>
THAT THE DEBTOR *FILED* BANKRUPTCY,<br>
AS THERE WAS NO LEGAL TAKING OF THE DEBTOR'S PROPERTY.

The Bankruptcy Court assumed (by reading Mr. Ryan's document) that such police power was exercised by Lassen County. However, the errant seizure was actually done by Ryan, who simply drafted the seizure motion FOR the Receiver. Ryan did not draft documents for Lassen County, and Lassen County did not draft the seizure pleadings.

The Lassen Court rubber stamped Ryan's Receiver "seizure" and did not allow Debtor ANY opposition, or hearing in opposition.

**And we clearly see, Lassen County isn't even interested enough in the seized livestock to file for Relief from Stay, and neither is the interested party, The Grace Foundation**. At best, this is highly questionable and more likely, highly suspect.

So what we appear to have here instead, is a mountain of documents filed by the NON INTERESTED party who actually caused the debacle in the first place, and where that former bank attorney has been given the boot and is now replaced by movant counsel for banks. If that was not the case, then Mr. Ryan would still be here.

The Receiver has since indicated that Mr. Ryan instructed her to NOT turn in complete inventory reports, and Mr. Ryan never turned in the actual inventories created by Receiver. At all times the Receiver *has never been neutral* but instead was completely controlled by Mr. Ryan, as evidenced by the Receiver's final report, which indicates constant contact with Ryan and also attorney Beardsley, formerly employed by Ryan who later quit after Ryan got into trouble in this case.

The Receiver's actions in the illegal seizure *started* the entire debacle of the livestock (belonging to debtor), which then caused the Grace Foundation to become involved with Mr. Ryan, with Mr. Ryan inappropriately REPRESENTING GRACE, in a conflict of interest, at the **"Turnover Hearing" of October 2011, unknown to Debtor's counsel until AFTER the hearing; Ryan was also indemnifying the Receiver via signed contract**, **[See Exhibit D-1]** and the subsequent defamation campaign BY The Grace Foundation *and* Mr. Ryan himself personally, against Debtor spanned 6 months to over a year's time in the media.

Mr. Ryan himself admitted this in his change of venue motion to El Dorado Court, showing that The Grace Foundation had media galore in regard to the Debtor [as an alleged killer of 25 horses], and actions taken by Mr. Ryan, and none of that publicity was on Mr. Ryan's side.

RECEIVERSHIP DISCHARGE HEARING SET, WITH OPPOSITION

Upon advice by *independent counsel*, not Mr. Ryan, the Receiver has issued her original inventory documents that disclose new problems and issues with Mr Ryan's conduct in the case. **The Receiver's discharge hearing (which terminates her liability) is not to be heard until November 28, 2012,** and objections to her discharge are filed or being filed.

Therefore, because the **Receiver's discharge and liability is linked to Mr. Ryan's actions in the past, and because Mr. Ryan specifically signed an indemnification for the Receiver's actions**, it is an obvious issue that Mr. Ryan's clients (the banks) will want Receiver discharged.

**So the banks want the issue of the seizure of Debtor's livestock  
to be out of the way before the Receiver  
encounters opposition at  
her discharge hearing November 28 2012**.

~Keep in mind, the "Receiver"[affected party], Lassen [interested party]  
and Grace [actual interested party]  
are NOT the movants in this motion~ and the banks have a signed indemnification  
as to the Receiver.

By simply looking at the circumstantial evidence and facts indicated in the Grace complaint, and in the Debtor's bankruptcy case, it is rather apparent that the banks have been able to fool the State Court, and perhaps even the Bankruptcy Court into thinking that the livestock should likely be sold off or given away, even when it is evidence in a criminal case which is pending trial? The California Evidence Code requires a reasonable certainty that the evidence is, in fact, what it is purported to be.

When the evidence is missing, there is a foundational issue which can preclude admission of the issue involved. If an alleged starved or abused animal is not reasonably described, pictured, or properly photographed for trial use, it is highly unlikely that one who is not exceptionally familiar with specific livestock is going to be able to testify as to which specific horse or animal had which marks, features, coloration, patterns or breed traits, nor will such non identification help to prove the actual medical status without being reasonably certain, that this specific animal is in fact, the specific animal being presented.

Realizing this, we are aware that the Prosecution Package devised by Mr. Ryan and The Grace Foundation, **have a very very limited number of alleged livestock which they can reasonably identify and correctly describe.** In fact, we have already found that Grace has pictured a horse as named X when in fact, it was similar, but was not horse X.

Debtor's criminal case attorney will need valid authenticated photos of each and every livestock member housed by The Grace Foundation.

