**EXHIBIT __A__ BANKRUPTCY SCHEDULE "B" OF DEBTOR**

B 6B (Official Form 6B) (12/07) -- Cont.

In re __Dwight Alan Bennett__                Case No. __11-40155-A-11__
         Debtor                                              (If known)

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | Bison Semi Tractor, Strongman equipment trailer, travel trailers, dump truck, feed trucks | | 117,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | Computer and printer, filing cabinets, desks & supplies | | 1,600.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | Ford 3400 tractor, Izaki tractor, 2 horse trailers, hay trailer, snow plow | | 22,000.00 |
| 30. Inventory. | X | | | |
| 31. Animals. | | Animals taken by Wells Fargo/BAC receiver | | 192,700.00 |
| 32. Crops - growing or harvested. Give particulars. | | | | |
| 33. Farming equipment and implements. | | Supplies tools farm equipment Taken WFB | | 85,687.00 |
| 34. Farm supplies, chemicals, and feed. | | 2 horse trailers missing/receiver | | 3,400.00 |
| 35. Other personal property of any kind not already listed. Itemize. | | 10 saddles, mixed Panels, water troughs, Flyspray system, see attached | | 30,730.00 |

__5__ continuation sheets attached    Total ▶  $ __782,117.00__
(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

**EXHIBIT** B RECEIVER INVENTORY NOTATIONS

Vicki Lozano
Receiver for Whispering Pines
822 Main Street
Susanville, CA 96130

**Invoice**

| Date | Invoice # |
|---|---|
| 8/21/2011 | 1 |

**Bill To**
Wells Fargo
C/O The Ryan Firm
1100 N. Tustin Ave Suite 200
Anaheim, Ca 92807

PAID

| P.O. No. | Terms | Project |
|---|---|---|

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 0.35 | 7-21-11 Received bond application via e-mail, printed, completed, scanned and sent it back via e-mail. | 190.00 | 66.50 |
| 4 | 7/21/11 Met with Tim Ryan at ranch, interviewed occupants that were living on property, ordered hay, walked property with Judith St. John and Glen Close, took pictures of entire property for preliminary inventory, cowboys picked up hay and fed horses. | 190.00 | 760.00 |
| 0.25 | 7-22-11 Spoke with Donna at Lassen County animal control about the past and present issues with the horses. Donna advised me to call Pete Heimbigner with Lassen County. | 190.00 | 47.50 |
| 0.1 | 7-22-11 Left message for Pete Heimbigner | 190.00 | 19.00 |
| 0.25 | 7-22-11 Pete Heimbigner called me back. We spoke about the horse issues happening at Whispering Pines. 20 horses were removed in April 2011 and they would like to remove the rest. Lassen County did not have the legal authority to remove the horses. | 190.00 | 47.50 |
| 0.5 | 7-22-11 Talked to Jeff Pregill with Pregill Insurance about placing insurance on the Whispering Pines. | 190.00 | 95.00 |
| 0.75 | 7-22-11 Reviewed receivership court order. | 190.00 | 142.50 |
| 0.25 | 7-22-11 Spoke with Dwight Bennett about receivership and feeding horses over the weekend. | 190.00 | 47.50 |
| 0.25 | 7-22-11 Spoke with Tim Tyler about indemnity agreement and my conversation with Pete Heimbigner. Tim wanted Pete to call him. | 190.00 | 47.50 |
| 0.25 | 7-22-11 Downloaded pictures of the property taken on 7-21-11. E-mail pictures of horses and condition of property to Tyler Kemp from The Ryan Firm. | 190.00 | 47.50 |
| 0.25 | 7-22-11 Spoke with Pete Heimbigner about horses. Pete advised me he went to the property with law enforcement after he spoken with me to do a welfare check on the horses. Gave Pete Tim Tyler's contact information. | 190.00 | 47.50 |
| 0.25 | 7-22-11 Called 3 local ranches about getting hay delivered. None of them would deliver hay in the summer. Too busy. | 190.00 | 47.50 |
| 0.25 | 7-22-11 Dwight came in my office to get a check to purchase hay. The check would purchase enough hay for 3 days. | 190.00 | 47.50 |

