# IN THE
## COURT OF APPEAL OF THE STATE OF CALIFORNIA
### IN AND FOR THE
### THIRD APPELLATE DISTRICT

**NORMAN W. ALLEN,**
Plaintiff, Cross-defendant
and Respondent,

**v.**

**DWIGHT A. BENNETT,**
Defendant, Cross-Defendant,
and Appellant;

**NORMAN W. ALLEN,**
Plaintiff,

**v.**

**WELLS FARGO BANK N.A.**
**Etc., et al.,**
Defendant, Cross-complainant
and Respondent.

**Appeal No.: C072171**

**Lassen County Superior
Court Nos.:
45679, 50324**

## APPEAL FROM THE ORDER OF THE
## SUPERIOR COURT, COUNTY OF LASSEN
## THE HONORABLE RAYMOND GIORDANO,
## TRIAL JUDGE, DEPARTMENT 6

## APPELLANT'S OPENING BRIEF

**DWIGHT A. BENNETT**
**P. O. Box 1191**
**SUSANVILLE, CA 96130**
**(530) 828-7552**
**APPELLANT**
**IN PROPRIA PERSONA**

# CERTIFICATE OF INTERESTED PARTIES

In the Court of Appeal, Third Appellate District, Division
Appeal No. C072171 and Lassen Case No.'s 45679, 50324
*Norman W. Allen v Summit Financial Group, Inc., et al*

Appellant has no knowledge of any interested party to this
Appellant's Opening Brief Pursuant to California Rules of Court
8.208.

I certify under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.

Executed June 19, 2013, in Susanville, CA 96130

_____
Dwight A. Bennett
Appellant In propria persona

# TABLE OF CONTENTS <span style="float:right">Page(s)</span>

TABLE OF CONTENTS...................................................................................3

TABLE OF AUTHORITIES...........................................................................5

APPEALABILITY AND STANDARD OF REVIEW..........................................2

    Appealable as a final order under Code of Civil Procedure section 904.1
    subdivision (a) paragraphs (8) and (9) ................................................................2


INTRODUCTION...........................................................................................3

    A)Request for Judicial Notice...........................................................................3

STATEMENT OF THE CASE.........................................................................3

STATEMENT OF FACTS...............................................................................12

    A)Direct appeal is from a Summary Adjudication Hearing of July 21, 2011.
    "Proposed" Orders were never signed or entered as judgment. The resulting
    judgment appealed from was entered 363 days later on July 19, 2012.............12

        i. Appeal collaterally and inferentially from imposition of an unconfirmed
        ex parte receiver, seizure, ejectment, false imprisonment, civil conversion,
        constitutional violations and to annul conviction for indirect contempt......12

        ii. The collateral acts above began 7/21/2011 through banks' application,
        appointment and direction of their unconfirmed, contracted and paid ex
        parte receiver and continued under auspices of authority and jurisdiction
        provided by the unsigned summary adjudication order...............................12

    B)The salient questions are if triable issues were foreclosed, whether Wells
    Fargo established statutory ground for ex parte appointment of a rents and
    profits receiver and if the unconfirmed receiver had legal authority to seize
    Bennett's property. .........................................................................................14

    C)The simple answer is that, Banks by the allegations in their motion for
    summary adjudication altered positions again, but did not amend the factual
    allegations or causes of action of their cross-action.........................................15

    D)Bank's Ex Parte application for the rents, issues and profits receiver was a
    fraud. The ex parte appointment was never confirmed at hearing after return on

an OSC, exceeding the court's jurisdiction. ....................................................22

E)The trial Judge afforded bank's unconfirmed ex parte rents and profits receiver immediate seizure of Bennett's business, personal property, chattel and real property, without bonds or oaths in place. .................................................23

F)Moreover, the emergency receivership had been contracted to earn $190.00 per hour since March 29, 2011. (8CT 2081). ...................................................23

    i. The court crossed out the requirement for a hearing on an order to show cause for appointment of the ex parte receivership and the receiver was never confirmed.............................................................................................25

G)The Court erred in finding that banks had met their burden to foreclose triable issues by their summary motion. .......................................................29

I. Insufficiency of Banks' Declarations and Evidence in support of summary adjudication and ex parte application for order appointing receiver...................31

A)Sufficiency is lacking in the declarations, verifications and evidence presented in support of summary adjudication .................................................31

B)  Not one Declaration in support of respondent Wells Fargo Bank's motion for summary adjudication or ex parte application for order appointing receiver speaks to personal knowledge, only of declarants reviewing records..............31
The Summary Adjudication was Invalid ........................................................36

    i. The Unconfirmed Receiver Is Void Ab Initio...........................................36

I.  The court erred in granting Wells Fargo's summary adjudication on July 21, 2011, because bank's moving papers raised new issues...................................40

A) Sufficiency of movant's supporting declarations failed, movants did not aver to first hand knowledge............................................................................43

ARGUMENT.................................................................................41

CONCLUSION................................................................................61

CERTIFICATE OF WORD COUNT...................................................................63
DECLARATION OF SERVICE.......................................................................64

iii

# TABLE OF AUTHORITIES

page(s)

## California Cases

Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 843,861...................42,43

Barclays Bank of California v. Sup. Ct. 69 Cal. App.3d 593, 599-602.................52

Cal. Const., Art I § 7.........................................................................................2

Callahan v. Chatsworth Park, Inc., 204 Cal. App. 2d 597, 604
[22 Cal.Rptr. 606]...........................................................................................44

Cedars-Sinai Imaging Medical Group v. Superior Court (2000) 83 Cal. App. 4Th
1281................................................................................................................58

Cochran v. Cochran (2001) 89 Cal.App.4th 283, 287........................................3

Colarossi v. Coty U.S., Inc. (2002) 97 Cal.App.4th 1142, 1149..........................2

Dawson v. Toledano (2003) 109 Cal.App.4th 387, 392......................................3

Deveny v. Entropin, Inc. (2006) 139 Cal.App.4th 408, 418–419.........................2

Ex parte Brown, 97 Cal. 83, 85 [31 P. 840]......................................................59

Ex parte Clarke, 126 Cal. 235, 240
[58 P. 546, 77 Am.St.Rep. 176, 46 L.R.A. 835]...............................................59

Family Service Agency of Santa Barbara v. Ames, 166 Cal. App. 2d 344, 351
[333 P.2d 142]...............................................................................................44

Family Service Agency of Santa Barbara v. Ames, supra, p. 351.......................44

Farmers & Merchants Bank v. Bank of Italy, 216 Cal. 452, 454-458
[14 P.2d 527]................................................................................................59

In re Cowan (1991) 230 CAl. App. 3d 1281......................................................58

James v. P.C.S. Ginning Co., 276 Cal.App.2d 19, 22 [80 Cal.Rptr. 457]............49

Johnson v. Drew, 218 Cal. App. 2d 614, 620 [32 Cal.Rptr. 540]........................44

Kaiser Industries Corp. v. Taylor (1971) 17 Cal.App.3d 346 [94 Cal.Rptr. 773]..49

Kaiser Industries Corp. v. Taylor,...................................................................49

Knapp v. Doherty, (2004) 123 Cal. App.4th 76,90.............................................42

Kojababian v. Genuine Home Loans, Inc. (2009) 174 Cal.App.4th 408..............43

Kreling v. Superior Court, 18 Cal.2d 884, 885 [118 P.2d 470]...........................59

Lewis v. Superior Court, (1994) 30 Cal. App. 4th 1850 [37 Cal. Rptr.2d 63].......41

Locke v. Klunker (1898) 123 Cal. 231, 235-238 [55 P. 993]..............................52

Mars v. Wedbush Morgan Securities, Inc.,(1991) 231 Cal. App.3d 1608, 1613-
1614...............................................................................................................42

Miley v. Harper, (1967) 248 Cal. App. 2d 463..................................................44

Miller & Lux, Inc. v. Bank of America, 212 Cal. App. 2d 719, 725
[28 Cal.Rptr. 401]..................................................................................44,725

Miller v. Oliver.............................................................................................51

Mines v. Superior court (1932) 216 Cal. 776, 778 [16 P.2d 732].......................52

Murphy v. Kelly, 137 Cal. App. 2d 21, 28 [289 P.2d 565].................................44

Oskner v. Superior Court (1964) 229 Cal.App.2d 683.......................................59

Richardson v. White (1861) 18 Cal. 102, 106...................................................41

Rodes v. Shannon, 194 Cal. App. 2d 743, 749 [15 Cal.Rptr. 349].....................44

iv

Rondos v. Superior Court (1957) 151 Cal. App.2d 190, 195 [311 P.2d 113].........51
Roseleaf Corp. v. Chierighino, 59 Cal.2d 35, 38 [27 Cal.Rptr. 873, 378 P.2d 97] 49
Salter v. Ulrich, 22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344]...........................49
Schessler v. Keck, 138 Cal. App. 2d 663, 669- 670 [292 P.2d 314.......................44
section 437c.............................................................................................................2
Snyder v. Western Loan and Building Company, (1934) 1 Cal.2d 697.................22
Takeba v. Superior Court (1919) 43 C.A. 469, 475, 185 P. 406............................51
Turner v. Superior Court (1977), 72 Cal. App. 3d 804
[140 Cal. Rptr. 475]...............................................................................46,48,51,52
Urez Corp. v. Superior Court (Keefer) (1987) 190 Cal.App.3d 1141 [235 Cal.Rptr.
837]........................................................................................................................45

CODES AND STATUTES
CIVIL CODE
§ 2927..................................................................................................................22
§ 2888..................................................................................................................45
§ 2953..................................................................................................................50

CODE OF CIVIL PROCEDURES
§ 564.............................................................................................................20,51,53
§ 726.............................................................................................................42,49,50,61
§ 437c, subd. (c)...................................................................................................42
§ 904.1 subdivision (a) paragraphs (8) and (9) ....................................................2
§ 904.1(a) paragraphs (6) and (7) ........................................................................2
§ 425.10 (a)(2).....................................................................................................45
§ 437c..................................................................................................................2
§ 437c.(f).(1).......................................................................................................46
§ 577.5.................................................................................................................45
§ 580(a)...............................................................................................................45
§ 1005 (b),(c)......................................................................................................29

CALIFORNIA STATE CONSTITUTION
Cal. Const., Art I § 7............................................................................................2

Cal. Const., Art I § 13..........................................................................................2

Cal. Const. Art. I, 19...........................................................................................50
TREATISES AND PUBLICATIONS
Real Property and Real Property Security: The Well-Being of the Law by John R.
Hetland, 53 Cal.L.Rev., p. 151...........................................................................49
7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 131,
p.487....................................................................................................................45

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

**NORMAN W. ALLEN,**
　Plaintiff, Cross-
defendant
　　and Respondent,
**v.**
**DWIGHT A. BENNETT,**
　Defendant, Cross
Defendant, and Appellant;

**Appeal No: C065379**

**NORMAN W. ALLEN,**
　Plaintiff,
　v.
**WELLS FARGO BANK
N.A. Etc., et al.,**
　Defendant,
Cross-complainant
and Respondent.

**Lassen  Superior
Court Nos: 45679, 50324**

**APPEAL FROM JUDGMENT OF THE
SUPERIOR COURT, COUNTY OF LASSEN
THE HONORABLE RAYMOND GIORDANO,
TRIAL JUDGE, DEPARTMENT 6**

1

## APPEALABILITY AND STANDARD OF REVIEW

Appealable as a final order under Code of Civil Procedure
section 904.1 subdivision (a) paragraphs (8) and (9)

Appeal is from Judgment for Summary Adjudication,  signed and entered
on July 19, 2012, for summary adjudication hearing 363 days earlier on
July 21, 2011, in concert with a stipulated partial settlement agreement.
(Signed by all parties except appellant). The hearing did not produce a
signed order. Judgment duly entered on July 19, 2012 is designated and
treated as a "summary judgment" in the official record and trial court
processes. Appeal was timely.