A horse breeder which knows the description of each of his horses will know if the horse pictured is the actual horse in question.

By shipping the livestock off, selling it, giving it away, or allowing Grace to parcel it out or keep it, and without the inventory and accounting, we may as well simply tell the Bankruptcy Court to throw out Debtor's property, since it would not only create potential third party liability and possible 42 U.S.C. 1983 added problems, it would fly in the face of all reasonableness.

This is the hardship that would affect the Debtor, NOT the banks.

The banks have no hardship aside from the actions of their now fired Mr. Ryan. The banks are NOT even the interested party in question, and they ADMIT this. So why are the banks filing this motion?

According to the citations given by bank counsel herein, the court must determine whether there is any "great prejudice" to either the estate or the Debtor. Assuming this test to be correct for purposes of this issue, we would then look to the alleged hardship, if any, as to the bank purported creditors, or other creditors.

One of the key creditors is Judith St. John who raises issues in this custody-ownership. And according to St. John, she has been not only disenfranchised of her co owned champion stallion and future progeny, the Grace people allegedly castrated him without authority and even sold or gave away other horses.

It would be Debtor's position that while St. John raises viable issues, her issues are basically against Lassen County and The Grace Foundation, since St. John has filed a Tort Claim against Lassen County for negligence in allowing the seizure of the livestock to start with. St. John's future losses and more are viewable on Exhibit C.

Thus we have the hardship to Debtor, facing a criminal trial, with the evidence being the entire inventory of remaining livestock, for which some have already apparently been sold or given away improperly, we have a Tort Claim- lawsuit against Lassen County, we have The Grace Foundation lawsuit against the banks and Mr. Ryan's law firm, and we now have the "Receiver" indemnified by the banks, but wanting to be discharged from her position, claiming the banks OWE her over $22,000 for her services.

We would be of the opinion that even if assuming the banks definitely have NO interest in the livestock, NO interest in the land/property upon which "the livestock were found", and claiming NO relation to the "original transfer of the horses to Grace [all of this wording taken directly from C. Scott Green's Lassen Court "Brief in Advance of Hearing regarding ownership, care and custody or horses dated November 12, 2012] -----See **Exhibit D2**— we would then see that the banks are not filing this motion for themselves under any hardship at all. Admittedly.

> Contrasting the damage and hardship and foreseeable additional lawsuits that might stem from giving, selling, or moving the livestock under the assertions of creditor Judith St. John, the Debtor himself in his criminal trial (set for December 4, 2012) with the evidence that will be required to be identified, and the obvious but not admitted failure of The Grace Foundation to have her attorney file the instant motion (emergency ex parte as it stands) -- it is nearly impossible to believe that the banks-movants can come anywhere near the level that would be "good cause" existing on their interest. The banks have little and no interest, period, other than to salvage the harm they have already caused by the former attorney.

At this point, judicial economy is hardly the issue since the actual interested parties themselves didn't even bother to try and get relief. And even if the fate of the livestock **was in question**, counsel for Debtor long ago, *offered the viable solution* to Grace which was rejected and no inventory would be allowed.

**This obviously shows a very specific problem in that Grace simply cannot account for the livestock she took illegally. It's that simple. Instead, she wants to keep them while going broke, but doesn't want to ask for Relief from Stay?**

While the State Court did cover the civil case, it should be duly noted, both a Writ and an Appeal were accepted and lodged on the Court's handling of the case. **[See Exhibit D-3]**

Therefore, if the evidence itself is sold, given away and moved to another county or state, it will be even more of a hardship for defense counsel to sustain the identification credibility of each animal which is subject to the accusation. And that's putting it mildly. The trial is set for December 4, 2012.

**The telling truth is evident simply by reading bank counsel's Conclusion in their brief to Lassen Court:**

"*Bank of America and Wells Fargo do not own and are not responsible for the care of the horses currently in the care of the Foundation. Nor were they parties to the original transfer of the horses into the Foundation's care;* ***and they do not own and are not responsible for the property upon which the horses were found.***

*Despite this, Bank of America and Wells Fargo continue to be concerned for the horses' welfare, and are appreciative of the Court's desire to fashion a solution that will resolve the immediate issues regarding the horses' continued care and eventually* ***resolve the ownership issues currently precluding the horses' adoption by appropriate parties.***"

Unfortunately, the banks ARE wildly responsible for having the Receiver get the seizure motion into court, because <u>Ryan drafted it, argued it, and filed it.</u> Ryan had Receiver work with the county to transfer (only on paper) the livestock to themselves, then to Grace.