**Total** $1,463.00

| Quantity | Description |
|---|---|
| 0.35 | 7-21-11  Received bond application via e-mail, printed, completed, scanned and sent it back via e-mail. |
| 4 | 7/21/11  Met with Tim Ryan at ranch, interviewed occupants that were living on property, ordered hay, walked property with Judith St. John and Glen Close, took pictures of entire property for preliminary inventory, cowboys picked up hay and fed horses. |
| 0.25 | 7-22-11 Spoke with Donna at Lassen County animal control about the past and present issues with the horses. Donna advised me to call Pete Heimbigner with Lassen County. |
| 0.1 | 7-22-11 Left message for Pete Heimbigner |
| 0.25 | 7-22-11 Pete Heimbigner called me. ~~We spoke about the horse neglect happening at Whispering Pines.~~ 20 horses were removed in April 2011 and they would like to remove the rest. Lassen County did not have the legal authority to remove the horses. |
| 0.5 | 7-22-11 Called Jeff Pregill with Pregill Insurance about placing insurance on the Whispering Pines. |
| 0.75 | 7-22-11  Reviewed receivership court order. |
| 0.25 | 7-22-11  Spoke with Dwight Bennett about receivership and feeding horses over the weekend. |
| 0.25 | 7-22-11  Spoke with Tim Tyler about indemnity agreement and my conversation with Pete Heimbigner. Tim wanted Pete to call him. |
| 0.25 | 7-22-11  Downloaded pictures of the property taken on 7-21-11. E-mail pictures of horses and condition of property to Tyler Kemp from The Ryan Firm. |
| 0.25 | 7-22-11  Spoke with Pete Heimbigner about horses. Pete advised me he went to the property with law enforcement after he spoken with me to do a welfare check on the horses. Gave Pete Tim Tyler's contact information. |
| 0.25 | 7-22-11  Called 3 local ranches about getting hay delivered. None of them would deliver hay in the summer. Too busy. |
| 0.25 | 7-22-11  Dwight came in my office to get a check to purchase hay. The check would purchase enough hay for 3 days. |

**EXHIBIT** C STATEMENT BY ATTORNEY CRAIG CLOSE/CLIENT

```
 1  Craig B. Close, CA SB#74264
    Close Associates Law Offices
 2  P.O. Box 2522
    Truckee, CA  96160
 3  (530) 587-7666

 4  Attorney for Defendant and Cross-Defendant,
    JUDITH A. ST. JOHN
 5

 6

 7

 8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 9                         COUNTY OF LASSEN

10

11  NORMAN W. ALLEN.                )   LEAD CASE NO.  45679
                                    )   (Consolidated with Case No. 50324)
12       Plaintiff,                 )
                                    )   STATEMENT OF JUDITH A. ST. JOHN
13  vs.                             )   REGARDING THE OWNERSHIP,
                                    )   CARE, AND CUSTODY OF HORSES
14  SUMMIT FINANCIAL GROUP;         )
    DANA CAPITAL CORP.; STEVE       )
15  WEICH; ROD HOSILYK; DWIGHT A.   )
    BENNETT; JUDITH A. ST. JOHN;    )
16  WILSHIRE CREDIT CORPORATION;    )
    EVANS APPRAISAL SERVICES, INC.; )
17  and DOES 1-10,                  )
                                    )
18  Defendants.                     )
                                    )
19  _____    )
                                    )   Hearing Date: November 16, 2012
20  JUDITH A. ST. JOHN              )   Time:         1:30 p.m.
                                    )   Department:   6
21       Cross-Complainant,         )   Judge:        Hon. Raymond J. Giordano
         [for Declaratory Relief:   )
22       Comparative Indemnity]     )
                                    )
23  vs.                             )
                                    )
24  DWIGHT A. BENNETT and DOES      )
    11 through 25,                  )
25                                  )
         Cross-Defendant.           )
26  _____    )
                                    )
27       CASE CAPTIONS CONTINUE     )
               ON NEXT PAGE         )
28                                  )
```

-1-

**2012**

21  On or about January 28, 2012, DeCaprio sets appointment date and time for St. John to
22  examine her horses for health and well being. St. John is denied access to the herd and only
23  allowed to handle "Boots" (aka Sweetie).
24  St. John saw, but was not allowed to handle:
25      1) Mandan Prince;
    2) Sonny Boy;
26      3) Patches;
    4) Patches' foal;
27      5) Sundara;
    6) Tangles; and
28      7) Tangles II.