The standard of review for Code of Civil Procedures § 437c issues
herein is de novo.
(*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418–419, quoting
(*Colarossi v. Coty U.S., Inc.* (2002) 97 Cal.App.4th 1142, 1149.)


Appellant brings issues for appeal directly, collaterally and inferentially.

Orders granting pendant lite appointments of receiver and ex
parte injunctions are appealable under Code of Civil Procedures
§ 904.1(a) paragraphs (6) and (7)

Void orders acquired through extrinsic fraud, due process, equal
protection and constitutional violations are null and without
effect and may be challenged directly or collaterally in any court
or jurisdiction at any time. Cal. Const., art I §§ 7, 13.


## STANDARD OF REVIEW

Review for judgment granting summary adjudication under Code of

Civil Procedure section 437c is *de novo.* Accordingly, the reviewing court

undertakes the same analysis as the trial court and must resolve all doubts

as to whether any material, triable, issues of fact exist in favor of Appellant,

the party opposing summary judgment.  (Id. at 419, citing *Dawson v.*

*Toledano* (2003) 109 Cal.App.4th 387, 392; quoting *Cochran v. Cochran*

(2001) 89 Cal.App.4th 283, 287.)

## INTRODUCTION

### A)   Request for Judicial Notice

I, Dwight A. Bennett, the appellant, request this reviewing Court

take judicial notice of the following related actions: Writ Petition, 3 DCA:

(C070237(Jan.30,12) *Bennett v. Superior Court*), Volumes I-III, Exhibits 1-

33, Trial Transcripts, (TT 7_21) and (TT 8_19). Cited here as (WP 26-27)

or (WP Exh.18:389-402), file stamped *Allen v Summit* complaint, (WP

Exh.20:418-442), file stamped Bennett Answer. Petition, C070237 denied

Feb. 2012, relates to the issues here, prior to entry of judgment.  3DCA:

(Appeal C065379) *St. John v Bennett et al.*).

## STATEMENT OF THE CASE

*Allen v. Summit Financial Group Inc*., et al., Lassen No.: 45679 was filed

September 18, 2007. (1CT 1). The first amended complaint filed May 23,

2008 is the operative seminal complaint. (1CT 153-165).

3

*Allen v. Summit* alleges causes of action for:

1) Fraud, deceit, intentional and negligent misrepresentation against defendants Summit Financial, Dana Capitol Corp., Rod Hosilyk, and Steven Weich.

2) Professional negligence, intentional and negligent misrepresentation against Evans Appraisal Services Inc.

3) Unjust enrichment against Dwight Bennett and Judith St. John.

4) Uncertain allegations against Wilshire Credit Corp., as Creditor.

5) Further alleging damage to property, requesting imposition of a constructive trust and reformation of contract. (1CT 153-165) (WP C070237 Exhibit 18: 389-402).

The Gravamen is that Hosilyk and Weich misrepresented themselves as California mortgage brokers, and misrepresenting Hosilyk as founder and CEO of Summit Financial Group Inc., a securities and mortgage giant listed and traded on the New York Stock Exchange. In fact, Hosilyk's 'Summit Financial Group Inc.,' was an unrelated, unregistered Nevada alter-ego sham corporation not licensed in California. Further misrepresented defendant Dana Capitol Corp., as Mr. Hosilyk's original corporation, a Summit 'subsidiary'. (1CT 153-165).

In 2004, for reasons detailed in the Allen complaint, appellant hired a licensed surveyor, James Eddie to undertake a certificate of compliance

4

procedure, restoring his 54.03 acre parcel to one-14.03 acre improved parcel and one-40 acre bare parcel. Hosilyk and Weich conducted on site inspections and required division for refinancing. The Certificate of Compliance was approved by Lassen County and recorded in February 2005.

Unknown to appellant, co-defendants Weich and St. John, per deposition testimonies, engaged in "more than a broker/borrower relationship", Weich and St. John's actions detailed in related case, *St. John v. Bennett et al.,* Lassen No.: 46190 and Appeal No.: C065379, judicially referenced, eventuated in forced sale of the 14.03 acre improved parcel to plaintiff, Norman Allen on May 19, 2005.  (1CT 153-165). The transaction, with Summit/Dana as mortgage broker, (1CT 82-103), Option One Corp., as lender, (1CT 104-105,116-127), was recorded on May 26, 2005 in the official Lassen County records as Doc. No. 2005-04693. (1CT 112).

Bennett owner and operator of Whispering Pines Stables since 2002, leased back the 14 acres with improvements from Allen and, pursuant to the Weich/St. John 'plan', intended to repurchase the property from Allen in 2007.

On or about October 15, 2005 Bennett learned from the Lassen County Assessors Office that; despite the recorded certificate of compliance, the improvements were on the 40 acre remainder and notified

Allen immediately.  Appellant had purchased an American Land Title Policy from Chicago Title Insurance Company for the transaction. Title No.:05-42700646-SZ. (1CT 112-116).  Allen immediately notified the 'servicer', Wilshire Credit Corp., without result.

Wilshire was notified in writing that the parcel was without improvements by Lassen County Assessor's Office on or about June 1, 2006. The assessor's office detailed explanation to Wilshire included a $7,818.13 official check for property tax refunds. (2CT 376). Writ Petition; (WP Exh.21: 443-452).

Thereafter, Wilshire reduced Mr. Allen's monthly 'impound' amount from $689.60 to $182.21, including property insurance. (1CT 373-376). (WP Exh.21: 459-463).

Allen and Bennett held clouded titles to their properties and could not conduct the intended repurchase or find relief by refinance. Wilshire represented themselves first as 'Creditor', then as servicer for "a reputable bank that purchased the Allen loan, well seasoned (aged one year) on the secondary market". Chicago Title in Susanville represented that the A.L.T.A. Policy was activated, but the files removed to corporate offices at the beneficiary's request. Chicago Title refused to identify the Creditor.

Unable to find resolution from Wilshire, Summit or Chicago Title *Allen v. Summit Financial Group Inc., et al.,* arose on September 18, 2007,

(1CT 1), the active first amended complaint was filed May 23, 2008. (1CT

2).  Wilshire filed Notice of Non-monetary Status. (WP Exh.21: 444-449)

(1CT 3 #67). Respondent Wells Fargo Bank as Trustee, etc., first appearing

on 9-23-2008 denied beneficial interest in the Allen loan and filed Notice of

Non-monetary Status as Trustee. (1CT 3 #72 & 73). (WP Exh.21:444,451,

Exh.32:657-668).

 Absent any acknowledged beneficiary or creditor, *Allen v. Summit*

*Financial Group Inc., et al.,* languished in the courts with numerous

motions not relevant to this appeal.

1)  On or about 10/21/2009, T.D. Service Company filed a "Notice of

Default and Election to Sell" the Allen property, into the Official Lassen

County Record as Document No. 2009-05987. (1CT 128-130).[1]

2)  On or about 11/3/2009 Wilshire recorded a 'Corporation Assignment of

Deed of Trust' into the Official Lassen County Records as Document No.

2009-06308, Option One, on June 01, 2005, assigned the Allen Deed of

Trust to Wells Fargo Bank N.A., as Trustee for the MLMI ("Merrill Lynch

Mortgage Investors") Trust Series 2005-HE3. Only five (5) days after the

---

1  The record for appeal is as troubled as it is troubling, pages contained in
1CT 106-2CT 247 are the Exhibits to the Declaration of Timothy M.
Ryan 1CT 65-69.  The Declaration of Barbara Smith; 1CT 70-105, has
been inserted into the Ryan Declaration. It is uncertain if the Exhibits to
the Ryan and Smith Declarations were presented to the trial Judge
correctly or 'combined' as they appear in the Clerk's Transcripts.

Allen to Option One DOT was recorded on May 26, 2005. (1CT 131).

3) On or about 12/30/2009 T.D. Services Company recorded into Official Lassen County Records as Document No. 2009-07282, a Substitution of Trustee from Premier Trust Deed Services, Inc., to T.D. Services Company as Trustee.  Signed 10/19/2009 at the request of the 'present beneficiary', (Wells Fargo Bank N.A., as Trustee etc.), with *failed* notary authentication dates. (1CT 132-134).

4) On or about 1/26/2010, T.D. Services Company caused a Notice of Trustee's Sale for the Allen property, 'APN: 099-260-70 11'. (1CT 135).


*Allen v. T. D. Service Co.; Wells Fargo Bank, N.A., as Trustee for the MLMI Trust Series 2005 HE-3,* Lassen No.: 50324, Complaint to Enjoin Foreclosure: Application for a Temporary Restraining Order and Preliminary Injunction, arose on 4/13/2010 to enjoin foreclosure pending resolution of Lassen No: 45679. (1CT 22). Lassen No.: 50324, also joined Wells Fargo Bank ("WFB") as defendant and named BAC defendant as successor to Wilshire in *Allen v. Summit et al.*

Wells Fargo and BAC Home Loan Servicing, ("BAC"), filed numerous demurrers and motions to strike asserting their non-monetary status' from 2008-2010. Banks' demurrers and motions to strike failed, on 7/10/2010 Lassen No.: 50324 was 'consolidated/subsumed' into Lassen No.:

45679. (1CT 22-23). Lassen 50324 was dismissed on 11/18/10. (1CT 40,42).

BAC, a subsidiary of Bank of America N. A., ("BofA"), has now been reabsorbed into BofA. In early 2010, BofA purchased Merrill Lynch's mortgage divisions including Wilshire Credit Corporation.

On October 12, 2010 Wells Fargo and BofA cross-complained against plaintiff Allen and defendants Bennett, St. John, Evans Appraisal Services without seeking leave of the court. (1CT 7 #170 & Aug CT 226-240).  Banks' *unverified* cross-action named six remedies and two causes of action: 1. Declaratory Relief. 2. Rescission. 3. Reformation. 4. Subrogation. 5. Equitable Lien. 6. Equitable Mortgage. 7. Negligent Misrepresentation. 8. Professional Misrepresentation. The last two against Evans Appraisal Services Inc., only. (Aug CT 226-240).

Banks' cross-action by 'Prayer' requested <u>equitable lien</u> and <u>equitable mortgage</u> over the '<u>Improvements</u>' (Emphasis added). Specifically:

> "<u>5. For Imposition of an equitable lien on the Improvements in favor of Wells Fargo and BAC,</u> resulting in a right and just resolution to this controversy.:

> "<u>6. For Imposition of an Equitable Mortgage on the Improvements in favor of Wells Fargo and BAC,</u> encumbering the property all parties intended to encumber."  (Aug CT 237). (Emphasis added).

Changing positions by cross-action, Wells Fargo Bank N.A., claimed to be Trustee *and,* 'beneficiary for the WFB Deed of Trust'. (Aug CT 228). Banks' cross-action represents the division of appellant's 54 acre parcel as a "partition", but acknowledges that two separate parcels were created, 1) APN# 099-260-70 purchased by Allen and, 2) 099-260-69 retained by appellant and St. John. (Aug CT 229-230).

Appellant's incorrectly titled, but verified answer to Wells Fargo and BAC's, *unverified* cross-action raised issues and affirmative defenses that likely spawned the ruthless, brutal and illegal actions perpetrated against him in the following months by the banks and their counsel of record, Timothy M. Ryan and the Ryan Firm. (1CT 174-193).

Bennett by his verified answer of 12/10/2010 acknowledged that the improvements were misplaced but intended to be on the 14.03 acres sold to Allen ¶¶ XVII and XVIII. (1CT 177).  Appellant spoke to unidentified principal parties ¶ XXIII. (1 CT 178). Alleging in ¶ XXVIII that:

> Option One Mortgage Inc., and Summit Financial Group Inc., induced the transaction that is central to this controversy against Bennett's will. (1CT 180).

In part at ¶ XXXIV:

> ..that if said Cross-Complainant's positions as alleged by each, are true, Wells Fargo and BAC stand in the shoes of the parties named above to who they should answer as agents. (1CT 181).