The banks now claim they don't "own the property upon which the horses were found." According to Mr. Ryan previously, he executed a judicial foreclosure on that property, all 54 acres, two separate APN parcels, including improvements with a first secured priority debt. [That judgment in on appeal in Third District Court of Appeals] The banks claim an interest in Mr. Bennett's 40 acres but failed to ever obtain a valid equitable lien and mortgage, had no financial data such as appraisals or credits worked, and never filed a lis pendens against the property. The only lis pendens on the 40 acres was by Judith St. John who is co-owner.

**The banks also held a lien sale on the property in September 2012**, and then caught up the arrears supposedly, and then called off the lien sale. In so doing, it is believed that the attorneys for Bank of America bank executed assignment of deed of trust from Wells Fargo Bank to Wells Fargo Bank? Review of the documents were questionable.

Last but not least, the banks now say ... "**ownership issues currently precluding the *horses' adoption* by appropriate parties.**

This is absurd. The debtor *owns* the livestock, and the livestock *is evidence in the criminal case* that Ryan and The Grace Foundation pushed the District Attorney to file.

Evidence in a **criminal case** is not to be sold, adopted or moved about in any haphazard fashion. That is why an inventory and accounting is required, because at this point, *it is becoming increasingly difficult to discern what The Grace Foundation did with many of the seized livestock,* as it is believed Grace cannot account for at least 5-12 animals, and that is part of the reason why **Grace continues to refuse accounting and inventory, but yet claims $2,000,000 in a claim against the Debtor's bankruptcy estate**, and **has named Debtor in her lawsuit as a defendant.**

**"Adoption" by any party should not be allowed.** Further, according to the statement filed by attorney Craig Close, The Grace Foundation has already castrated a stallion, illegally sold the stallion, and adopted out a mare and foal in February 2012.

[**See Exhibit _C_,** statement filed by attorney Close.]

If this information is true, the Grace Foundation is liable for damages since she does not own and has never owned the livestock of Debtor.

There is no viable legal argument by banks for simply giving away, selling, or otherwise taking Debtor's illegally seized livestock, other than the fact that Grace has sued the banks and getting rid of the livestock could help the banks, so Grace won't keep denigrating them in the media, calling the bank attorneys, standing outside the banks with the horses, writing to the News Anchors on TV, submitting blogs, PR Newsire, The Drudgeline, updating the volunteers daily to call, call, call the banks, calling the Presidents and Chairman of the banks, etc.

The actual "reason" for asking for stay relief by the BANKS is to serve the banks own purposes, and to try and get The Grace Foundation, who is suing them, to shut up. It's pretty simple, but it's not a legal reason to lift the stay when the actions behind WHY The Grace Foundation had to file the lawsuit in the first place, exist.
[See The Grace Foundation lawsuit by attorney Stuart Leviton, of Los Angles, attached, Exhibit **D**.]
There is extreme detail spelled out there, as indicated supra, which shows the motivation and intention of former counsel Timothy M. Ryan, **in his quest to avoid** the Eastern District Bankruptcy Court's jurisdiction.

It doesn't get much more obvious than what is stated in The Grace Foundation lawsuit, since Beth De Caprio the Grace CEO is on a first name basis with Timothy M. Ryan and his wife. The deception created by Mr. Ryan and the Grace CEO is legendary. The truth is that the seized livestock, physically seized August 26, 2011, post petition, was not starving, was not abused and was not half dead.

**The Grace vet testified in open court, Superior Court of Lassen during the Debtor's preliminary hearing, that the livestock seized in August was fine and did not require what is known as body conditioning scoring** (BCS) which is often done by using the Henneke scoring method (but which has been withdrawn by Mr. Henneke due to too many activists using the system to seize livestock for improper reasons.) Only when livestock may appear to be in physical condition which is potentially lacking, is the method used. When livestock has no appearance of lack the BCS is not needed. It is believed that the vet is no longer on Grace's payroll.

In this case, the Bankruptcy Court has only the information given to it by Mr. Ryan, who drafted nearly all of the related pleadings. Debtor's counsel is not paid to conduct a full blown case in this Court, because the issues are far reaching, involve constitutional deprivation, and past lack of opportunity to oppose on Debtor's part, all of which can trigger either Rooker Feldman issues, collateral estoppel, or res judicata issues.

Therefore, Debtor appropriately filed his appeal on the civil Case No. 45679 and a Writ, both of which are currently lodged with the Third DCA in Sacramento.

The banks move the *Bankruptcy Court for relief, and* ***notice was sent to Debtor's counsel at 10:34pm at night,*** *for a hearing the next day*, and served moving documents at 0900am the following morning— for livestock that they are "not responsible for" where alleged "ownership" issues purportedly preclude "adoption" of the Debtor's owned livestock is not only specious, it is downright transparent, and patently self serving.