-11-

STATEMENT OF JUDITH A. ST. JOHN REGARDING THE OWNERSHIP, CARE, AND CUSTODY OF HORSES

---

1  Missing or not seen were registered Foxtrotter mares
2      8) Bay Star;
    9) Angel;
3      10) Mollie; and
    11) GiGi.
4
5  → DeCaprio did not inform St. John that "Mandan Prince" had been castrated while still in
6  her "Protective Custody" status.   *[handwritten: CASTRATED illegally]*
7  The time line of foaling (admitted by Grace), along with markings and conformation
8  clearly indicate mares became pregnant during Receiver Lozano's care of WPR and that the
9  foals are the 'get' of registered champion bloodline Foxtrotter stallion "Mandan Prince."
10  We are informed and believe that shortly after St. John's visit to Grace Foundation,
11  → "Mandan Prince" was sold by the Grace Foundation despite the LCAC release of August 26,   *[handwritten: SOLD illegally]*
12  2011 to the Grace Foundation placing "Mandan Prince" in "protective custody" with Grace.
13  On or about March 5, 2012, Tim Ryan, now representing Grace Foundation, posts a letter
14  to Craig Close, stating St. John could recover two (2) of her horses "Boots" and "Patches" with
15  foal for $3,200.00 each. (see **Exhibit "9"**). St. John later learned that "Patches" and foal had
16  → already been adopted out by Grace Foundation in or about February of 2012 and were not   *[handwritten: "ADOPTED" out by Grace Fdn. illegally]*
17  available to St. John even if she had the "ransom money" sought by Grace, and this again despite
18  the "protective custody" agreement with LCAC. These two horses and foal are specifically
19  named in the "Protective Custody" documents of August 26, 2011 and signed by Lozano,
20  DeCaprio and Heimbigner to be held until "final disposition can be made by Lassen County
21  concerning ownership."

Lost value of 11 horses named in Verderosa letter cc'd to LCAC dated 6/2/2009, letter stamped received by LCAC 6/04/2009. Horses withheld from Judith St John by LCAC "pending investigation" have been found dead, sold by Bennett or transferred to Grace Foundation = $37,500

Champion bloodline broodmare, Primetime, per Pete H. personally handed off to Grace Foundation by Pete H LCAC 04/2011, + lost future foals = $17,500

Lost breeding value and future stud fees of half ownership of champion stallion Latigo's Mandan Prince, now castrated sold while under LCAC jurisdiction ($1,000 per live birth x 50 breedings per year x 15 years estimated at minimum) St John's ½ ownership = $375,000

Lost breeding income and future stud fees of half ownership of champion stallion Pegasus Pines Wildfire, stallion now dead or missing while under LCAC 3 year investigation = St John ½ ownership = $375,000

Future income of "get" of Wildfire and Mandan Prince @ $3,500 per foal, bred to 7 mares named in Verderosa letter @ ½ to ¾ % ownership of foals = $122,500

Charges per letter dated 03/05/2012 written by Tim Ryan, Attorney for Wells Fargo Bank and Grace Foundation for return of only 2 mares, $20 per day from 8/26/2011 to date of return to owner (6/30/12) = $10,800

*[Handwritten annotation in margin: "Attempted Levy charges for Return of Seized Illegally Livestock"]*

Attorney fees incurred to date associated with LCAC investigation and acquisition of horses $300 per hour x 47 hours (to date 6/30/2012) = $14,100

Total $952,400

**EXHIBIT** D-1   INDEMNIFICATION OF RECEIVER CONTRACT

# INDEMNIFICATION AGREEMENT

This Indemnification Agreement (the "Agreement") is entered into on July 22, 2011 by and between Vicki Lozano in her capacity as Receiver ("Receiver") on the one hand, and Wells Fargo Bank, N.A., as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo") on the other hand, collectively referred to herein as the "Parties."

## RECITALS:

A. WHEREAS, Receiver is the court appointed receiver over the real property located at 695-725 Highway 36, Susanville, California 96130, which property bears the Assessor's Parcel Numbers 099-260-69 and 099-260-70 (the "Subject Property"), pursuant to an order entered on July 21, 2011 (the "Order"), in an action pending before the Superior Court of California, County of Lassen, identified as Case Number 30-2010-00348179 (the "Action");

B. WHEREAS, Receiver has the authority and responsibility to take possession of, manage, and control the Subject Property and all personal property thereon, but faces the risk of meritless or nuisance suits or proceedings from parties to the Action;

## AGREEMENTS AND COVENANTS:

NOW, THEREFORE, in order to secure Receiver's ability to possess, control and manage the Subject Property, and all personal property thereon, in the most economical and proper manner, and intending to be legally bound, the Parties agree and promise as follows:

1. **Indemnification of Receiver.** Wells Fargo shall be liable for and agrees to defend, indemnify, and hold harmless Receiver, and her respective agents, employees, and subcontractors, against any and all liabilities, damages, losses, expenses, demands, claims, suits or judgments arising out of any adverse proceeding against Receiver in the Action, or in any other civil forum, related to Receiver's commission of her duties, responsibilities, rights, and obligations granted or imposed by the Order. Wells Fargo's obligation to defend, indemnify, and hold harmless Receiver pursuant to this Agreement shall be limited to instances of liability, damages, losses, expenses, demands, claims, suits or judgments asserted or obtained against Receiver, or her respective agents, employees, or subcontractors, in the Action, or any other civil proceeding, related to Receiver's commission of her duties, responsibilities, rights, and obligations granted or imposed by the Order, and Wells Fargo shall not be obligated to defend, indemnify, and hold harmless Receiver, or her respective agents, employees, or subcontractors, under this Agreement for any intentional, willful, and/or malicious commission of any crime,

Indemnification Agreement
Page 1 of 4

Acknowledgement and Consent:    By: /s/ Vicki Lozano, Receiver        By: /s/ Timothy M. Ryan, counsel for Wells Fargo Bank, N.A., as Trustee for MLMI Trust Series 2005-HE3

From:Mt. Lassen Properties		530+257+0752		07/23/2012 09:48		#686 P.002/004

tort, or civil wrong committed in excess of Receiver's duties, responsibilities, rights, and obligations granted or imposed by the Order.

2. **Entire Agreement and Exclusive Remedy.** The Parties understand, acknowledge and agree that the terms and conditions of this Agreement constitute the full and complete understanding and agreement of the Parties. There are no other agreements, covenants, promises or arrangements other than those set forth herein. The Parties further agree that the rights and remedies provided in this Agreement will be the sole and exclusive rights and remedies surviving between the Parties.

3. **Comprehension of Terms and Assumption of Risk.** Each term of this Agreement is contractual and not merely a recital. The Parties to this Agreement represent and warrant that they have investigated, as necessary, the facts pertaining to this Agreement and all matters pertaining thereto. Each Party assumes the risk of any misrepresentation, concealment, or mistake with respect to this Agreement and its execution. If any Party should subsequently discover that any fact relied on in the execution of this Agreement was untrue, concealed, or misunderstood, that Party will not be entitled to any relief in connection therewith including, but not limited to, any alleged right or claim to set aside or rescind this Agreement. This Agreement is intended to be, and is, final, binding and conclusive, regardless of any claims of misrepresentation, promises made without the intention of performing, concealment of fact, mistake of fact or law, or of any other circumstance whatsoever.

4. **Advice of Independent Legal Counsel.** The Parties hereby represent and warrant that each has received independent legal advice from their attorney concerning their respective legal rights and with regard to the preparation, creation, negotiation, and execution of this Agreement. Being advised of their legal rights, the Parties acknowledge that they have read this Agreement and understand the same.

5. **Construction of Agreement.** Each of the Parties to this Agreement warrant that each has cooperated and participated in the drafting and preparation of this Agreement. Accordingly, each party hereto acknowledges and agrees that this Agreement should not be construed or interpreted in favor of or against any of the Parties by virtue of the identity of its drafters or their respective contributions to this Agreement.

6. **Severability.** If any provision of this Agreement as applied to any Party or to any circumstance shall be adjudged by a court of competent jurisdiction to be void and unenforceable, the same shall in no way affect any other provision in this Agreement, the application of such provision in any other circumstances, or the validity or enforceability of the Agreement as a whole unless such would result in frustration of the purpose of this Agreement.

Indemnification Agreement
Page 2 of 4

Acknowledgement and Consent:   By: _____   By: _____
                                  Vicki Lazaro, Receiver              Timothy M. Ryan, counsel for
                                                                      Wells Fargo Bank, N.A., as
                                                                      Trustee for MLMI Trust Series
                                                                      2005-HE3

7. **Non-Assignment of Rights and Authority.** The Parties hereby represent and warrant that there has been no assignment, sale or transfer, by operation of law or otherwise, of any claim, right or interest released herein to any third party. The Parties further represent and warrant that they have all the necessary authority to execute the Agreement.

8. **Modifications.** This Agreement may only be amended, supplemented, changed or modified, in any respect, by a writing signed and dated by the Parties to this Agreement.

9. **Governing Law.** This Agreement will be governed by, interpreted, construed, and enforced in accordance with the laws of the State of California.

10. **Attorneys' Fees and Costs for Enforcement of This Agreement.** In the event that any further action is necessary to enforce the terms of this Agreement, the prevailing Party in such action shall be entitled to reasonable attorneys' fees and costs incurred in such action.

11. **Headings.** The titles and headings of the various sections of this Agreement are intended solely for the convenience of reference and shall not be construed as an explanation, modification, or intended construction of any terms or provisions of the Agreement.