At ¶ XLIX, in part:

> ..Certainly these parties have already claimed numerous conflicting positions without providing any proof or documentation whatsoever. ..[T]hese "titles" are not discernible without specific contractual clarity of which they offer none;... (1CT 185).

And:

> ... Until proof of proper endorsement to the original Note and Deed establishes legal ownership, some parties of interest in equity remain unknown...If cross-complainants' lack of standing, as alleged above and confirmed in the belatedly "verified"[2] Answers to Complaints submitted by the same, then there is no "Equitable Mortgage" here to which they would be parties. (1CT 187).

Appellant answered with 15 affirmative defenses:

1) Failure to state a cause of action. 2) Unclean hands. 3) Contributory negligence. 4) Offset. 5) Apportionment. 6) Assumption of risk. 7) Statute of limitations. 8) Lack of standing. 9) In pari delicto. 10) Equitable estoppel. 11) Condition precedent. 12) Statute of Frauds. 13) Failure of consideration. 14) Mutual mistake. 15) Agreement not fully integrated. (1 CT 188-192).

Banks from inception to present have engaged in a pattern and practice of inconsistent positions, and both banks claimed non-monetary

---

2  Answer to Verified 2nd Amended Complaint by Wells Fargo (and BAC). (1CT 7 #171). Was not listed in the register of actions provided appellant for designation of the record on appeal, was not designated and need not be considered. Appellant's Answer above to banks' cross-action refers to Banks' Answer, filed 10/12/10, No.:15 "Defendant BAC admits a first trust deed, executed by P. as security..for a note..of $436,500.00 payable to Option One Corp., *is assigned to Wilshire Credit.*.whom Def. BAC succeeded by merger."

11

status from 2008-2010. (1 CT 3 #67,72).(WP C070237 Exh. 21: 444-447,

451).

Specifically stating:

> "Wells Fargo Bank is the agent of the beneficiary for the deed of
> trust for the real property in Lassen County known as assessor's
> parcel number 099-260-70." ("Deed of Trust"). (WP C070237
> Exh. 21 444-447, 451).

## STATEMENT OF FACTS

**A)** Direct appeal is from a Summary Adjudication Hearing of July
21, 2011. "Proposed" Orders were never signed or entered as
judgment. The resulting judgment appealed from was entered
363 days later on July 19, 2012.

**i.** Appeal collaterally and inferentially from imposition of an
unconfirmed ex parte receiver, seizure, ejectment, false
imprisonment, civil conversion, constitutional violations and to
annul conviction for indirect contempt.

**ii.** The collateral acts above began 7/21/2011 through banks'
application, appointment and direction of their unconfirmed,
contracted and paid ex parte receiver and continued under auspices
of authority and jurisdiction provided by the unsigned summary
adjudication order.

The record is undisputed, no one involved in the real estate sales

transaction, appraisal, title reports or financing that underlies *Allen v.*

*Summit* knew that the improvements were not on the 14.03 acre parcel.

Without question the sale and purchase were compelled by the

fraudulent and predatory lending activities of an unlicensed mortgage broker (Summit) and, Bennett's former partner, St. John who incited 'financing' with Summit, then induced plaintiff Allen to "step in" and stop foreclosure by purchasing the subject property. St. John admitted at deposition that Weich advised her to stop making mortgage payments and both St. John and mortgage broker Weich admitted at their depositions to "having more than a broker/borrower relationship, Weich acting as a friend and financial adviser". While those statements in the transcripts are not in this record on appeal, they are represented in the seminal complaint, answers, and other pleadings. Those elements are not part of this appeal, merely indica that numerous triable questions remained foreclosing summary adjudication.

Wells Fargo alleges through documents of record, that they were assigned security interest and beneficial interest only five days, (3 business days), after the Option One/Allen loan recorded. If true the actions of Summit are attributable to Wells Fargo through improper broker/client relationship.

The record is undisputed, Wells Fargo claimed only a security interest under the deed of trust for three years while avoiding suit as non-monetary agents of the beneficiary, then, asserted beneficial status by their cross-action. (Aug CT 226-240). When moving for summary adjudication

13

and ex parte appointment of a rents and profits receiver, Wells Fargo

claimed to be both trustee and beneficiary through assignment of the DOT.

(1CT 52-64). (2CT 550-567). Last, in Wells Fargo's Motion for summary

adjudication the WFB claims "investors" hold the beneficial interest. (1CT

61-62).

  **B)**  The salient questions are: if triable issues were foreclosed,
         whether Wells Fargo established statutory ground for ex parte
         appointment of a rents and profits receiver, and if the
         unconfirmed receiver had legal authority to seize Bennett's
         property.

These questions are answered in and by respondent's unverified and

unsigned motions alone, not considering above questions of standing.

       Banks' cross-action of October 12, 2010 by its 'Prayer' requested

equitable lien and equitable mortgage over the 'Improvements' (Emphasis

added). Specifically:

       "5. For Imposition of an equitable lien on the Improvements in
       favor of Wells Fargo and BAC, resulting in a right and just
       resolution to this controversy.:

       "6. For Imposition of an Equitable Mortgage on the Improvements
       in favor of Wells Fargo and BAC, encumbering the property all
       parties intended to encumber."

Wells Fargo's unsigned and unverified Motion for Summary Adjudication

requested adjudication of two issues or 'causes of action' set out by cross-

complaint: imposition of an equitable lien for a still undetermined and

unspecified amount on unspecified property, and imposition of an equitable

mortgage of undetermined amount and unspecified terms on unspecified

property. (1CT 54).

**C)** The simple answer is that, Banks by the allegations in their
motion for summary adjudication altered positions again, but
did not amend the factual allegations or causes of action of
their cross-action.


Raising numerous new, allegations and triable issues by suddenly engaging

a completely new set of facts to include:

"Judith A. St. John ("St. John") and Dwight A. Bennett
("Bennett"),..[d]evised a complicated, and ultimately ill-advised,
foreclosure avoidance scheme: the partition of their property into
two parcels (performed without the benefit of any relevant
expertise); and a collusive (and ultimately misrepresented) sale
of one of the parcels to a straw buyer, Bennett's friend,
Plaintiff/Cross-Defendant Norman W. Allen ("Allen"),"

"[t]his scheme included several examples of mortgage fraud by
Bennett and Allen, including the utter fabrication of the required
down payment."


"St. John and Bennett's foreclosure avoidance subterfuge (in
which Allen was a fully cognizant and willing participant) did
not go as planned—the improvements (described below) were
not included in the sham sale, and discord quickly fostered
amongst the co-conspirators." (1CT 55-56). (Emphasis added).

"a critical consideration lurks: the loan Allen obtained to
purchase the malformed parcel is now obscenely under-secured,
and Allen chose to abdicate his responsibility to make payments
under that loan despite collecting rental income from the parcel.

15

Thus, faced with the prospect of foreclosing on property that is worth less than one fourth of the loan balance, Defendant/Cross-Complainant Wells Fargo Bank, as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo"), <u>filed its cross-complaint seeking an equitable lien and an equitable mortgage against the improvements</u> that St. John and Bennett intended to convey to Allen. The undisputed facts detailed below <u>unequivocally show that Wells Fargo is entitled to summary adjudication of its causes of action for equitable lien and equitable mortgage</u>," (1CT 55-56). (Emphasis added).

"<u>Bennett and St. John planned and intended for the 14.03 Acres to include the Improvements</u> in order to improve its value. (SSUF, ## 9, 39.) The remainder of the original 54.03 Acres would bear Assessor's Parcel Number APN 099-260-69 (hereafter the "40 Acres")." (1CT 58).

"Bennett and St. John partitioned the 54.03 Acres as described, with one critical error: the Improvements remained on the 40 Acres, instead of the 14.03 Acres." (1CT 58).

"St. John, Bennett and Allen all disagree on who <u>"cooked up" this fraudulent venture,</u> ...their actions are the sole cause of the fiasco now before the Court." (1CT 58 FN). (Emphasis added).

"Unfortunately, the parcel split scheme was not the only example of <u>St. John, Bennett, and Allen's guile</u> in obtaining the Option One loan. Astonishingly, Bennett and Allen <u>willingly participated in mortgage fraud</u>.." (1CT 59). (Emphasis added).

Here Wells Fargo changed positions in their motion for summary adjudication exceeding the pleadings and expanding the remedies sought in their cross-action:

"THE UNDISPUTED FACTS AND EQUITIES OF THIS CASE REQUIRE THE IMPOSITION OF AN <u>EQUITABLE</u>

LIEN AND AN EQUITABLE MORTGAGE IN FAVOR OF
WELLS FARGO AND AGAINST THE 40 ACRES" (1CT  61).


"Wells Fargo's fifth and sixth causes of action seek an order
from the Court imposing an equitable lien and equitable
mortgage against the 40 Acres. A court may impose such
equitable interests in order to secure an obligation when justice
so requires. (Miller & Starr, 5 Cal. Real Est. (3d ed.)§ 11:105.)"
(1CT 61). (Emphasis added).



    The intervening argument at law in banks memorandum of points

and authorities cites the doctrine of unclean hands, equity, limitation of

summary adjudication to the issues framed by the pleadings and triable

issues. Legal requirements that the motion and the trial court completely

disregarded. (1CT 60-63).

    The unsigned motion then closes with a demand for summary

adjudication on banks' "fifth and sixth causes of action." Equitable lien and

mortgage on the 'Improvements'. (1CT 64).


    Respondent Wells Fargo by counsel did not limit the use of

inconsistent positions to their standing, allegations by cross-complaint or

summary adjudication, but incorporated wildly inconsistent exaggerated

claims and demands into their Ex Parte Application For An Order

Appointing Receiver. Filed on July 20, 2011, at 4:46 PM. (2CT 550-556).

(3CT 568-657). Only portions of Banks' ex parte application were sent to

appellant by email the evening of July 20 by banks' counsel, the Ryan Firm, and do not comport with this record.

The Order for Appointing Receiver, heard by ex parte request, was held *before* summary adjudication.

The ex parte application is also unsigned and missing the signature page to the application.  It is largely a cut and pasted repeat of bank's motion for summary adjudication expanding on the theme that Bennett's 40 Acre parcel and Allen's 14 Acre parcel are, "portions of the Subject Property" and finally, morphing the parcels into the "Subject Property" as grounds to appoint a multipurpose receiver over Allen' and Bennett's properties. Notice of intent to seek a "rents and issues receivership over Allen's parcel" was given appellant by phone on July 19th or 20th. (3CT 584-587).

Respondent's Ex Parte Application for Order Appointing Receiver does not request a preliminary injunction.

No Proofs of Service for the Ex Parte Application and supporting documents were ever served or filed with the court by Wells Fargo.

 It's not surprising that there are no Proofs of Service for the ex parte receiver application and supporting papers in this record or the superior court clerk's register of actions.  (1CT 12-13), (2CT 550-567), (3CT 568-590), (3CT 609-657).  The Proofs of Service that follow in the record are

unrelated. (3CT 658-661).


**DEFENDANT/CROSS-COMPLAINANT WELLS FARGO BANK,**
**N.A.'S EX PARTE APPLICATION**
**FOR AN ORDER APPOINTING RECEIVER**


In pertinent part, "rents and profits receiver" beginning with:

> "Defendant/Cross-Complainant Wells Fargo Bank, N.A., as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo"), hereby applies for an order appointing a receiver and authorizing her to take possession of the property located at 695-725 Highway 36, Susanville, California 96130 (and more fully described in the accompanying memorandum of points and authorities), manage the property, preserve it for later disposition, and collect all rents, including amounts past due and unpaid. This application is made on the grounds that the 40 Acre portion of the property must be preserved and maintained pending judgment in this action, and pending judgment on Cross-Complainant's cross-complaint. This application is further made on the grounds that Wells Fargo has absolute legal and equitable rights to take possession of the 14 Acre portion of the property and collect rents thereof by virtue of written agreements with Plaintiff/Cross-Defendant Norman W. Allen ("Allen"), and that Wells Fargo is entitled to ex parte appointment of a receiver as a provisional remedy to enforce the terms and provisions of the Note and Deed of Trust executed by Allen." (2CT 551). (Emphasis added).