**The motion for relief from the stay should not be granted, if at all, until the Receiver's hearing has been completely concluded, and objections have been fully determined, and the criminal case ended or fully completed.** Even then, we not think it should be granted taking into consideration the problems inherent to this case.

The livestock are evidence in a criminal case **(trial date set is 12/4/12)** and even for that reason alone, an inventory and accounting are crucial and relevant. The evidence should not be moved, sold, transferred or otherwise changed, especially when photos of the identified horses are not all available for the Court, nor defense counsel.

Considering the past conduct by bank counsel upon the Bankruptcy Court herein, where bank counsel Timothy M. Ryan is accused of fraud, malpractice and more, and where Debtor's counsel is very aware of very egregious actions by Ryan, including but not limited to filing documents which are adulterated, submitting documents containing forgery, submitting information to the courts under oath of perjury which contain complete misrepresentation, following a pattern and practice of conduct that is completely reprehensible and constitutes subterfuge on the courts, and that is just part of the problem.

This action by banks is to obtain stay relief for Debtor's property which was surreptitiously seized under improper circumstances, by their own attorney's actions. It does not set well with Debtor's counsel that the banks then should be allowed Relief from Stay, especially

with a Receivership discharge hearing pending, with Objections and opposition, and where such liability can be erased.

**The banks can simply ask the State Court for "other relief" [as stated on pg. 3, line 6 of movant's motion for relief from stay]** indicating that the banks intend to ask for other relief AGAINST THE DEBTOR THAT THE STATE COURT DEEMS APPROPRIATE IN CONNECTION WITH THE HORSES.

Unfortunately, the State Court allowed the errant Receiver to take Debtor's property without even allowing an opposition by Debtor.

**Do we really think that the same Court which would not even allow a due process opposition on a property taking, will be able to realistically determine that the Debtor's property should be given to another, ownership changed, or sold or "adopted" while the livestock is EVIDENCE in the criminal case pending trial on December 4 2012?** We think not.

To now have the Bankruptcy Court **give the banks permission** to continue the pattern and practice that has been used for nearly two years, in an ongoing but unsuccessful attempt to simply use improper actions to gain a real estate parcel and improvements is not what this case is about, as it goes far, far deeper than this, which explains why the banks have used such extreme methods to try and claim their process was valid.

This is why Debtor's bankruptcy is still open after over a year. Debtor's property and possessions were never allowed to leave the residence property, instead it was immediately placed under the Receiver who allowed it to be stolen, or lost, because Receiver claimed she "couldn't be there" 24hr a day. This is admitted in the Receiver's inventory attachment, that the property she had supervision over is in complete shambles and had to be boarded up.

When the Trustee attempted to work with the Receiver, Mr. Ryan's firm refused to allow the Debtor onto the property and insisted that the Trustee herself, hand carry items outside, and then the Debtor should then walk up to the fenceline, and examine the item. This is insanity at

its best, and not how attorneys conduct bankruptcy cases, and not surprisingly, the Trustee refused to carry this out, and refused to be a part of unethical conduct. Debtor's counsel does not have a week's time to drive to Susanville and stand outside the property while the Trustee hand carries out items one by one to the fenceline, nor would Debtor's counsel ever do so, nor would the Debtor himself do so.

Another snow job on the Bankruptcy Court, by pretending "adoptions" are more important than due process or the unconstitutional taking of property simply because one has a bank attorney who did it.

The banks' lawsuit with The Grace Foundation should not be the impetus for having to use the Bankruptcy Court as a springboard to getting rid of the Debtor's owned property, which is evidence in a criminal case pending, and based on the horrific track record of Lassen Court errors, that is exactly what would happen if relief from stay is afforded. Couple the criminal case pending, and the Receivership discharge hearing which is opposed (where liability will vanish), the indemnification of Receiver by banks in writing, and the NON INTEREST of the banks on all levels, including the land they have no interest in, the animals they didn't seize, and the livestock they are not responsible for— it is more than obvious. Relief from Stay was purposely done by banks to further their own agenda in the civil case, to try and limit their own exposure, by trying to make them now look like they are good Samaritans, and that the "really really" care about the livestock. We call that complete propaganda.

Debtor cannot afford the luxury of more of the banks errant actions. It must stop now.

The Court should deny Relief from Stay based on the factual opposition submitted.

Respectfully submitted,

___11-15-12_________ ____/s/__Carolyn Chan________________

Date Bankruptcy Attorney for Debtor Dwight Bennett

[blank page]