12. **Counterparts.** This Agreement may be executed in several counterparts, each of which, including facsimile signatures, shall be deemed an original and all of which taken together shall constitute a signed instrument. If any provision of this Agreement is held invalid under any law or ruling, the remaining provisions of the Agreement will remain valid to the extent allowed by law.

13. **Time of the Essence.** Time is of the essence for the performance of each and every covenant and the satisfaction of each and every condition contained in this Agreement.

14. **Facsimile Signature.** The parties understand and agree that any facsimile signature of this Agreement will be deemed an original signature.

[Signatures on following page.]

---

Indemnification Agreement
Page 3 of 4

Acknowledgement and Consent:  By: /s/ Vicki Lozano, Receiver    By: /s/ Timothy M. Ryan, counsel for Wells Fargo Bank, N.A., as Trustee for MLMI Trust Series 2005-HE3

Case 11-40155    Filed 11/15/12    Doc 227

DATED: 7/25/11

By: _____
    VICKI LOZANO, Receiver

DATED: 7/27/11

THE RYAN FIRM
A Professional Corporation

By: _____
    TIMOTHY M. RYAN
    Counsel for Wells Fargo Bank, N.A., as
    Trustee for MLMI Trust Series 2005-HE3

Indemnification Agreement
Page 4 of 4

Acknowledgement and Consent:  By: _____  By: _____
                                  Vicki Lozano, Receiver      Timothy M. Ryan, counsel for
                                                              Wells Fargo Bank, N.A., as
                                                              Trustee for MLMI Trust Series
                                                              2005-HE3

**EXHIBIT** D-2 BANKS LASSEN STMT, NO INTEREST

1  November 16 hearing they will be able to present the Court with an agreement between the
2  banks, the Foundation, and the County regarding this transfer.

### Conclusion

Bank of America and Wells Fargo do not own and are not responsible for the care of the horses currently in the care of the Foundation. Nor were they parties to the original transfer of the horses into the Foundation's care; and they do not own and are not responsible for the property upon which the horses were found. Despite this, Bank of America and Wells Fargo continue to be concerned for the horses' welfare, and are appreciative of the Court's desire to fashion a solution that will resolve the immediate issues regarding the horses' continued care and eventually resolve the ownership issues currently precluding the horses' adoption by appropriate parties.

Dated: November 12, 2012         **BRYAN CAVE LLP**

By: _____
C. Scott Greene
Attorneys for Cross-Complainant BANK OF AMERICA, N.A., successor by merger to BAC HOME LOANS SERVICING, LP and Defendant/Cross-Complainant WELLS FARGO BANK, N.A.

**EXHIBIT** D-3 APPEAL AND WRIT LODGED 3RD DCA

California Courts - Appellate Court Case Information



3rd Appellate District                                    Change court

Court data last updated: 11/04/2012 10:06 AM

**Case Summary**    « search results

Trial Court Case:      45679
                       50324

Court of Appeal Case: **C072171**
Division:
Case Caption:          Allen v. Bennett et al.
Case Type:             CV
Filing Date:           09/24/2012
Oral Argument
Date/Time:

**Cross Referenced Cases:**

C070237 Bennett v. The Superior Court of Lassen County

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use | Privacy   © 2012
               Judicial Council of California / Administrative Office of the Courts

appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=3&doc_id=2026983&doc_no...

1/2

California Courts - Appellate Court Case Information

## Appellate Courts Case Information

### CALIFORNIA COURTS
THE JUDICIAL BRANCH OF CALIFORNIA

3rd Appellate District

Change court

Court date last updated: 11/04/2012 10:05 AM

Docket (Register of Actions)

**Allen v. Bennett et al.**
**Case Number C072171**

| Date | Description | Notes |
|---|---|---|
| 10/04/2012 | Notice of appeal lodged/received. | Filed in trial court 09/24/12. |
| 10/04/2012 | Forma pauperis petition filed. | By appellant. |
| 10/05/2012 | Letter to counsel - 10 days to file case information statement. | AMS due: 10/15/12. |
| 10/05/2012 | Respondent notified re CAMS. | Due 10 days after appellant's. |
| 10/05/2012 | Order waiving filing fee. | Appellant's. |
| 10/22/2012 | Civil case information statement filed. | |
| 10/22/2012 | Appellant's mediation statement filed. | RMS due: 11/01/12. |

Click here to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use | Privacy   © 2012
Judicial Council of California / Administrative Office of the Courts

appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=3&doc_id=2026983&doc_no=C072171

1/2