Above, the bank's 'rents and profits' receiver on the Allen property; "14 acres of near valueless scrub" morphs into a prejudgment receivership without benefit of any attachment procedures, a verified complaint or valid affidavits supporting the ex parte application. Below, the "Subject Property" morphs to include Bennett's land, not included in the Allen

19

transaction, complaint or bank's cross-action, the receiver expands from a

rents and profits receiver to a post judgment foreclosure receiver.

In pertinent part:

> In addition, Allen has failed to make a loan payment in over two
> years, despite collecting rents from the 14.03 Acres during that
> period. The Court must therefore appoint a receiver over the 40
> Acres to manage and control that portion of the property pending
> disposition of the property, and appoint a receiver over the 14.03
> Acres to collect the rents therefrom.  (2CT 555).

> At that time, the Subject Property was comprised of 54.03 acres of
> land, with improvements, including a residence, barn and
> outbuildings (hereafter the "Improvements"), encompassing
> Assessor's Parcel Numbers 099-260-70 and 099-260-69 (hereafter
> referred to as the "54.03 Acres")  (2CT 555).


Below respondent bank seeks a recovery receiver to vacate a

fraudulent purchase, and asserting a suddenly arisen, previously unpleaded

claim to rights and interest in Bennett's 40 acres:

> **AS A CREDITOR, WELLS FARGO IS ENTITLED TO
> APPOINTMENT OF A RECEIVER UNDER CODE OF
> CIVIL PROCEDURE SECTION 564 IN ORDER TO
> PRESERVE THE 40 ACRE PORTION OF THE
> PROPERTY**

> As described above, and in Wells Fargo's motion for summary
> adjudication set to be heard concurrently with this application,
> Wells Fargo is entitled to an equitable lien and an equitable
> mortgage on the 40 Acres. As a creditor with a claim on the 40
> Acres, Wells Fargo is entitled to seek the appointment of a
> receiver to preserve that portion of the property:

> (b) A receiver may be appointed by the court in which an action
> or proceeding is pending, or by a judge thereof, in the following

cases:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to the creditor's claim,.." etc.. "and where it is shown that the property or fund is in danger of being lost, removed, or materially injured. (2CT 561).

Here the allegations of 'mortgage fraud' and 'foreclosure avoidance schemes' in bank's summary motion are supplemented with erroneous allegations of: "a crime spree described by Bennett as specifically targeting the 40 acres". Without any legal or equitable ownership to appellant's personal property, business or real property, Wells Fargo conferred jurisdiction upon the court for a receiver to "manage and control" all, continuing:

> "Should the 40 Acres (and the improvements thereon) be damaged in the absence of insurance coverage, the 40 Acres are likely to be and remain significantly devalued. In addition, Allen has failed to make a loan payment in over two years, despite collecting rents from the 14.03 Acres during that period. The Court must therefore appoint a receiver over the 40 Acres to manage and control that portion of the property pending disposition of the property, and appoint a receiver over the 14.03 Acres to collect the rents therefrom." (2CT 555). (Emphasis added).

Returning to their cross-complaint:

Wells Fargo, as the currently assigned beneficiary of the Option One loan, filed a cross-complaint in this case also seeking, in part, an equitable lien and an equitable mortgage on the Improvements in order to comport with the parties' intent. (2CT 560).

Expanding their cross-action:

> As described above, and in Wells Fargo's motion for summary adjudication set to be heard concurrently with this application, Wells Fargo is entitled to an equitable lien and an equitable mortgage on the 40 Acres.  (2CT 561).

Prejudgment receiver again:

> any damage to the 40 Acres will significantly reduce the value of the property which will impair the Court's ability to dispose of it at the conclusion of this litigation. For this reason alone, appointment of a receiver to take possession of the 40 Acres and to manage this portion of the property (including placing insurance thereon) is necessary and must be ordered by the Court.  (2CT 563).

Back to 'Rents and Profits':

> The recorded Deed of Trust executed by Allen expressly grants Wells Fargo, as the loan beneficiary, the right to collect the rents and profits, including amounts past due and unpaid, of the 14.03 Acres. Paragraph 35 states, in pertinent part:
> **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property.  (2CT 563).

Banks citation of law:

> It is well settled that a beneficiary or mortgagee is entitled to possession of the encumbered property if the express terms of the mortgage or deed of trust so provide.
> (Civ. Code § 2927; *Snyder v. Western Loan and Building Company*, (1934) 1 Cal.2d 697.)  (2CT 564).

Rents and Profits:

> A recital contained in a deed of trust entitling the beneficiary to collection of rents and maintenance of certain property by any legal means, including the appointment of a receiver, presents a prima facie showing of the beneficiary's <u>entitlement to employment of a receiver</u>  (2CT 564-565). (Emphasis added).

22

**D)**  Bank's Ex Parte application for the rents, issues and profits receiver was a fraud. The ex parte appointment was never confirmed at hearing after return on an OSC, exceeding the court's jurisdiction.


**E)**  The trial Judge afforded bank's unconfirmed ex parte rents and profits receiver immediate seizure of Bennett's business, personal property, chattel and real property, without bonds or oaths in place.


Abuse of discretion and violation of appellant's constitutional protections.

**F)**  Moreover, the *emergency* receiver had been contracted by Wells Fargo to earn $190.00 per hour since March 29, 2011. (8CT 2081).


Letter of understanding from Timothy Ryan  to 'receiver' Lozano in

pertinent part:

**Re: <u>Norman Allen v. Summit Financial Group, et al.</u>**

Our File No:          8045-1267

Lead Case No.:     45679

Dear Ms. Lozano,

   We are in receipt of your letter of interest regarding the potential receivership our clients will seek against Whispering Pines Ranch in the above matter.  Our client recently authorized an hourly rate of $190.00.  We would like to work with you in this matter; however your requested fees are in excess of those authorized by our client.  If you reduce your hourly rate to $190 per hour to fall within our client's budget, we can begin the process of seeking the receivership.

23

We look forward to hearing from you.

Very truly yours,

**The Ryan Firm**

A Professional Corporation  (8CT 2081).


Respondent banks entered into another contract with the unconfirmed ex

parte receiver immediately following the appointment hearing. Wells

Fargo's counsel, Ryan, entered into an indemnity agreement with 'receiver'

Vicki Lozano on 7/27/2011, six days into the unconfirmed receivership, to

protect her actions as receivers, stating in part:

> "in order to secure Receiver's ability to possess, control and
> manage the Subject Property and all personal property
> thereon,..". (8CT 2273-2276).


## JULY 21, 2011 HEARING FOR SUMMARY ADJUDICATION
## EX PARTE APPOINTMENT OF RECEIVER

It is undisputed in the record and movant's pleadings, the ex parte

application for appointment of a receiver relies on the summary

adjudication 'order' for underlying authority. The ex parte appointment

*occurred before* the summary adjudication hearing was conducted, at the

request of respondent Wells Fargo.

Bennett argued for 13 minutes, detailing questions of standing and

right to claims asserted by Wells Fargo.  (4CT 1100-1108). Reporter's

Transcript July 21, 2011:

THE COURT:  Then I received this morning, to my surprise, an ex parte application for an order appointing receiver by Wells Fargo that was filed about ten minutes to 5:00 last night,.. (4CT 1094).

THE COURT:  Anyhow, what do you want to do, gentlemen?  Do you want to discuss this proposed order appointing the receiver?  There was an ex parte request for that.

MR. RYAN:  I would like to do that, initially your Honor, yes. (4CT 1097).

MR. RYAN: Your Honor, it's exceedingly simple. It's undisputed by any party to the case that my client, successor in interest to the original lender, was supposed to have an <u>interest in the improvements.</u> No on disputes that and we have that in our moving papers. It's in the declarations. It's in the oppositions to the summary judgment by everyone in their own declarations. (4CT 1098). (Emphasis added).

MR. RYAN:   <u>There are numerous horses on this property.</u> There are numerous improvements on this property. <u>It's being run as a business.</u> Mr. Bennett has been living on the property for two years without paying rent to anybody. That is undisputed.

<u>I think the facts and the law are abundantly clear that a receivership is entirely appropriate to protect everyone's interest in this case, except Mr. Bennett's.</u>  (4CT 1100). (Emphasis added).

**i.**     The court crossed out the requirement for a hearing on an order to show cause for appointment of the ex parte receivership and the receiver was never confirmed.

THE COURT:  "I guess my other concern is in the proposed order item 16 was a request for an order to show cause and

confirmation.  Everybody is speaking, at least, at this point so I don't think that needs to be in the order."

MR. RYAN:  "I think you're absolutely correct.  I put that in there as an abundance of caution in case the Court wants to call everybody back one more time." (4CT 1114).

Appellant argued against banks' standing and the lack of the original instruments in record to prove up Wells Fargo's position as "creditor", again. (4CT 1114-1116).

The Judge appointed the receiver:

THE COURT:  "...I have amended it on it's face inserting the $10,000 bond and eliminating the need for an OSC hearing confirming it at this point.  So I will go ahead and do that."

A Fifteen minute hearing for the summary adjudication followed the ex parte appointment. Bennett spoke to many of the falsehoods and misrepresentations that were used by banks and others to lend the appearance of wrongdoing by the injured parties.  (4CT  1124-1127). Regarding the down payment, for example, *there was no down payment required and none given.* Appellant also brought the required joinder of Chicago title to the judge's attention, again.  (4CT 1124-1127).

The Judge took a vote exclusively from the attorney's present conferring jurisdiction to appoint while cutting off appellant's objection.

(4CT 1109-1113). (4CT 1111).

Mr Ryan spoke to the non-monetary declarations, claiming the right for his client to reassess their positions *after* the first amended complaint was filed.  (4CT 1112). As noted *supra,* the first amended complaint was filed May 2008 while banks filed declarations of non-monetary status in 2008, 2009 and 2010.  Banks' cross-action was filed October 12, 2010


The record is undisputed that the properties were divided by Certificate of Compliance. (2CT 312).  Further, the record is undisputed that no one involved in the transaction was aware of the misplaced improvements, raising significant questions regarding the certificate of compliance procedure.

1) The Allen Complaint:

> "The belief of the parties was that the residence and stable were on the subject parcel when in fact they are on the adjoining parcel..", "The above described failure of the written contract, deed and the above mentioned deed of trust to reflect the true intent of the parties resulted from a mutual mistake..". (1CT 159).


2) Wells Fargo/BAC Cross-action:

> "18.  Wells Fargo and BAC are informed and believe, and based thereon allege, that at all times relevant, all parties to this cause of action intended the Improvements to be part of the 14 acres." (Aug CT 230).

27

And:

>"..sale was founded on the mistaken belief that the
>Improvements were located on the 14 acres,.." (Aug CT 231).
>"..the WFB Deed of Trust was executed based on the mistaken
>belief that the Improvements were located on the 14 acres,.."
>(Aug CT 231).

Further:

>"Wells Fargo and BAC are informed and believe, and based
>thereon allege, that this mutual mistake.." (Aug CT 232). Etc.

3) Wells Fargo Bank's motion for summary adjudication:

>"Bennett and St. John planned and intended for the 14.03 acres
>to include the Improvements.." (1 CT 58).

## TRIABLE ISSUES REMAINED AND MORE AROSE

New and unsupported allegations not previously alleged in
respondents cross-action and inconsistent positions were incorporated into
the respondent banks' "Motion for Summary Adjudication" and "Ex Parte
Application for Order Appointing Receiver".  These allegations first
appearing in the summary motion raised new triable issues in and of
themselves and, even if they had been true foreclosed summary disposition.

Wells Fargo filed a reply based on non-receipt of any opposition by
Bennett and declaration of Timothy Ryan in support on July 15, 2011.

(2CT 497-503). Banks' reply cited Code of Civil Procedures §§ 1005 (b),(c) and stated that: "Since cross-complainants' motion is well founded and unopposed, this Court should grant their motion." And, "[t]his Court should refuse to hear any opposition submitted by Bennett..".  (2CT 497-507).


Bennett did not file an opposition to Bank's summary motion. Movant was required to foreclose triable issues before any answers could be considered. Given Banks' failed declarations, and that movant's prayer exceeded and expanded those framed by their cross-claim, Wells Fargo's summary motion did not foreclose triable issues under the law.

Settlement conference was scheduled for July 21, 2011 and trial set 30 days later on August 22, 2011, appellant believed banks' through counsel were painting a hard-line in preparation for settlement negotiations to compensate for banks' manifest errors.

**G)**  The Court erred in finding that banks had met their burden to foreclose triable issues by their summary motion.


Plaintiff Allen opposed the motion, being named equally in banks' motion and without differentiation in the allegations or remedies.


## PARTIAL SETTLEMENT AGREEMENT

True to banks' intentions and Mr. Ryan's words (generally: " receiver will benefit everyone but Mr. Bennett", *supra*) the afternoon was spent in a brutal caustic "settlement conference", appellant was threatened with 35 years in prison for mortgage fraud and $640,000.00 dollars in "non-dischargeable" debt if he did not "sign over" his vested real property. Attorney's Ryan for Bank, Close for St. John and Pickering for Evan's Appraisal were repeatedly asked by appellant to stay out of appellant's personal space, while they were hurling threats and obscenities with such venom that spittle sprayed appellant.

Appellant refused to sign the partial settlement agreement, while the Judge relaxed in chambers.  Each attorney including Talia for respondent Allen, took turns warning Bennett that the receiver was already at his vested property, that he was not to return home, that if he did not sign the settlement agreement he would lose his purebred trail horses, all of his personal property and in the words of Close: "you can fill one paper bag with personal belongings", to which Ryan retorted: "I'll let him take a paper bag but only if its empty".  Then Ryan demanded the keys to Bennett's pick-up truck, Bennett refused. Judge returned from chambers after a meeting where "only attorneys (were) allowed", the partial settlement agreement was signed by everyone except appellant.

Almost one year prior to entry of the judgment appealed from

30

respondents dismissed their complaints against appellant by the settlement agreement signed at the conclusion of respondents abusive pretrial settlement conference, and subject to the summary adjudication.  (3CT 682-685).  Nonetheless, banks' attorney Ryan insisted that the receivership would remain in place and in possession and control of the entirety of appellant's real and personal property, business and livestock.

Bennett learned post hearing that the appointing order apparently included a preliminary injunction, thus titled: 'Order Appointing Receiver and Preliminary Injunction'. (3CT  686-692).  Mr. Ryan followed Bennett to his property after the settlement conference and handed the appointing order and partial settlement agreement to Bennett.


## I.  Insufficiency of Banks' Declarations and Evidence in support of summary adjudication and ex parte application for order appointing receiver

**A)**  Sufficiency is lacking in the declarations, verifications and evidence presented in support of summary adjudication


**B)**  Not one Declaration in support of respondent Wells Fargo Bank's motion for summary adjudication or ex parte application for order appointing receiver speaks to personal knowledge, only of declarants reviewing records.


Mr. Ryan's declaration in support of summary adjudication speaks to historical records.  (1CT 65-69). The attachments to Ryan's declaration,

which he references as Exhibits 1- 8,(1CT 106-260 – 2CT 261-339), each indicates that Ryan was not participant to or present at their creation or the events leading thereto.  In fact Wells Fargo/BAC first appearance in Lassen No.: 45679 occurred by phone on 09/23/08 to argue banks Declarations of Non-monetary Status'. (1CT 3).

Mr. Ryan was personally present at the deposition he references as Exhibit 9. (2CT 340-347).  Mr. Ryan conducted the deposition of appellant on 02/10/11. Appellant was never allowed, or sent, a copy of the transcript for correction and did not see the transcript until August of 2012. Moreover, the transcript finally provided appellant has a distinctly different signature page, and it is not signed.  The other Bennett deposition transcript referred to in Mr. Ryan's Declaration as Exhibit 5, (1CT 67); viewed at (1CT 194-250); also has no evidentiary or probative value. Conducted on July 17, 2009. (1CT 195). The transcript was not produced or signed by reporter Cynthia Wright until Feb. 14, 2011.(1CT  250). Nineteen months passed between the actual deposition and production of the deposition transcript, again no correction was allowed.

The Exhibits attached to Mr. Ryan's Declaration are not facts supported by his personal knowledge in any relevant sense.

### The Declaration of Barbara Smith

Supporting Banks motion for summary adjudication this Dec does not

speak to personal knowledge except reviewing the documents after the

closure of her former employer, Wilshire. (1CT 70-73).  Admitting that

counsel for BAC provided documents to her.  (1CT 70-105).


### Declaration of a Custodian of Records for BAC in Support of Motion for Summary Adjudication, does not speak to personal knowledge

This declaration is by Jenna Shumate, a litigation specialist at BAC. (2CT

349). It does not aver to personal knowledge. The 'records' in Shumate's

declaration are from Wilshire, Shumate is an employee of BAC.  (2CT 348-

379).

### Declaration of Jennifer Fishman in Support of Ex Parte Appointing Order

Declaration of Jennifer Fishman in Support of...Ex Parte
Application for an Order Appointing Receiver or in the
Alternative for Issuance of a Temporary Restraining Order and
Setting on Shortened Time of an OSC Re: Appointment of
Receiver). (3CT 618).

This, a pure fabrication, but avers:

"(a) On or about May 18, 2005, Allen executed a Note to the
benefit of Option One Mortgage Corporation.... [A] true and
correct copy of the Note is attached hereto as Exhibit 1 and
incorporated herein by reference." {Actual date: 5/19/05}.

"(b) The Note is secured by a Deed of Trust, also executed by
Allen and recorded against the Subject Property, naming
Mortgage Electronic Registration Systems, Inc., as the nominal
beneficiary on behalf of Option One Mortgage Corporation. A
true and correct copy of the Deed of Trust is attached hereto as

Exhibit 2 and incorporated herein by reference."

"(c) <u>Thereafter, by virtue of a Corporation Assignment of Deed of Trust dated June 1, 2005, Mortgage Electronic Registration Systems, Inc., as nominee and agent for Option One Mortgage Corporation, assigned all beneficial interest in the Note and Deed of Trust to Wells Fargo</u>. A true and correct copy of the Assignment of Note and Deed of Trust is attached hereto as Exhibit 3 and incorporated herein by reference." (3CT 620-621). (Emphasis added).

The copies of Allen's Note and Deed of Trust attached as "Exhibits 1 & 2" *do not name Mortgage Electronic Registration Systems, Inc., at all,* or assign nominal interest to MERS*,* nor does 'Exhibit 3' the 'Corporation Assignment of Deed of Trust'. (3CT 624-642).

The balance of declarations in support are by employees of the Ryan Firm, averring only to knowledge of internal affairs.

### Request for Judicial Notice in Support of WFB's Motion for Summary Adjudication

Declarants above, speak extensively by declaration to the contractual relations and agreements between Wells Fargo, Option One, Wilshire and BAC. No corporate authority, documentation or evidence of said contractual agreements, mergers, sales or assignments is provided except a "Pooling and Servicing Agreement" ("PSA"), underlying the MLMI 2005 HE-3 "Certificates".  The "controlling document" as to the participants' contractually defined legal positions. The unsigned "PSA" specifically references Wells Fargo Bank, Wilshire, Merrill Lynch and Option One

under similar positions and 'titles' they attach in this matter. The MLMI
2005 HE-3 PSA, is attached to Wells Fargo Bank's Request for Judicial
Notice as Exhibit 7.   (Aug CT 31-224).

Styled as: "The Pooling and Servicing Agreement dated December
1, 2005, filed with the Securities and Exchange Commission for the Merrill
Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates,
Series 2005-HE3." (Aug CT 3).

The Pooling and Servicing Agreement (contract) is *unsigned* by
anyone on any page, not certified and unauthenticated. It contains no
mortgages as required by its terms, including Allen's in the "pool"
"Intentionally Omitted".  (Aug CT 152-153).   Appellant spoke extensively
to these issues at hearing on July 21, 2011.  (4CT 1100-1108).

**Separate Statement of Undisputed Material Facts**

For brevity, respondent banks' SSUMF merely reiterates the chain of
title prior to and through the Allen/Option One Loan and concluding with
the bare purported Corporate Assignment from Option One-Wells Fargo. It
acknowledges, the mutual mistake and the request for equitable lien and
equitable mortgage over the 'Improvements', while reinforcing the
hyperbole of new allegations. It attempts to confer authority to end run due

35

processes, equal protections and constitutional privileges. (2CT 380-408).

### The Summary Adjudication was Invalid

i.     **The Unconfirmed Receiver Is Void *Ab Initio***

Triable Issues remaining were numerous and *prima facie,* the resulting 'proposed order', objected to by Bennett was never signed. 'Reformation' was not an 'issue' sought at summary adjudication, yet the unspecified 'reformation' to include Bennett's 40 acres was expanded into banks' unsigned 'proposed' order, was expanded again in November to include a first priority security interest over Bennett's 40 acres for an undetermined dollar amount. It's incorporated into the judgment appealed from.

The 'Improvements' over which banks' cross-action requested an equitable lien are not mentioned in the minute order, the proposed order signed four months later, or the entered judgment of July 21, 2012, appealed from here.

Bennett's 40 acre vested real property, business and personal property were not part of the Allen loan and not sought under the causes of action and remedies in banks' cross-complaint.

Nonetheless, Wells Fargo Bank by counsel claimed victory and proceeded to seize Bennett's business, personal and real property on July

21, 2011 through their receiver, then alleged contempt when Bennett

resisted ejectment and disposal of his livestock beginning on July 29, 2011.

No dollar amount, $0, was awarded by judgment. No abstract of

judgment can be rendered because no judgment amount was sought or

determined. No judgment lien or mortgage can be lawfully recorded into

the official county records.

The certificate of compliance approved and recorded by Lassen

County before close of escrow, was not given consideration.  The judgment

was not apportioned between the three parties subject to the summary

adjudication. Chicago Title was not enjoined. No 'equitable' mortgage

balance was considered or derived, no mortgage terms, conditions or

parties.

No writ of attachment was sought prejudgment or post judgment.


## BANK'S ATTORNEY WROTE AND SIGNED
## THE "RECEIVER'S ORDERS"

Ryan served a letter on Ryan Firm stationary to Bennett on July 23,

2011 citing the receiver's order as: "Under the terms of the above

referenced order, you are required to immediately turn over possession of

the property – including the residence thereon – to the receiver" and

ordering appellant to "immediately vacate the property, or risk being found

in contempt of the Court's order." and "Should you fail to vacate the property (and the residence on the property) by 5:00 p.m. On July 25, 2011, we will immediately proceed ex parte to have you held in contempt." (3CT 799-800).

## SEIZURE AND CONTEMPT

Addressed in part by appellant's Petition for Peremptory Writ of Mandate, No.: C070237, filed on January 30, 2012, this record on appeal provides additional insights.

On July 29, 2011, Bank's counsel alleged appellant was in contempt of the receiver's order by: Defendant/Cross-Complainant WFB N.A.'s Ex Parte Application for an Order to Show Cause Re: Contempt and Supporting Documents. (3CT 763-769). (3CT 777-779). (3CT 789-791). (3CT 853-867). Hon. Judge Mason sitting by telephone refused to hear the contempt application, expressing concerns over the receiver. There is no charging affidavit in the record. No signed application for OSC or signed OSC, re: Contempt is in record. Hon. Judge Mason's signed findings for both matters are missing from the record. However, a minute order typed five months later in December, 2011 by Clerk Shannon Spangler is in record. (4CT 877-878).

As detailed in Writ Petition C070237 and evidenced in the Trial

Transcript of August 19, 2011, attached thereto as ("TT 8_19").  No signed or served OSC re: Contempt was available at trial.  On August 18, 2011 Bennett filed for Chapter 11 Bankruptcy protection On August 19, without notice or counsel, Bennett was held to trial, ordered to take the stand, testify, defend himself and was then remanded to jail for 5 days despite attempting to concede to surrendering his real property and original documents. The Hon. Judge Giordano exited the courtroom while Bennett pleaded to 'conform' to the unconstitutional demands. That no warning occurred is evidenced in this record.  (1CT 13-14).

As the second ex parte application is also of record in Writ Petition C070237, "WFB's Application for an Order Authorizing the Receiver to Surrender Equines to the County of Lassen", appellant points out only a few matters of interest in this record. The application to surrender alleges:

**THE ORDER APPOINTING THE RECEIVER ALREADY AUTHORIZES HER TO SURRENDER THE ANIMALS, HOWEVER A FURTHER COURT ORDER IS WARRANTED GIVEN THE UNPRECEDENTED CONDITION OF THE ANIMALS AND BENNETT'S LITIGIOUS NATURE**

On July 21, 2011, the Court entered an order appointing Vicki Lozano as the Receiver over the Subject Property. Said order authorizes the Receiver to possess and control the Subject Property, and to manage and dispose of any personal property (including animals) on the Subject Property. Thus, the Order... already authorizes the Receiver to surrender the animals to the County of Lassen. However, ... a further order of this Court is necessary in order to clearly delineate the Receiver's power to surrender the animals, ... restrain Bennett... from interfering with attempts to ...

39

surrender the animals. .. based on Bennett's litigious nature and the Receiver's...apprehension that Bennett will subject her to numerous court proceedings.  (3CT 775-776).

The receivers appointing order is in this record. (3CT 686-696). Also the receiver's log and accounting which indicates that the horses were not surrendered to Lassen County, remained on Bennett's property until August 26, 2011, that no veterinarian, or animal inspector ever treated or inspected the horses during the 29 days following "emergency seizure". (7CT 2048-2068), (8CT 2069-2090).

Further, the "Declaration of Timothy Ryan in Support of Surrendering Equines" is missing the attachments: "Veterinarian's Report" and "Letter from Pete Heimbigner", (3CT 795-800). Now are alleged by verified pleadings in record, as "forged fraudulent documents created by Ryan".

Especially important is:

*The Grace Foundation of Northern California*
*v.*
*Wells Fargo Bank, Bank of America, BAC, The Ryan Firm, Timothy M.*
*Ryan, Dwight Bennett, Vicki Lozano and County of Lassen*
PC 2012-0382
(7CT 1917-1945).
Alleging: 1. Quantum Meruit. 2. Fraud. 3. Breach of Fiduciary Duty. 4. Legal Malpractice. 5. Rescission of Contract. 6. Declaratory Relief-Abandonment. 7. Indemnification.

Now transferred to Orange County with Bennett dismissed, it alleges a very different set of facts, regarding surrender of Bennett's animals by Wells Fargo, Bank of America and the receiver.

# ARGUMENT

**I.**  The court erred in granting Wells Fargo's summary adjudication on July 21, 2011, because bank's moving papers raised new issues.

**A)**  Wells Fargo Bank's motion for summary adjudication not only failed to foreclose triable issues but raised new triable allegations.

**B)**  Allen's complaint, the answers to Allen's complaint by all parties and Bank's cross-action *acknowledged the mutual mistake,* no allegations of fraud, mortgage fraud or misrepresentation appear in Allen v. Summit except as to Summit Financial, Hosilyk, Weich and Evans Appraisal Services.

> **i.**"Fraudulent intent," "collusion," "active participation," "fraudulent scheme" — this is the language of *deliberate wrongful conduct.* It belies any notion that one can become a fraudulent transferee by accident, or even negligently." (See *Richardson* v. *White* (1861) 18 Cal. 102, 106). "`good faith' includes doing the sort of reasonable inquiry that a reasonably prudent person would do under the circumstances. "The problem with (their) [r]easoning, aside from the fact that the cited authorities do not support it, is that", (Bennett) [d]id make *a "reasonable inquiry"*! "[r]easonable inquiry includes getting a title report and title insurance....". (Appellant's) "[c]onduct evidences this to be so": (Bennett)  "[*o*]*btained* title reports and title insurance." (Original italics.)(*Lewis v. Superior Court*, (1994) 30 Cal. App. 4th 1850 [37 Cal. Rptr.2d 63] (*Lewis*).) (Emphasis added).

 Bennett's reasonable inquiry is evidenced by hiring a licensed surveyor to

conduct the certificates of compliance, Bennett's purchase of title reports

for both parties to the transaction, purchase of American Land Title

Insurance to indemnify Allen and his lender. After 5 years, Wells Fargo

through counsel cast blame and inferred wrongdoing by Bennett and Allen

because the statute of limitations had run, as cited in the record, after

Wilshire was notified in writing by Lassen County of the defects.

The Doctrine of Laches is an affirmative defense by Bennett, banks

hid behind declarations of non-monetary status; respondent Allen and

appellant suffered with clouded titles and were forced to litigation without

the Creditor's participation.

**II.** <u>The case authorities cited in banks' summary motion</u>, pages, 1CT 60 –

63 of this record on appeal assert "Summary Adjudication is limited to the

Issues framed by the pleadings"

> **ii.**"As we have recently reiterated, the pleadings set the
> boundaries of the issues to be resolved at summary judgment."
> (*Knapp v. Doherty,* (2004) 123 Cal. App.4[th] 76,90.)

> **iii.**"..the plaintiff cannot bring up new, unpleaded issues.." (*Mars
> v. Wedbush Morgan Securities, Inc.,*(1991) 231 Cal. App.3d
> 1608, 1613-1614.)

Banks' motion at pp. 1CT 55-59 introduced a litany of new

allegations apparently to morph and expand their pleadings beyond those

framed by cross-complaint and seize appellant's 40 acres, otherwise beyond

their reach, while admitting a mutual mistake.

> **iv.**  Summary judgment is granted when a moving party

establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

    **v.** "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." *(Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

**III.**    Appellant did not file an opposition, the banks failure to foreclose triable issues is *prima facie* by new unpleaded allegations, in a *motion for summary adjudication,* as set out above and, because other cross-defendants subject to the summary adjudication did raise many of the same triable issues. (2CT 418-470).

    **A)** Sufficiency of movant's supporting declarations failed, movants did not aver to first hand knowledge.

    **i** *(Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408) Citing *Aguilar*;  "We conclude that it would be an abuse of discretion for a trial court to grant a summary judgment based on a failure to file a separate statement when the moving parties have not in their moving papers set forth a prima facie showing for summary judgment--i.e., have not met their 'burden of persuasion to show that there was no triable issue of material fact and that they were entitled to judgment as a matter of law.'" *(Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861(*Aguilar*).)

    The declarations and evidence submitted in support of respondents' summary adjudication, as cited in appellant's statement of the case, all speak to second hand information. Including multiple references to respondent banks' contractual authority *as established by an unsigned 'Pooling and Servicing Agreement'.*

43

Banks declaration supporting ex parte application for receivership, wherein declarant Jennifer Fishman presents a completely contradictory chain of title in the assignment of instruments and introduces new beneficiaries, (MERS).  Moreover, Fishman and banks' counsel allege that the Allen Deed of Trust contains contractual provisions for appointment of a receiver where none exist.

See (*Miley v. Harper,* (1967) 248 Cal. App. 2d 463):

> **ii.**  "[4] The best evidence rule applies to affidavits or declarations which are filed in support of motions for summary judgment." (*Johnson v. Drew*, 218 Cal. App. 2d 614, 620 [32 Cal.Rptr. 540]; *Miller & Lux, Inc. v. Bank of America*, 212 Cal. App. 2d 719, 725 [28 Cal.Rptr. 401]; *Rodes v. Shannon*, 194 Cal. App. 2d 743, 749 [15 Cal.Rptr. 349]; *Family Service Agency of Santa Barbara v. Ames,* 166 Cal. App. 2d 344, 351 [333 P.2d 142]; *Schessler v. Keck*, 138 Cal. App. 2d 663, 669- 670 [292 P.2d 314]; *Murphy v. Kelly*, 137 Cal. App. 2d 21, 28 [289 P.2d 565].)

> **iii** "It is immaterial that the record does not show any objection or motion to strike. [5] "It is the rule in California that there can be no waiver in summary judgment proceedings of the right to object to matter inadmissible by virtue of its incompetency." (*Family Service Agency of Santa Barbara v. Ames*, supra, p. 351; see also *Miller & Lux, Inc. v. Bank of America*, supra, p. 725; *Callahan v. Chatsworth Park, Inc.*, 204 Cal. App. 2d 597, 604 [22 Cal.Rptr. 606].)

**III.** While seeking an 'equitable lien', already statutorily in place and undisputed, although unrecorded, respondents proceeded to seizure of appellant's unencumbered real property, business, chattel, and totality of personal property not subject to the lien, without benefit of attachment

procedures or any equitable determination of: values, dollar amounts, indemnification or liabilities having been adjudicated.

> **i** "The issue is simply whether the action as pleaded is one that affects title or possession of the subject property. Real party argues that he seeks to impose his equitable claims on the same (undivided) [p]roperty from which the underlying action arose.. [B]ut the fact remains that this purported interest does not go to legal title or possession (other than) [t]he subject property. Even before (seizure), [r]eal party was a (statutory) [l]ienholder whose lien did not transfer any interest in title. (Civ. Code, § 2888.)" (*Urez Corp. v. Superior Court* (*Keefer*) (1987) 190 Cal.App.3d 1141 [235 Cal.Rptr. 837]).

> **ii.** 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 131, p. 5487 (italics deleted).) "In this case, however, "[t]ransfer of [defendant's property to plaintiff] is not an appropriate remedy where, as here, only improvements amounting to considerably less than the overall value of the property are involved." (*Urez* ibid).

IV.    Movant's request for summary adjudication proposed an undetermined equitable lien, providing no appraisals, or expert testimony or declarations, to calculate any lien amount. Liens impressed are judgments recorded and equitable liens by their very nature are usually liens to secure monetary obligations, as here, where the only property subject to the mortgage were 'improvements' not unique real property, the judgment lien required a rendering in dollars to impress, record, and ultimately enforce judgment. Wells Fargo did not even hypothesize a monetary rendering.

> A)  Code of Civil Procedures § 577.5 states: "In any judgment, or execution upon such judgment, the amount shall be computed and stated in dollars and cents, rejecting fractions."

> B)  Code of Civil Procedures § 425.10 (a)(2):  "A demand for

judgment for the relief to which the pleader claims to be entitled. If the recovery of money or damages is demanded, the amount demanded shall be stated.

C)  Code of Civil Procedures § 580(a) in pertinent part: "[i]n any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint, and embraced within the issue."

D)  Code of Civil Procedures § 437c.(f).(1): "Summary Adjudication may only be granted if it completely disposes of a cause of action, a claim for damages, or an Issue of duty."

The use of inflammatory rhetoric not supported by the evidence, was engaged to overcome judicial discretion and statutory limitations where respondent's case could not prevail on its merits.

Banks in their ex parte application for an order appointing the receiver, cited (*Turner v. Superior Court* (1977), 72 Cal. App. 3d 804 [140 Cal. Rptr. 475] (*Turner).*).

**V.**  Appellant finds (*Turner* at p. 810), very much on point with different results. Quoting Wells Fargo's ex parte application for an order appointing a receiver:

**A)** "..[a]pplies for an order appointing a receiver and authorizing her to take possession of the property, manage the property, preserve it for later disposition, and collect all rents, including amounts past due and unpaid... [T]his application is further made on the grounds that Wells Fargo has absolute legal and equitable rights to take possession of the 14 Acre portion of the property and collect rents thereof by virtue of written agreements with Plaintiff/Cross-Defendant Norman W. Allen ("Allen"), and that Wells Fargo is entitled to ex parte appointment of a receiver as a provisional remedy to enforce the terms and provisions of the Note and Deed of Trust executed by Allen....(2CT 551). [T]he Court must therefore appoint a receiver over the 40 Acres to

46

manage and control that portion of the property pending
disposition of the property, and appoint a receiver over the 14.03
Acres to collect the rents therefrom."  (2CT 555).

Wells Fargo's Appointing Order:

**B)**  3. Said Receiver be and the same hereby is immediately
empowered and directed to take possession and control over the
real property which is the subject of this action, which property
bears the Assessor's Parcel Numbers 099-260-69 (the "40
Acres") and 099-260-70 (the "14.03 Acres") (collectively, the
"Subject Property") and legally described as set forth in Exhibits
1 and 2, respectively, attached to this order and incorporated by
this reference;  (3CT 687).

**4.** Said Receiver is authorized and directed:

**(a)** To take immediate possession and control of the Subject
Property and to demand, receive and check all rents, issues,
profits and income therefrom, and all other monies arising from
the Subject Property, to collect debts and compromise same, and
to perform all acts respecting the Subject Property which the
court may authorize;

**(c)** To apply and disburse rents, issues, profits and income and all
other monies arising from the Subject Property:   (3CT 688).

**(i)** To pay all expenses and charges of the Receiver in the
conduct of her office;

**(ii)** To pay expenses reasonably necessary or incidental to the
continued operation, care, preservation and maintenance of
the Subject Property to insure that the tenants thereof shall be
supplied with uninterrupted service;

**(iii)** To pay all expenses incurred for repairs, alterations and
improvements of the Subject Property reasonably necessary
or incidental to keep the Subject Property in rentable and

usable condition;

**(iv)** To pay all general and special property taxes and assessments upon the Subject Property now due or to become due;  (3CT 688).

i) Having decided that (Vicki) [i]s a rents, issues and profits receiver, we next approach the issue of the extent of property which the trial court can empower a rents and profits receiver to take into (her) [p]ossession by the force of the order appointing (her) [a]s receiver or by reason of subsequent orders of the court. (*Turner v. Superior Court* (*Cooke*) (1977) 72 Cal.App.3d 813 [140 Cal.Rptr. 475].)

Here cross-complainant/respondent banks conferred jurisdiction for an unconfirmed ex parte rents and profits receiver, purportedly authorized on the adjoining 'subject property'. The unconfirmed ex parte receiver void *ab initio*, was acquired by presenting fabricated allegations to incite the court to reform the Allen Deed of Trust to encumber appellant's entire 40 acre parcel, in place of the 'constructive trust' referred to in *Urez,* quoting *Burger,*

iii "'to create a right substantially similar to an ex parte prejudgment attachment of the defendant's assets, <u>a remedy disfavored in California and severely limited because of its due process problems</u>.' [citations]." (Ibid.  (Emphasis added).

**IV.** Respondent banks' unverified cross-action sought an 'equitable mortgage' over improvements on appellant's land. Banks' *unsigned* motion sought and received an 'equitable mortgage' over the entirety of appellant's property without terms or conditions.

48

**i** "[5a] Having concluded that the parties intended a secured transaction and that an equitable mortgage was created, it follows that respondent must follow the procedure specified in Code of Civil Procedure section 726; that is, foreclose on that security. This section provides that "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter. ..." (See Real Property and Real Property Security: The Well-Being of the Law by John R. Hetland, 53 Cal.L.Rev., p. 151.)". (*Kaiser Industries Corp. v. Taylor* (1971) 17 Cal.App.3d 346 [94 Cal.Rptr. 773]).

Respondents did not foreclose on the Allen Deed of Trust but, rescinded the notice of default (after entry of 2012 Judgment). At hearing appellant filed a complaint to quiet title in desperate response to banks' ex parte application for receivership (3CT 697-747).). Banks' misrepresentations in pleadings for summary adjudication *and,* for appointment of the ex parte 'rents and profits receiver' afforded destruction of appellant including ejectment, imprisonment and seizure of his personal property and documents. Nonetheless, a mortgage is a mortgage is a mortgage and entry as judgment now establishes the equitable mortgage, notwithstanding it's undetermined balance and unknown terms.

**ii.** "If there is in fact an equitable mortgage, the choice of which remedy to pursue is not open to the creditor. [I]t is true that the debtor may waive the rule by not affirmatively pleading Code of Civil Procedure section 726 as a bar to an action on the underlying obligation. Then the one action rule will operate to bar the creditor from bringing a second action to foreclose the mortgage (*Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 38 [27 Cal.Rptr. 873, 378 P.2d 97]; *James v. P.C.S. Ginning Co.*, 276 Cal.App.2d 19, 22 [80 Cal.Rptr. 457]), The election, however, is only with the borrower who may raise the defense of section 726 or waive the defense by failing to raise it. (See *Salter v. Ulrich*,

22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344].)" (*Kaiser Industries Corp. v. Taylor,* Ibid).

**iii** "[5c] Code of Civil Procedure section 726 is clear in its requirement that there can be but one form of action on a debt secured by a mortgage. The Legislature has also made it clear that the mortgagor may not avoid the limitation by exacting a waiver by the borrower. (Civ. Code, § 2953.) To allow a creditor to avoid the limitation by a device which gives the creditor the advantage of legal mortgage would seen to be clearly contrary to the legislative intent expressed in the above code sections." (Ibid).

Necessarily this argument turns to the unconfirmed receiver, false arrest and imprisonment for contempt, illegal seizure, malicious  and constitutional considerations.  (Cal. Const. Art. I, §19.).

The unconfirmed ex parte rents and profits receiver seized possession of appellant's real and personal property and his business assets on July 21, 2011, holding him a virtual prisoner. Denied him use of his property including vehicles. The record *now*, indicates the required bonds were filed July 26, (3CT 760), and receiver's oath filed into the record on July 28, 2011, seven days after seizure. (4CT 872).  The receiver's own submissions, (7CT 2065), indicate the 'oath' was typed by the Ryan Firm; "Tyler emailed oath that I signed and took to the courthouse to file". In other words, no true oath was administered or sworn.

**V.**  Banks claimed the Allen Deed of Trust authorized appointment of a rents, issues and profits receiver to 'take possession and collect rents' on his

vacant land, 'containing only near valueless scrub'.

**A)** Banks then contaminated the facts of record to assert rights to a partnership or equity receiver over appellant's business. In the same unsigned application subsumed from their unverified cross-action, banks conferred jurisdiction on the biased court, to expand the receiver to a post-judgment receivership for foreclosure, a prejudgment receiver to take possession of his land without benefit of attachment procedures and a recovery receiver alleging a fraudulent transfer.

**B)**  Respondent banks recognizing the wrongful and unconstitutional nature of their actions and potential liabilities engaged in fabrication and forging of evidence. So warping and distorting real facts to create an impression in the minds of those who observed them as true and genuine, including unassigned judges who came to believe and act as though the unconfirmed ex parte receiver was a criminal recovery receivership operating under 'police powers'.

> **i** (1a) The requirements of Code of Civil Procedure section 564 are jurisdictional, and without a showing bringing the receiver within one of the subdivisions of that section the court's order appointing a receiver is void. (*Rondos v. Superior Court* (1957) 151 Cal. App.2d 190, 195 [311 P.2d 113].) (*Turner v. Superior Court* (1977), 72 Cal. App. 3d 804 [140 Cal. Rptr. 475] (*Turner).*).

> **ii** (1b) It is settled that "[a] receiver may not be appointed except in the classes of cases expressly set forth in the statutes. (*Miller* v. *Oliver* (1917) 174 C. 407, 410, 163 P. 355; *Takeba* v. *Superior Court* (1919) 43 C.A. 469, 475, 185 P. 406." (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional  Remedies, § 236, p. 1629.)

"[W]here one's entitlement to a receiver is not otherwise
established, a mortgagee or beneficiary of a trust deed may not
by stipulation or consent, however manifested, confer
jurisdiction upon the superior court to appoint such a receiver."
(*Barclays Bank of California* v. *Superior Court, supra,* 69 Cal.
App.3d 593, 600; *Mines* v. *Superior court* (1932) 216 Cal. 776,
778 [16 P.2d 732].)

 **iii** (3) On the other hand, if the rents, issues and profits are not
part of the security for the debt, not having been contractually
assigned for that purpose, the court has no power under section
564 to authorize the receiver to take possession of the rents,
issues and profits and apply them to the debt. (*Locke* v. *Klunker*
(1898) 123 Cal. 231, 235-238 [55 P. 993].) <u>To do so would be to
make a new contract for the parties extending the lien over
property not actually mortgaged.</u> (*Locke* v. *Klunker, supra.*)
Thus, the contractual agreements and the pleadings are factors to
take into evidential consideration in determining the purpose for
which the receiver was appointed and the power of the court to
extend the receiver's grasp to property which may be beyond his
reach. (*Barclays Bank of California* v. *Superior Court, supra,* 69
Cal. App.3d 593, 599-602.) (*Turner v. Superior Court ibid).*
(Emphasis added).

Wells Fargo Bank as trustee, presented an ex parte application that alleged:

"("Wells Fargo"), hereby applies for an order appointing a receiver
and authorizing her to take possession of the property located at
695-725 Highway 36, Susanville, California 96130 (and more fully
described in the accompanying memorandum of points and
authorities), manage the property, preserve it for later disposition,
and <u>collect all rents, including amounts past due and unpaid</u>." (2CT
291) <u>"This application is made on the grounds that the 40 Acre
portion of the property must be preserved and maintained pending
judgment in this action,</u> and pending judgment on Cross-
Complainant's cross-complaint." (Emphasis added).

"Wells Fargo has absolute legal and equitable rights to take possession of the 14 Acre portion of the property and collect rents thereof by virtue of written agreements with Plaintiff/Cross-Defendant Norman W. Allen ("Allen"), and that Wells Fargo is entitled to ex parte appointment of a receiver as a provisional remedy to enforce the terms and provisions of the Note and Deed of Trust executed by Allen."  (2CT 291).

**VI.**    Moving under insufficient declarations misrepresenting 'provisions for a 'Rents and Profits Receiver' are *prima facie* in the Allen Deed of Trust', respondents returned to unfounded character assassination, again alleging fraud, collusion etc., Respondent banks asserted rights to an ex parte receiver over Bennett's land by authority of an "action by a vendor to vacate a fraudulent purchase":

 **A)**   "As described above, and in Wells Fargo's motion for summary adjudication set to be heard concurrently with this application, Wells Fargo is entitled to an equitable lien and an equitable mortgage on the 40 Acres. As a creditor with a claim on the 40 Acres, Wells Fargo is entitled to seek the appointment of a receiver to preserve that portion of the property:"

(b) A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to the creditor's claim, or between partners...or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured. (Code Civ. Proc. § 564.)" (2CT 564).

**B)**  Respondent's claims of fraudulent transfer are unfounded and absurd. Coming from alleged beneficiaries that laid in the weeds, changing colors, for four years and four months subsequent to actual written notice, provided by county officials. Banks alleged:

**C)**  "As described above, and in Wells Fargo's motion for summary adjudication set to be heard concurrently with this application, Wells Fargo is entitled to an equitable lien and an equitable mortgage on the 40 Acres."

> **i** "The substance of (Banks') [a]rgument is that a receiver is a receiver regardless of the purpose for which he is appointed and that pursuant to its inherent equitable powers the court can expand the receivership to include property not originally included therein, particularly where the possession of such property is necessary or convenient to the operation of a business in the hands of a rents and profits receiver; otherwise, no rents and profits could be produced. However, the deed of trust does not guarantee that rents and profits will be generated by the land and improvements thereon. We have been cited to no authority for the proposition that a court has the power to authorize a receiver in the course of the performance of his duties to reach out and latch onto the appropriate property to the use of the receivership which is not properly a part of the receivership estate. On the contrary, what authority there is on the subject points unerringly to a contrary result." (*Turner v. Superior Court,* supra at p. 814). (Emphasis added)

The all powerful multipurpose receiver, has operated at all times under contract with the banking giants and is virtually unparalleled in American jurisprudence.

The resultant events have confused, stymied and effectively neutralized every court in every jurisdiction since. Preventing cessation of wrongs and allowing manifest injustice. It will continue until one Court is willing to look beyond assumptions of 'rigorous safeguards' by the court in

appointing a receiver.

Imposition of a wrongful receivership, operating without supervision of the appointing court or lacking in neutrality is accurately described as 'Draconian'. In this case the banks actually, wrote the receiver's demands without her participation, generated and filed the 'receiver's suits' and refer to her in the pleadings as 'our receiver'.

Banks had no legal right to appellant's real property, personalty or business; the court exceeded it's jurisdiction in appointing the receiver and abused it's discretion in striking the required return hearing on an OSC. Further, abusing it's discretion by trying and imprisoning appellant for indirect contempt, for "failing to surrender possession" of his property to the receiver already wrongly in possession and control.  No signed OSC is in record and was no served on appellant. No signed OSC exists.

Appointment, seizure, trial and imprisonment occurred under authority of failed affidavits. Declarant Fishman alleges in support of the ex parte appointment:

"Wells Fargo has taken steps to declare a default, and is seeking to judicially foreclose on it's security interest in the Subject Property as set forth in its Cross-Complaint herein."  (2CT 621). (Emphasis added).

There was no 'complaint for judicial foreclosure' filed. In effect, the 'emergency' requiring ex parte appointment was, hazard insurance, the receiver finally submitted a "monthly report" on October 31, 2012. (7CT 2048-2068, 8CT 2069-2091).

Hazard insurance was first purchased "9-6-11", 46 days after the seizure of July 21, 2011, hardly an emergency requiring arrest. (7CT 2056).

Receiver Lozano's Declaration in Support of WFB Ex Parte

Application for an order appointing Receiver, states:

> "I am not an employee of, and have no formal relationship with
> Timothy M. Ryan or the Ryan Firm, and if appointed, I promise
> to act independently as a receiver in relation to the subject
> property."   (3CT 614-616).

**VII.**    Lozano's "Final Account and Report; Petition for Settlement" (7CT
2048-2068, 8CT 2069-2090) contains an agreement from March 29, 2011,
with the Ryan Firm for Wells Fargo Bank, discussing $190.00 per hour,
"regarding the potential receivership our clients will seek against the
Whispering Pines Ranch". (ibid).

**i**  California Rules of Court:

Rule 3.1176. Confirmation of ex parte appointment of receiver

(a) Order to show cause

Whenever a receiver is appointed without notice, the matter
must be made returnable upon an order to show cause why the
appointment should not be confirmed. The order to show cause
must be made returnable on the earliest date that the business of
the court will admit, but not later than 15 days or, if good cause
appears to the court, 22 days from the date the order is issued.

*(Subd (a) amended effective January 1, 2002.)*

**ii**  (b) Service of complaint, order to show cause, declarations,
and memorandum

The applicant must serve on each of the adverse parties:

>    (1) A copy of the complaint if not previously served;

>    (2) The order to show cause stating the date, time, and
>    place of the hearing;

>    (3) Any declarations supporting the application; and

>    (4) A memorandum supporting the application.

56

**iii**  Rule 3.1179. The receiver

(a) Agent of the court

The receiver is the agent of the court and not of any party, and as such:

(1) Is neutral;

(2) Acts for the benefit of all who may have an interest in the receivership property; and

(3) Holds assets for the court and not for the plaintiff or the defendant.

(b) Prohibited contracts, agreements, arrangements, and understandings

The party seeking the appointment of the receiver may not, directly or indirectly, require any contract, agreement, arrangement, or understanding with any receiver whom it intends to nominate or recommend to the court, and the receiver may not enter into any such contract, arrangement, agreement, or understanding concerning:

(1) The role of the receiver with respect to the property following a trustee's sale or termination of a receivership, without specific court permission;

(2) How the receiver will administer the receivership or how much the receiver will charge for services

(Emphasis added).

The ex parte application for an order appointing a receiver contained the requisite, Order to Show Cause form. Despite the court's recognition that the application had been filed only 10 minutes before the court closed the previous day, the return hearing on an Order to Cause, constitutionally required was crossed out. A receiver must be appointed after a noticed

hearing, in advance or if application is ex parte on a showing of

extraordinary circumstances after return on OSC. A receiver appointed

without notice and meaningful hearing is void *ab initio.* There are no

exceptions. The receiver was appointed 'Ex Parte' three times, July 21,

November 17, and December 14, none were noticed, no OSC hearing

occurred. (3CT 686). (5CT 1289). (6CT 1487).

Appellant fought back and for that he was promptly arrested and

imprisoned.

No Charging Affidavit is in Record, no signed Application or
OSC is in the record and no service of either is in the record.

a)  Indirect contempt proceedings are initiated by presenting to
the court or judge an affidavit (or declaration) of the facts
constituting contempt,  (CCP section 1211)

b)  The failure to issue a written, signed OSC and affidavit for
contempt will render any contempt order void and subject to a
writ of prohibition. (See *In re Cowan* (1991) 230 CAl. App. 3d
1281.)

c)  This written OSC must be personally served on the
contemner/citee.  Failure to do so will render the citation void.
(see *Cedars-Sinai Imaging Medical Group v. Superior Court*
(2000) 83 Cal. App. 4th 1281.)

There is no signed or served OSC Re: contempt in this record, the register

of actions and no mention is made of a "Trial for Contempt" scheduled for

August 19, 2011, the clerks minutes of July 21, 2011 set a hearing for

equitable determinations pursuant to the partial settlement agreement on

8/19/2011 at 10:00 am.

On August 19, 2011, Bennett was ordered to the court by sheriffs. No attorney was allowed, Bennett was ordered to take the stand and be sworn in or be jailed right then.

> **COURT: Was an OSC ever issued? That's what I am looking for. Or is it just the ..**

> **RYAN: He issued it orally at the hearing. We were not able to get a signed minute order or a signed order of any type out of that hearing, your Honor.**

> **COURT: OK. OK. He did sign an order on the 29th, it's in the courts files. (**Writ Pet. TT 8_19)

**VI.** Bennett was arrested and jailed for refusing to surrender his real property and Business Documents, to the receiver appointed under an unsigned summary adjudication "order" based on an unsigned motion also, so that Bank's could dispose of Bennett's horses while he was incarcerated. (Writ Pet. TT 8_19).

> **A)** The law is well settled to the effect that refusal to obey a void order of court is not a contempt and cannot be punished as such. (*Kreling v. Superior Court*, 18 Cal.2d 884, 885 [118 P.2d 470]; *Ex parte Brown*, 97 Cal. 83, 85 [31 P. 840]; *Ex parte Clarke*, 126 Cal. 235, 240 [58 P. 546, 77 Am.St.Rep. 176, 46 L.R.A. 835].) (*Oskner v. Superior Court* (1964) 229 Cal.App.2d 683).

> B)To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein." But this power does not extend to application of the property of a third person to the debt of another without previously affording a full hearing to said third person. [3b] Due process forbids and it protects the claims of a pledgee as well as any other adverse claimant (Farmers & Merchants Bank v. Bank of Italy, 216 Cal. 452, 454-458 [14 P.2d

527]). (*Oskner v. Superior Court* (1964) 229 Cal.App.2d 683)."The court acted in excess of its jurisdiction in making the order requiring (Bennett) to deliver possession of the property to plaintiff in said action.

Bennett filed three Requests for preliminary injunctions to stop seizure and deprivation of his property, horses and business, Lassen Nos.: HR54552, HR54553, HR54554 on August 2, 2011, denied by phone without comment.

Appellant's business is destroyed, home gutted, personal property stolen or 'disposed of' and his reputation destroyed.

"Receiver" Lozano has been paid approximately $70,000 to date by Banks. Banks and receiver are currently moving to enforce "orders" acquired after notice of appeal, to "permanently" dispose of Appellant's horses, sell the remainder of his personal property remaining on his land, etc. In other words dispose of all property affected by this appeal, neutralizing this court's jurisdiction and rendering the appeal moot.

Appellant petitioned this court for relief from the same matters that are under appeal here before entry of Judgment, (Bennett v. Superior Ct. (Jan.30, 2012) C0070237) Petition for Peremptory Writ of Mandate, Immediate Stay Requested.

## CONCLUSION

For the reasons set forth above, Appellant, respectfully requests
that this court,

**1.** Find the Judgment for Summary Adjudication of July 19, 2012: void.

That the order, encumbering appellant's separate real property, business and

personal property by summary action, is a nullity and was in excess of the

superior court's jurisdiction. Further, finding that all orders conferring

possession, seizure or ejection thereunder, are void *ab initio,* without force

or effect.

**2.**  Find that appointment of the paid receiver Vicki Lozano, failed,

unnoticed and without confirmation hearing: is a nullity, void *ab initio,* and

all actions taken by the receiver or under the 'receivership appointing order'

are equally void without lawful force, effect or authority.

**3.** Further, to find that Wells Fargo and Bank of America, acting in concert,

elected their remedy under Code of Civil Procedures § 726, the "one action

rule", by moving against appellant, seizing, selling or disposing of the

entirety of Bennett's estate, business and, third party property in his care,

provably of actual worth; precedent and current, lost income and future

earnings foreclosed; greater than is the debt under the Allen Note and DOT,

done without turning first to the security. Respondents having elected their

remedy, then proceeding by unconstitutional claim and delivery, without due process or attachment procedures; respondents should be estopped by equity from turning to foreclose on the security.

**4.**  Find that Wells Fargo Bank and Bank of America, holding out equitable remedies, then moved in stealth with malicious intent in inequitable and unconstitutional acts to destroy appellant and thereby, destroyed their rights to equitable remedies by their own unclean hands. Bennett respectfully requests that this Court assert equitable estoppel as against respondent banks', dismissing him from their suits, with prejudice.

**5.**  For a finding and order removing any right to possession and control or authority over appellant's real property and estate from Vicki Lozano as "receiver", Respondent Banks and or their agents and returning possession and control to Appellant.

**6.**  To annul the conviction for contempt of court August 19, 2011, for other relief at this Court's discretion and to remand this matter back to the Trial Court for an order consistent with this Court's Opinion.


Dated: June 19, 2013                                Respectfully Submitted,


_____
       Dwight A. Bennett
       Appellant In propria persona

62

# CERTIFICATE OF WORD COUNT

I certify that the forgoing brief complies with C.R.C. Rule 8.204(c) and contains 13,988 words, including footnotes, in 13 pt fonts of Century Schoolbook L and Times New Roman, according to the word count feature of OpenOffice.org Writer 3.2, the computer program used to prepare this brief.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Susanville CA on June 19, 2013.


_____
   Dwight A. Bennett
Appellant In propria persona.

## II. DECLARATION OF SERVICE

I, the undersigned, declare: I am over the age of eighteen years and not a party to the cause of action.  I am a resident of Susanville, California, where the mailing address occurs.  My business address is 765 Cameron Way.  I caused to be served **APPELLANT'S OPENING BRIEF** by placing copies thereof in a separate envelope addressed to each addressee as follows:

| | |
|---|---|
| Bryan Cave LLP, Atty's for Wells Fargo Bank, N. A. and Bank of America, N. A. 560 Mission St., #2500 San Francisco, CA 94111 | 1 Copy |
| Norman Allen, in Pro Per PO Box 70 Janesville, CA 96114 | 1 Copy |
| Lassen County Superior Court 2610 Riverside Dr. Susanville, CA 96130 | 1 Copy |
| Supreme Court of California 350 McAllister Street San Francisco, CA 94102-4797 | 4 Copies |

I declare under penalty of perjury under the laws of the state of California that the forgoing is true and correct.

Dated: June 20, 2013 at Susanville, CA.

_____

Teryn  Cottrell

65