# EXHIBIT B

Timothy M. Ryan, Bar No. 178050
Austin T. Beardsley, Bar No. 270046
THE RYAN FIRM
A Professional Corporation
1100 N. Tustin Avenue, Suite 200
Anaheim, California 92807
Telephone (714) 666-1362; Fax (714) 666-1443

Attorneys for Defendant/Cross-Complainant WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE1, and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, successor by merger to Wilshire Credit Corporation, erroneously sued as BAC Home Loan Servicing, LLP

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LASSEN

| | |
|---|---|
| NORMAN W. ALLEN, | LEAD CASE NO.: 48679 |
| Plaintiff, | (Consolidated with Case No. 50324) |
| | Unlimited Jurisdiction |
| | Date Action Filed:  Unknown. |
| vs. | |
| | Assigned for All Purposes to |
| SUMMIT FINANCIAL GROUP; DANA CAPITAL CORP.; STEVE WIRTH, RED BOSHLYK, DWIGHT A. BENNETT; JUDITH A. ST. JOHN; WILSHIRE CREDIT CORPORATION, EVANS APPRAISAL SERVICES, INC., and DOES 1-10, | Hon. Raymond J. Giordano, Judge |
| | Dept. 6 |
| | **DEFENDANT/CROSS-COMPLAINANT WELLS FARGO BANK, N.A.'S EX PARTE APPLICATION FOR AN ORDER APPOINTING RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendants. | |
| | Date:       July 21, 2011 |
| NORMAN W. ALLEN, | Time:       9:30 a.m. |
| Plaintiff, | Dept:       6 |
| vs. | Trial Date:   None set. |
| T.D. SERVICE COMPANY, WELLS FARGO BANK, N.A., as Trustee for the MLMI Trust Series 2005-HE5, and DOES 1-10, | |
| Defendants. | |
| WELLS FARGO BANK, N.A., as | |

1

Application for Order Under Appointing Receiver

Trustee for MLMI Trust Series 2005-
HE3; and BAC HOME LOANS
SERVICING, L.P, a Texas limited
partnership, successor by merger to
Wilshire Credit Corporation,
erroneously sued as BAC Home Loan
Servicing, LLP,

    Cross-Com        plainants,

vs.

NORMAN W. ALLEN; DWIGHT A.
BENNETT; JUDITH A. ST. JOHN;
EVANS APPRAISAL SERVICES,
INC.; and ROES 1-10,

    Cross-Defenda       nts.

AND ALL OTHER CROSS-
ACTIONS

TO THE COURT AND TO ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that Defendant/Cross-Complainant Wells Fargo Bank,
N.A., as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo"), hereby applies for
an order appointing a receiver and authorizing her to take possession of the property
located at 695-725 Highway 36, Susanville, California 96130 (and more fully described
in the accompanying memorandum of points and authorities), manage the property,
preserve it for later disposition, and collect all rents, including amounts past due and
unpaid.  This application is made on the grounds that the 40-Acre portion of the property
must be preserved and maintained pending judgment in this action, and pending
judgment on Cross-Complainant's cross-complaint.  This application is further made on
the grounds that Wells Fargo has absolute legal and equitable rights to take possession of
the 14-Acre portion of the property and collect rents thereof by virtue of written
agreements with Plaintiff/Cross-Defendant Norman W. Allen ("Allen"), and that Wells
Fargo is entitled to ex parte appointment of a receiver as a provisional remedy to enforce
the terms and provisions of the Note and Deed of Trust executed by Allen.  Ex parte

1  relief is needed because Defendant/Cross-Defendant Dwight A. Bennett ("Bennett"), who
2  currently has possession of and controls the 40 Acre portion of the property, failed and
3  continues to fail to insure the property, and there is a substantial risk that the property
4  will be irreparably harmed, destroyed, devalued, or otherwise rendered worthless. Ex
5  parte relief is further warranted as Allen has failed to service the indebtedness under the
6  Note and Deed of Trust and Allen continues to collect rents from the 14 Acre portion of
7  the property, to which Wells Fargo is entitled as additional security, and that security will
8  otherwise be irreparably lost.

9         This application is based on the operative Complaint and Cross-Complaint filed in
10 this action, the attached memorandum of points and authorities, the request for judicial
11 notice, and the declarations of Vicki Lozano, of Timothy M. Ryan, of Jennifer Fishman,
12 and of Tyler J. Kemp, filed concurrently herewith.

13 DATED: July 20, 2011                    THE RYAN FIRM
14                                         A Professional Corporation
15
16
17 By: _____
18         TIMOTHY M. RYAN
           AUSTIN T. BEARDSLEY
19 Attorneys      for Defendants/Cross-
           Complainants WELLS FARGO
20 BANK, N.A., as Trustee for MLMI
   Trust    Series 2005-HE3; and BAC
21 HOME LOANS SERVICING, LP, a
           Texas limited partnership, successor by
22         merger to Wilshire Credit Corporation,
           erroneously sued as BAC Home Loan
23 Servicing,     LLP
24
25
26
27
28

3

THE RYAN FIRM
A Professional Corporation

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................... I

TABLE OF AUTHORITIES .............................................................. II

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

1. INTRODUCTION ................................................................. 1

2. RELEVANT FACTUAL HISTORY ........................................ 2

3. AS A CREDITOR, WELLS FARGO IS ENTITLED TO APPOINTMENT OF A RECEIVER UNDER CODE OF CIVIL PROCEDURE SECTION 564 IN ORDER TO PRESERVE THE 40 ACRE PORTION OF THE PROPERTY .......................... 9

4. WELLS FARGO'S DEED OF TRUST CONTAINS PROVISIONS AUTHORIZING IT TO TAKE POSSESSION OF THE 14.03 ACRE PORTION OF THE PROPERTY AND TO COLLECT ITS RENTS UPON ALLEN'S DEFAULT .............. 11

    A. A Recital Contained in a Deed of Trust Authorizing the Appointment of a Receiver is a Prima Facie Showing of the Beneficiary's Entitlement to the Appointment of a Receiver ................................................................ 13

    B. Attorneys' Fees and Costs Incurred in Seeking Appointment of the Receiver are Provided for by the Terms of the Note and Deed of Trust and are a Proper Element of Costs and Expenses ...................................... 14

5. CONCLUSION .................................................................... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The properties that are the subject of this action (described below) have thus far enjoyed a colorful history.  Defendants/Cross-Defendants Judith A. St. John ("St. John") and Dwight A. Bennett ("Bennett"), who at one point were romantically involved and lived together, devised a complicated, and ultimately ill-advised, foreclosure avoidance scheme:  the partition of their property into two parcels (performed without the benefit of any relevant expertise), and a collusive (and ultimately misrepresented) sale of one of the parcels to a straw buyer, Bennett's friend, Plaintiff/Cross-Defendant Norman W. Allen ("Allen"), who would take out a loan to purchase the parcel (which Bennett and St. John would use to pay off the prior encumbrance), and sell or rent back the parcel to St. John and Bennett.  Unfortunately, this scheme included several examples of mortgage fraud by Bennett and Allen, including the utter fabrication of the required down payment.

Unsurprisingly, St. John and Bennett's foreclosure avoidance subterfuge (in which Allen was a fully cognizant and willing participant) did not go as planned—the improvements (described below) were not included in the sham sale, and discord quickly festered amongst the co-conspirators.  Allen initiated the instant action against his former friends, and St. John and Bennett embarked on a bitter legal campaign involving alleged domestic violence, much of which unfortunately spilled over into discovery proceedings in this action.

Amongst the noise resulting from St. John, Bennett and Allen's willingness to degrade the discovery process, a critical consideration lurks:  the loan Allen obtained to purchase the multiused parcel is now obscenely under-secured, and Allen chose to abdicate his responsibility to make payments under that loan despite collecting rental income from the parcel.  Thus, faced with the prospect of foreclosing on property that is worth less than one-fourth of the loan balance, Defendant/Cross-Complainant Wells Fargo Bank, as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo"), filed its cross-complaint seeking an equitable lien and an equitable mortgage against the

1

1  improvements that St. John and Bennett intended to convey to Allen. Wells Fargo also
2  filed a motion for summary adjudication on its claims for equitable mortgage and
3  equitable lien, which is set to be heard concurrently with this application.

4        Unfortunately, the efforts Bennett, St. John and Allen expended in furtherance of
5  their real estate escapades apparently left little energy or attention for actually
6  maintaining or protecting the 40 Acres with insurance coverage. The 40 Acres now stand
7  uninsured despite the fact that we are in the midst of fire season and despite a crime spree
8  described by Bennett as specifically targeting the 40 Acres. Should the 40 Acres (and the
9  improvements thereon) be damaged in the absence of insurance coverage, the 40 Acres
10 are likely to be and remain significantly devalued. In addition, Allen has failed to make a
11 loan payment in over two years, despite collecting rents from the 14.03 Acres during that
12 period. The Court must therefore appoint a receiver over the 40 Acres to manage and
13 control that portion of the property pending disposition of the property, and appoint a
14 receiver over the 14.03 Acres to collect the rents therefrom.

15 2.    RELEVANT FACTUAL HISTORY

16       In 2002, Bennett, St. John, and Gema Kretler ("Kretler") obtained title to the
17 real property located at 695-728 Highway 36, Susanville, California 96130 (the "Subject
18 Property"). (Request for Judicial Notice ("RJN"), Ex. 1 [Request for Judicial Notice in
19 Support of Motion for Summary Adjudication, Ex. 1 at pp. 5-6]; RJN, Ex. 2
20 [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication, pp.
21 7:24 to 3:2, 3:19-28, Ex. 5 at pp. 101:22 to 102:19, Ex. 7 at p. 106:15-18.]) At that time,
22 the Subject Property was comprised of 54.03 acres of land, with improvements, including
23 a residence, barn and outbuildings (hereafter the "Improvements"), encompassing
24 Assessor's Parcel Numbers 099-360-70 and 099-360-69 (hereafter referred to as the
25 "54.03 Acres"), and legally described as:

26       PARCEL NO. 1:

27       BEGINNING AT THE NORTHEAST CORNER OF THE NORTHEAST

28       1/4 OF THE NORTHWEST 1/4 OF SECTION 36, IN TOWNSHIP 30

                                        7

1  NORTH, RANGE 11 EAST, MOUNT DIABLO MERIDIAN; THENCE

2  DUE WEST 1325 FEET TO THE WEST LINE OF SAID NORTHEAST

3  1/4 OF THE NORTHWEST 1/4 OF SAID SECTION; THENCE DUE

4  SOUTH 650.50 FEET TO THE INTERSECTION THEREOF WITH THE

5  NORTHERN LINE OF CALIFORNIA STATE HIGHWAY; THENCE

6  NORTH 77 DEGREES 53'; EAST ALONG SAID LINE OF SAID

7  HIGHWAY 18.90 FEET; THENCE ALONG A CURVE TO THE RIGHT

8  WITH A RADIUS OF 4850 FEET, PARALLEL AND DISTANT

9  NORTHERLY 30 FEET FROM THE CENTER LINE OF SAID

10  HIGHWAY, 1285.78 FEET TO A POINT ON THE NORTHERLY LINE

11  OF SAID HIGHWAY; AND THENCE NORTH 434 FEET TO THE

12  POINT OF BEGINNING.

13  PARCEL NO. 2

14  IN TOWNSHIP 10 NORTH, RANGE 11 EAST, MOUNT DIABLO

15  MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

16  SECTION 25: THE SE 1/4 OF THE SW 1/4.

17  (RFJN, Ex. 1 [Request for Judicial Notice in Support of Motion for Summary

18  Adjudication, Ex. 1 at pp. 5–6], RFJN, Ex. 2 [Declaration of Timothy M. Ryan in

19  Support of Motion for Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at p.

20  104:16–30 ])

21      At the time Bennett, St. John and Kriesler obtained title to the 84.03 Acres, the

22  property was encumbered by a security interest for a loan in favor of Ocwen, which was

23  then in arrears.  (RFJN, Ex. 2 [Declaration of Timothy M. Ryan in Support of Motion for

24  Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at pp. 102:20 to 103:23], Ex. 7 at

25  pp. 167:16 to 169:24, 170:7–9 ])  As part of their investment plan, Bennett, St. John and

26  Kriesler agreed to eliminate the arrears on the Ocwen loan, and assume the monthly

27  payments thereafter in exchange for title to the property.  (RFJN, Ex. 2 [Declaration of

28  Timothy M. Ryan in Support of Motion for Summary Adjudication, pp. 2:14 to 3:2,

THE RYAN FIRM
A Professional Corporation

1   3:19–28, Ex. 7 at pp. 167:16 to 169:24.]) Bennett, St. John and Kistler obtained title to

2   the 54.03 Acres by virtue of a Grant Deed from Douglas L. Bowman and Jeannie S.

3   Bowman to Bennett, St. John, and Kristler. (RFJN, Ex. 1 [Request for Judicial Notice in

4   Support of Motion for Summary Adjudication, Ex. 1 at pp.3–6]; RFJN, Ex. 2

5   [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication, pp.

6   2:14 to 3:2, 3:19–28, Ex. 7 at pp. 171:21 to 172:5.]) Thereafter, Kristler failed to

7   participate in the investment plan to Bennett and St. John's satisfaction, and she therefore

8   quitclaimed her interest in the 54.03 Acres to Bennett and St. John, as joint tenants.

9   (RFJN, Ex. 1 [Request for Judicial Notice in Support of Motion for Summary

10   Adjudication, Ex. 2 at pp. 8, 9], RFJN, Ex. 2 [Declaration of Timothy M. Ryan in

11   Support of Motion for Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at pp.

12   131:7 to 132:2, 145–146, Ex. 7 at pp. 173:23 to 175:23, 176:18–24, 196–197.])

13       Bennett and St. John continued to make payments on the Bowman/Dewen loan for

14   a period of time subsequent to their acquisition of title to the 54.03 Acres. (RFJN, Ex. 2

15   [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication, pp.

16   2:14 to 3:2, 3:19–28, Ex. 7 at p. 178:9–18.]) However, Bennett and St. John began

17   experiencing difficulty with these payments and began exploring alternatives, including

18   obtaining refinancing of the Bowman/Dewen loan. (RFJN, Ex. 2 [Declaration of

19   Timothy M. Ryan in Support of Motion for Summary Adjudication, pp. 2:14 to 3:2,

20   3:19–28, Ex. 5 at pp. 105:24 to 106:5, Ex. 7 at pp. 177:2–25, 178:9–18, 182:16–27.])

21   Ultimately, Bennett, his friend, Norman W. Allen ("Allen"), and St. John agreed on a

22   scheme whereby Bennett and St. John would split the 54.03 Acres into two parcels of

23   land. The first parcel was to comprise 14.03 acres of the original 54.03, bear the

24   Assessor's Parcel Number of 009-260-70 (hereafter the "14.03 Acres"), and be legally

25   described as

26   ///

27   ///

28   ///

THE EOLAS FIRM
A Professional Corporation

1      BEGINNING AT THE NORTHEAST CORNER OF THE NORTHEAST

2      1/4 OF THE NORTHWEST 1/4 OF SECTION 36, IN TOWNSHIP 30

3      NORTH, RANGE 11 EAST, MOUNT DIABLO MERIDIAN, THENCE

4      DUE WEST 1325 FEET TO THE WEST LINE OF SAID NORTHEAST

5      1/4 OF THE NORTHWEST 1/4 OF SAID SECTION; THENCE DUE

6      SOUTH 580.80 FEET TO THE INTERSECTION THEREOF WITH THE

7      NORTHERN LINE OF CALIFORNIA STATE HIGHWAY; THENCE

8      NORTH 77° 57' EAST ALONG SAID LINE OF SAID HIGHWAY 38.90

9      FEET, THENCE ALONG A CURVE TO THE RIGHT WITH A RADIUS

10     OF 4850 FEET, PARALLEL AND DISTANT NORTHERLY 50 FEET

11     FROM THE CENTER LINE OF SAID HIGHWAY, 1285.78 FEET TO A

12     POINT ON THE NORTHERLY LINE OF SAID HIGHWAY, AND

13     THENCE NORTH 434 FEET TO THE POINT OF BEGINNING

14     RESERVING THEREFROM A NON-EXCLUSIVE EASEMENT FOR

15     ACCESS AND PUBLIC UTILITY PURPOSES OVER, UNDER AND

16     ACROSS THE EASTERLY 60 FEET OF THE HEREINABOVE

17     DESCRIBED PROPERTY.

18     Bennett and St. John planned and intended for the 14.03 Acres to include the

19 Improvements in order to improve its value. [REJN, Ex. 2 ]Declaration of Timothy M.

20 Ryan in Support of Motion for Summary Adjudication, pp. 2:14 to 3:2, 3:19- 28, Ex. 5 at

21 pp. 105:7 to 108:17, 109:12 to 110:17, 111:8 to 113:19, 114:17 to 116:19, Ex. 6 at pp.

22 157:21 to 168:23, Ex. 7 at pp. 179:7 to 180:19, 180:26 to 181:13, 185:9 to 185:13, 188:16

23 to 194:21, 198- 204, Ex. 8 at pp. 215:11 to 218:18, 219:3 to 220:25, 221:2-13, 222:22 to

24 226:22 ] The remainder of the original 54.03 Acres would bear Assessor's Parcel

25 Number APN 099-280-69 (hereafter the "40 Acres") . Hereafter, Bennett would sell the

26 14.03 Acres back to St. John and a co-buyer, Allen, at a price sufficient to satisfy the

27

28

5

1 Bowman/Ocwen loan that encumbered the original 54.03 Acres.[1] (RFJN, Ex. 2

2 [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication, pp.

3 2:14 to 3:2, 3:19–28, Ex. 5 at pp. 105:3 to 108:17, 109:12 to 110:17, 111:8 to 113:19,

4 114:17 to 116:19, Ex. 6 at pp. 137:21 to 138:23, Ex. 7 at pp. 179:7 to 180:19, 180:26 to

5 181:25, 183:9 to 185:12, 188:16 to 194:21, 598–204, Ex. 8 at pp. 215:11 to 218:18,

6 219:3 to 220:23, 221:2–13, 222:22 to 226:22.])

7     Bennett and St. John partitioned the 54.03 Acres as described, with one critical

8 error—the Improvements remained on the 40 Acres, instead of the 14.03 Acres. (RFJN,

9 Ex. 2 [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication,

10 pp. 2:14 to 3:2, 3:19–28, Ex. 5 at p. 106:15–19], Ex. 7 at p. 185:16–25.]) However,

11 under the professed belief that the 14.03 Acres included the improvements, Bennett, St.

12 John, and Allen executed substantial portions of their plan—St. John quitclaimed the

13 14.03 Acres to Bennett, and Allen purchased the 14.03 Acres with a loan obtained from

14 Option One Mortgage Corporation ("Option One"). (RFJN, Ex. 1 [Request for Judicial

15 Notice in Support of Motion for Summary Adjudication, Exs. 3–5 at pp. 11–13, 14–15,

16 17–28; RFJN, Ex. 2 [Declaration of Timothy M. Ryan in Support of Motion for

17 Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at pp. 116:15–19, 117:9–24,

18 155:26 to 156:4, 137–144, Ex. 7 at pp. 181:28 to 182:1, 187:2–8, 298:8–11, 308–306.])

19 Option One funded the loan in the amount of $436,500.00, based in part on the purported

20 value of the 14 Acres with the Improvements. (RFJN, Ex. 3 [Declaration of Haitsma

21 Smith in Support of Motion for Summary Adjudication, pp. 2:14 to 4:2, Ex. 3 at pp. 13–

22 14.]) The proceeds from the Option One loan and sale of the 14.03 Acres to Allen were

23 used to satisfy the Ocwen loan that encumbered both parcels, and St. John and Bennett

---

[1] St. John, Bennett and Allen all disagree on who "messed up" this fraudulent scheme, and they all stridently proclaim that their participation therein was reluctant. However, it is undisputed that they did in fact participate and their actions are the sole cause of the fiasco now before the Court.

11

1    now hold title to the 40 Acres free and clear of the Ocwen loan.[2]  [RFJN, Ex. 2

2    [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication, pp.

3    2:14 to 3:2, 3:19–28, Ex. 5 at pp. 115:10–13, 118:18–20, 133:20 to 134:5, 147–148, Ex. 7

4    at p. 186:16–25.])

5          Unfortunately, the parcel split scheme was not the only example of St. John,

6    Bennett, and Allen's guile in obtaining the Option One loan.  Astonishingly, Bennett and

7    Allen willingly participated in mortgage fraud by completely fabricating the down

8    payment required in order to qualify for the Option One loan.  Initially, Allen deposited a

9    nominal sum into escrow towards the required down payment of $48,580.00.  Allen then

10    signed a release allowing Bennett to withdraw those funds while crediting the amount

11    towards the down payments, and Bennett handed the funds over to Allen.  Allen then re-

12    deposited the money, and repeated the withdrawal/deposit cycle until the down payment

13    amount was met.[3]  [RFJN, Ex. 2 [Declaration of Timothy M. Ryan in Support of Motion

14    for Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at pp. 118:00 to 121:2, 123:13

15    to 126:9, Ex. 8 at pp. 227:16 to 228:15, 233:21 to 237 8.]]  Subsequent to the transaction

16    being consummated, Bennett began paying portions of the sale proceeds to Allen.

17    [RFJN, Ex. 2 [Declaration of Timothy M. Ryan in Support of Motion for Summary

18    Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at pp. 127:19 to 130:3.]]

19          The amount of the Option One loan, and the decision to even fund the loan, was

20    based on the belief and an erroneous appraisal report that the 14.03 Acres included the

21    aforementioned improvements, in addition to Allen's representation (made under penalty

22    of perjury) that he intended to occupy the 14.03 Acres as his primary residence, and the

23    presence of an actual down payment.

24

25    [2]  The proceeds were also used to eliminate a small second priority security interest on
      the Subject Property held by Plumas Bank.  [RFJN, Ex. 2 [Declaration of Timothy M.
26    Ryan in Support of Motion for Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 5 at
      p. 122:2–8.]]
27    [3]  Even more astonishingly, the initial down payment specified by the purchaser
      agreement was entirely fictional.  [RFJN, Ex. 2 [Declaration of Timothy M. Ryan in
28    Support of Motion for Summary Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 8 at pp.
      229:1 to 232:25.]]

1        However, Allen later "discovered" that the 14.03 Acres did not include the

2  Improvements and initiated this action seeking reformation of the purchase contract and

3  of the Deed of Trust that secures the Option One loan. (RFJN, Ex. 2 [Declaration of

4  Timothy M. Ryan in Support of Motion for Summary Adjudication, pp. 2:14 to 3:2, 3:8–

5  10, Ex. 2 at p. 36:13–18.]) Shortly thereafter, Allen stopped making payments on the

6  loan, despite collecting rental income from a cell tower lease on the 14 Acres. (RFJN,

7  Ex. 3 [Declaration of Barbara Smith in Support of Motion for Summary Adjudication, pp.

8  2:14 to 3:25, Ex. 2 at pp. 8–11], RFJN, Ex. 4, [Declaration of a Custodian of Records for

9  BAC Home Loans Servicing, LP in Support of Motion for Summary Adjudication, pp.

10  2:14 to 3:20, pp. 3:26 to 4:7, Ex. 2 at pp. 8–11, Ex. 3 at pp. 13–19], RFJN, Ex. 2

11  [Declaration of Timothy M. Ryan in Support of Motion for Summary Adjudication, pp.

12  2:14 to 2:7, Ex. 1 at p. 9.]) Remarkably, the parties all agree that the Improvements were

13  meant to be conveyed to Allen as part of the transaction at issue. (RFJN, Ex. 1 [Request

14  for Judicial Notice in Support of Motion for Summary Adjudication, Ex. 8 at pp. 230:24–

15  26], RFJN, Ex. 2 [Declaration of Timothy M. Ryan in Support of Motion for Summary

16  Adjudication, pp. 2:14 to 3:2, 3:19–28, Ex. 2 at p. 59:10–18, Ex. 3 at p. 69:13–28, Ex. 4

17  at p. 77:17–27], Ex. 7 at p. 193:5–11], Ex. 9 at pp. 246:4–9, 246:13–20.]) Wells Fargo,

18  as the currently assigned beneficiary of the Option One loan, filed a cross-complaint in

19  this case also seeking, in part, an equitable lien and an equitable mortgage on the

20  Improvements in order to comport with the parties' intent. (RFJN, Ex. 1 [Request for

21  Judicial Notice in Support of Motion for Summary Adjudication, Ex. 8 at pp. 228:19–22,

22  230:16–17, 233:20 to 235:14, 237:21–24], RFJN, Ex. 1 [Request for Judicial Notice in

23  Support of Motion for Summary Adjudication, Ex. 8 at p. 30]; RFJN, Ex. 3 [Declaration

24  of Barbara Smith in Support of Motion for Summary Adjudication, pp. 2:14 to 3:19, Ex.

25  1 at p. 6], RFJN, Ex. 4, [Declaration of a Custodian of Records for BAC Home Loans

26  Servicing, LP in Support of Motion for Summary Adjudication, pp. 2:14 to 3:25, Ex. 1 at

27  p. 6.]) Wells Fargo also filed a motion for summary adjudication of these issues, which

28  is set to be heard concurrently with this ex parte application.

3.    **AS A CREDITOR, WELLS FARGO IS ENTITLED TO APPOINTMENT OF A RECEIVER UNDER CODE OF CIVIL PROCEDURE SECTION 564 IN ORDER TO PRESERVE THE 40 ACRE PORTION OF THE PROPERTY**

As described above, and in Wells Fargo's motion for summary adjudication set to be heard concurrently with this application, Wells Fargo is entitled to an equitable lien and an equitable mortgage on the 40 Acres. As a creditor with a claim on the 40 Acres, Wells Fargo is entitled to seek the appointment of a receiver to preserve that portion of the property:

> (a)  A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases:
>
> (1)  In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to the creditor's claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured;

(Code Civ. Proc. § 564.)

Thus, Wells Fargo has standing to apply for appointment of a receiver under *Code of Civil Procedure* section 564. Further, a receiver is necessary in order to prevent the 40 Acres from being lost or materially injured. Specifically, Bennett (the individual residing at and in control of the 40 Acres) plainly admits that he failed to keep the 40 Acres insured *for nearly four years:*

> Q.  Understood.
>
>      Do you have any insurance for any of the subject property?
>
> A:   No, I do not.
>
> Q:   Have you ever had any insurance for any of the subject property?

1    A: Yes.

2    Q:    Do you recall when it lapsed?

3    A:    Yes, I believe – This will be an estimate, but I believe it lapsed in

4    2007, perhaps midyear.

5    (Declaration of Timothy M. Ryan in Support of Ex Parte Application, Ex. 1 [pp. 17:23 to

6    18:7.])

7        Bennett's failure to maintain insurance for any portion of the 40 Acres places the

8    property at risk from irreparable damage, particularly during fire season.  This danger is

9    aptly illustrated by Bennett's own testimony at his deposition, where he described several

10   attempts by others to damage the property and kill the livestock thereon:

11        Q    I would imagine that these Mustangs have branding; is that correct?

12        A: Yes.

13            You know, I'm going to step in here.  I don't know how familiar you

14    are with this other case, but I have lost -- There are twenty-four horses that

15    have died in the last year.

16    Q Ok    ay

17        A    By human beings, poison and violent acts.  Now you're asking me to

18    break each horse down, who owns it, what its description is.

19    Q Yes.

20        A    According to the domestic violence restraining order that was sought,

21    at least one of the perpetrators of that is in this room.

22   (Declaration of Timothy M. Ryan in Support of Ex Parte Application, Ex. 1 [pp. 24:12 to

23    25:1.])

24        According to Bennett, the animals on the 40 Acres are in grave danger:

25        A    I believe, sir, that in asking me for the exacting details of horses that

26    I individually own or that are horses that are boarded at my facility or

27    belong to people that are not present in this room you are putting their lives

28    in grave danger.  I want that on the record.  Grave danger, sir, and there is a

15

1    substantial amount of evidence with the sheriff's department, with animal

2    control, and before the Court indicating that to be true

3        Is that your wish to put these animals in danger?

4    (Declaration of Timothy M. Ryan in Support of Ex Parte Application, Ex. 1 [p. 48:11-

5    24.])

6        Despite such danger, Bennett failed and continued to fail to insure the 40 Acres in

7    any fashion  In the absence of insurance, any damage to the 40 Acres will significantly

8    reduce the value of the property, which will impair the Court's ability to dispose of it at

9    the conclusion of this litigation. For this reason alone, appointment of a receiver to take

10    possession of the 40 Acres and to manage this portion of the property (including placing

11    insurance thereon) is necessary and must be ordered by the Court.

12    4.    **WELLS FARGO'S DEED OF TRUST CONTAINS PROVISIONS**

13        **AUTHORIZING IT TO TAKE POSSESSION OF THE 14.03 ACRE**

14        **PORTION OF THE PROPERTY AND TO COLLECT ITS RENTS UPON**

15        **ALLEN'S DEFAULT**

16        The recorded Deed of Trust executed by Allen expressly grants Wells Fargo, as

17    the loan beneficiary, the right to collect the rents and profits, including amounts past due

18    and unpaid, of the 14.03 Acres.  Paragraph 35 states, in pertinent part:

19        **Assignment of Rents.**  As additional security hereunder, Borrower hereby

20        assigns to Lender the rents of the Property   Borrower shall have the right to

21        collect and retain the rents of the Property as they become due and payable

22        provided Lender has not exercised its rights to require immediate payment

23        in full of the sums secured by this Security Instrument and Borrower has

24        not abandoned the Property;

25    (Declaration of Jennifer Fishman in Support of Ex Parte Application, Ex. 2 [Deed

26    of Trust, ¶ 35.])

27        Furthermore, the Deed of Trust authorizes Wells Fargo to take whatever steps it

28    deems necessary in order to protect its security interest in the 14.03 Acres, including

16

seeking the appointment of a receiver:

> **Protection of Lender's Rights in the Property.** If Borrower fails to
> perform the covenants and agreements contained in this Security
> Instrument, or there is a legal proceeding that may significantly affect
> lender's rights in the Property (such as a proceeding in bankruptcy, probate,
> for condemnation or forfeiture or to enforce laws of regulations), then
> Lender may do and pay for whatever is necessary to protect the value of the
> Property and Lender's rights in the Property. Lender's action may include
> paying any sums secured by a lien which has priority over this Security
> Instrument, appearing in court, paying reasonable attorneys' fees and
> entering on the Property to make repairs. Although Lender may take action
> under this paragraph 7, Lender does not have to do so.

(Declaration of Jennifer Fishman in Support of Ex Parte Application, Ex. 2 [Deed of Trust, ¶ 7.])

It is well settled that a beneficiary or mortgagor is entitled to possession of the encumbered property if the express terms of the mortgage or deed of trust so provide. (Civ. Code § 2927, *Snyder v. Western Loan and Building Company*, (1934) 1 Cal 2d 697.) Here, Allen breached the terms of the Note and Deed of Trust by failing to make payments on the obligation for over two years despite collecting rental income from the 14.03 Acres during that period without servicing the indebtedness. Under the express terms of the Deed of Trust, Wells Fargo is entitled to an order appointing a receiver over the 14.03 Acres.

> A.    **A Recital Contained in a Deed of Trust Authorizing the Appointment
> of a Receiver is a Prima Facie Showing of the Beneficiary's Entitlement to the
> Appointment of a Receiver**

A recital contained in a deed of trust entitling the beneficiary to collection of rents and maintenance of certain property by any legal means, including the appointment of a receiver, presents a prima facie showing of the beneficiary's entitlement to employment

12

1  of a receiver and the burden is on the defendant to rebut that evidentiary presumption.
2  (*Barclays Bank of California v. Superior Court*, (1977) 69 Cal.App.3d 593.)  As
3  demonstrated above, the Deed of Trust before this Court clearly and unambiguously
4  entitles Wells Fargo to collect all the rents of the 14 Acres upon default by Allen.
5  "Neither a trial nor appellate court has the power to rewrite a contract."  (*Moss v. Minor*
6  *Properties Inc.*, (1968) 262 Cal.App.2d 847, 855; *Lowe v. Massachusetts*, (1954) 125
7  Cal.App.2d 243, 251.)  Absent significant reasons to the contrary, or Allen's rebuttal, the
8  express terms of the contract should be enforced.

9        Further, it is important that the Court keep in mind that the assignment of rents is
10 itself a separate and fully enforceable element of additional security for the loan.  *The*
11 *assignment of rents language in the subject deed of trust represents additional security*
12 *for the loan, and the court should not ignore the express language of the contract*
13 *between the parties whereby that additional security was pledged.* (See, 4 Miller &
14 Starr, *California Real Estate* (2d ed.) § 9.45, "Conditional Assignment of Rents as
15 Additional Security," p. 118; CEB, *California Mortgage and Deed of Trust Practice*
16 (1979) § 7.11, "Assignments of Rents as Additional Security," pp. 334-335.)  Absent
17 cooperation of the trustor, the only legal means by which the beneficiary may enforce this
18 additional security is by the appointment of a receiver.  (4 Miller & Starr, *California Real*
19 *Estate* (2d ed.) § 9.45, p. 119.)  In this case, Allen is in default because he failed to make
20 the monthly payments under the Note.  A receiver is needed to protect Wells Fargo's
21 rights in the 14 Acres and to collect rents since Allen is operating the Subject Property,
22 but is *not* paying those monies to Wells Fargo as required by the terms of the Note and
23 Deed of Trust.  The appointment of a receiver to protect Wells Fargo's rights under such
24 circumstances is appropriate.  (*Commerce Bank v. Edgemate-Santa Clara Inc.*, (1960)
25 242 Cal.App.2d 584; Code Civ. Proc. § 564(b)(9); *Mines v. Superior Court*, (1932) 216
26 Cal. 776.)

27 ///
28 ///

1
2
3

**B.**    **Attorneys' Fees and Costs Incurred in Seeking Appointment of the**
**Receiver are Provided for by the Terms of the Note and Deed of Trust and**
**are a Proper Element of Costs and Expenses**

4
5
6

The Note and Deed of Trust executed by Allan provides for the recovery of attorneys' fees in enforcing its terms.  Paragraph 32 of the Deed of Trust provides, in pertinent part:

7
8
9
10

Reimbursement.  [B]orrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder...

11
12

(Declaration of Jennifer Fishman in Support of Ex Parte Application, Ex. 2 [Deed of Trust, ¶ 32.])

13
14
15
16
17
18
19
20
21

Such provision is enforceable, and justifies recovery of attorneys' fees and costs.  (*Ventura v. Redwood Savings and Loan Association*, (1968) 262 Cal.App.2d 523.)  "The expense incurred by a litigant for legal services in causing the employment of a receiver is as much an expense of administration as the charge of the receiver's counsel and should have priority to the same extent."  (*Farmers Loan and Trust Company v. Green*, 79 F. 22.  See also *In re Estate of Meyer*, (1941) 18 Cal.2d 191.)  Accordingly, before any sums collected from the 14.05 Acres as rent are applied against the outstanding indebtedness, the reasonable attorneys' fees and costs incurred in the bringing of this action should be deducted by the receiver.

22    ///
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

Memorandum of Points and Authorities

8.    CONCLUSION

Wells Fargo is entitled to appointment of a receiver over the 40 Acres in order to preserve the property for disposition by the Court in this case, particularly in light of Bennett's failure to insure that portion of the property. Further, Wells Fargo is entitled to appointment of a receiver over the 14.03 Acre portion of the property in order to address Allen's continuing default under the loan. Accordingly, the Court should appoint the receiver over the 40 Acres and the 14.03 Acres as requested.

DATED: July 20, 2011

THE RYAN FIRM
A Professional Corporation

By: _____
TIMOTHY M. RYAN
AUSTIN T. BEARDSLEY
Attorneys    for Defendants/Cross-
Complainants WELLS FARGO
BANK, N.A., as Trustee for MLMI
Trust,    Series 2008-HE3; and BAC
HOME LOANS SERVICING, LP, a
Texas limited partnership, successor by
merger to Wilshire Credit Corporation,
erroneously sued as BAC Home Loan
Servicing,    LLP

15

# EXHIBIT C

ENDORSED FILED

JUL 21 2011

R. Hare, Chief Executive Officer
LASSEN COUNTY COURTS

By— S. Spangler

1   Timothy M. Ryan, Bar No. 178059
2   Austin T. Beardsley, Bar No. 270046
    THE RYAN FIRM
    A Professional Corporation
3   1100 N. Tustin Avenue, Suite 200
    Anaheim, California 92807
4   Telephone (714) 666-1362; Fax (714) 666-1443

5   Attorneys for Defendants/Cross-Complainants WELLS FARGO BANK, N.A., as Trustee
6   for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas
    limited partnership, successor by merger to Wilshire Credit Corporation, erroneously
7   sued as BAC Home Loan Servicing, LLP

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LASSEN

10

11  NORMAN W. ALLEN,                    )    LEAD CASE NO.: 45679
                                        )    (Consolidated with Case No. 50324)
12          Plaintiff,                  )    Unlimited Jurisdiction
                                        )    Date Action Filed:   Unknown.
13  vs.                                 )
                                        )    Assigned for All Purposes to
14  SUMMIT FINANCIAL GROUP;             )    Hon. Raymond J. Girdano, Judge
15  DANA CAPITAL CORP.; STEVE           )    Dept. 6
    WEICH; ROD HOSILYK; DWIGHT          )
16  A. BENNETT; JUDITH A. ST. JOHN;     )    [PROPOSED] ORDER APPOINTING
17  WILSHIRE CREDIT                     )    RECEIVER AND PRELIMINARY
    CORPORATION; EVANS                  )    INJUNCTION
18  APPRAISAL SERVICES, INC.; and       )
    DOES 1–10,                          )
19                                      )
20          Defendants.                 )    Date:      July 21, 2011
    _____)    Time:      9:30 a.m.
21  NORMAN W. ALLEN,                    )    Dept:      6
22          Plaintiff,                  )    Trial Date: None set.
                                        )
23  vs.                                 )
                                        )
24  T.D. SERVICE COMPANY; WELLS         )
25  FARGO BANK, N.A., as Trustee for    )
    the MLMI Trust Series 2005-HE3; and )
26  DOES 1–10,                          )
                                        )
27          Defendants.                 )
    _____)
28  WELLS FARGO BANK, N.A., as          )

EXHIBIT
1 (7 pgs)
Lozano / 12.11.13
PENGAD 800-631-6989

1

THE RYAN FIRM
A Professional Corporation

Trustee for MLMI Trust Series 2005– )
HE3; and BAC HOME LOANS )
SERVICING, LP, a Texas limited )
partnership, successor by merger to )
Wilshire Credit Corporation, )
erroneously sued as BAC Home Loan )
Servicing, LLP, )
　　　　　 )
　　　　Cross-Complainants, )
　　　　　 )
vs. )
　　　　　 )
NORMAN W. ALLEN; DWIGHT A. )
BENNETT; JUDITH A. ST. JOHN; )
EVANS APPRAISAL SERVICES; )
INC.; and ROES 1–10, )
　　　　　 )
　　　　Cross-Defendants. )
　　　　　 )
AND ALL OTHER CROSS– )
ACTIONS )

Application having been made on behalf of Defendant/Cross-Complainant Wells Fargo Bank, N.A. ("Wells Fargo"), and good cause appearing therefore,

**IT IS ORDERED THAT:**

1.　　　Vicki Lozano be and hereby is appointed Receiver in this action;

2.　　　Within 1 business day of entering upon her duties as a receiver, she shall take the oath, and within 5 business days of entering upon her duties shall file herein a bond, with surety thereon approved by this court, in the sum of $ *10,000.⁰⁰* , conditioned upon the faithful performance of her duties as receiver;

3.　　　Said Receiver be and the same hereby is immediately empowered and directed to take possession and control over the real property which is the subject of this action, which property bears the Assessor's Parcel Numbers 099-260-69 (the "40 Acres") and 099-260-70 (the "14.03 Acres") (collectively, the "Subject Property") and legally described as set forth in Exhibits 1 and 2, respectively, attached to this order and incorporated by this reference;

4.　　　Said Receiver is authorized and directed:

2

(a)     To take immediate possession and control of the Subject Property and to demand, receive and check all rents, issues, profits and income therefrom, and all other monies arising from the Subject Property, to collect debts and compromise same, and to perform all acts respecting the Subject Property which the court may authorize;

(b)     Within thirty (30) days from the date hereof, to file with this court a true and accurate inventory of the Subject Property;

(c)     To apply and disburse rents, issues, profits and income and all other monies arising from the Subject Property, monthly or more often, to the following expenditures, in such order of priority as said Receiver shall determine:

    (i)     To pay all expenses and charges of the Receiver in the conduct of her office;

    (ii)    To pay expenses reasonably necessary or incidental to the continued operation, care, preservation and maintenance of the Subject Property to insure that the tenants thereof shall be supplied with uninterrupted service;

    (iii)   To pay all expenses incurred for repairs, alterations and improvements of the Subject Property reasonably necessary or incidental to keep the Subject Property in rentable and usable condition;

    (iv)    To pay all general and special property taxes and assessments upon the Subject Property now due or to become due;

    (v)     To make leasehold payments now due or to become due in the event the Subject Property is subject to a ground lease;

    (vi)    To pay for property and liability insurance for the Subject Property in the event existing coverage is absent or insufficient;

3

THE RYAI   &M
A Professional Corporation

(vii)   To pay all remaining sums towards the indebtedness Plaintiff/Cross-Defendant Norman W. Allen ("Allen") owes to Wells Fargo under the Deed of Trust that all parties agree should have encumbered the 14.03 Acres, and any senior deeds of trust, and thereafter to pay all liens and encumbrances secured by the 14.03 Acres in the order of their priority.  Payment of those installments totaling less than the total delinquency owing shall not be deemed a waiver of the right of Wells Fargo to proceed with or complete judicial or non-judicial foreclosure;

(d)   To take and hold possession of the Subject Property, and to make, cancel, extend or modify leases; obtain or eject tenants, set or modify rents and terms of rent, and to collect all or any part of the rents, issues and profits; and said Receiver is further authorized to expend out of the rents, issues, profits and income such sums as said Receiver shall deem reasonable for the purpose of advertising the Subject Property for rent or lease.

5.   The Receiver shall have thirty (30) working days to investigate and to determine whether or not there exists upon the Subject Property insurance coverage, and during such period said Receiver shall not be responsible for claims arising for the procurement of insurance;

6.   The Receiver shall have thirty (30) working days to investigate and to determine the financial condition of the stable/riding business on the 40 Acres.  If, in the Receiver's sole professional opinion and discretion, the financial affairs of said business is such that a Receivership would merely present a drain of resources, then the Receiver may, at her sole option, inform the Court of her resignation in conjunction with an accounting of any sums collected by the Receiver, and the Receiver shall be discharged from all duties and liability upon the following terms:

4

THE RYAN M
A Professional Corporation

(a) the receivership estate will terminate upon the Receiver's filing of a notice of resignation with this Court and the return of all property collected under the authority of this order, and the Receiver will be formally discharged of all further duties, liabilities, and responsibilities in this matter;

(b) all of the acts, transactions of the Receiver for the receivership period will be confirmed, ratified and approved as being right and proper and in the best interests of the receivership estate and the parties to this action;

(c) any fees and expenses by the Receiver shall be recoverable, in the Court's discretion, upon separate application by the Receiver and supported by declaration or affidavit;

(d) any bond filed by the Receiver will be exonerated;

7. The Receiver is authorized to employ agents, employees, clerks, attorneys and accountants, and to pay for same at ordinary and usual rates and prices out of funds which shall come into his possession as Receiver and to do all things and to incur the risks and obligations ordinarily incurred by owners, managers and operators of similar commercial properties, and no risk or obligation so incurred shall be the personal risk or obligation of the Receiver, but a risk and obligation of the Receivership Estate;

8. Defendants/Cross-Defendants Dwight A. Bennett ("Bennett"), Judith St. John ("St. John"), and Allen and/or their agents are to relinquish possession of the Subject Property to the Receiver upon her appointment becoming effective hereunder, and shall not collect further rents. Any such further rents received by Bennett, St. John, Allen and/or their agents shall immediately be turned over to the Receiver by them;

9. Bennett, St. John, Allen, their agents, employees, servants, assignees, and persons acting in concert with them shall fully cooperate in turning over all property, including books and records thereof wherever located, to the Receiver; and that prior to such turnover and thereafter, pending further order of this Court, said persons and each of

5

1  them, shall take no action of any kind with respect to the operation of the Subject

2  Property;

3      10.    Said Receiver is to hold all additional proceeds derived from the Subject

4  Property heretofore described, less all costs, expenses and payments authorized herein

5  until further Order of this Court, including judgment decreeing who is entitled thereto;

6      11.    The Receiver shall be authorized to prepare periodic interim statements

7  reflecting the Receiver's fees, and administrative costs and expenses incurred for said

8  period in the operation and administration of the Receivership Estate herein.  Upon

9  completion of said interim statement, and mailing said statement to the parties' respective

10  attorneys of record or any other designated person or agent, the Receiver shall pay from

11  Estate funds, if any, the amount of said statement.  Despite periodic payment of

12  Receiver's fees, and administrative expenses, said fees and expenses shall be submitted to

13  the court for its approval and confirmation, in the form of either a noticed interim request

14  for fees, stipulation among all the parties, or Receiver's Final Account and Report;

15      12.    Bennett, St. John, Allen, their respective agents, servants, employees,

16  assignees, successors, representatives, and all persons acting under, in concert with, or for

17  them, are restrained and enjoined during the pendency of this action from engaging in,

18  committing or performing, directly or indirectly, any or all of the following acts:

19          (a)    Demanding, collecting, receiving, or in any other way diverting or

20          using any further rents, issues, profits or income from the Subject Property;

21          (b)    Committing or aiding or abetting any waste on the Subject Property

22          or any part thereof, or committing or aiding or abetting any act on said

23          premises or any part thereof in violation of law, or removing, transferring,

24          encumbering or otherwise disposing of the Subject Property, or any of the

25          fixtures presently on the Subject Property or any part thereof, without

26          further Order of this Court so permitting;

27          (c)    Interfering with, hindering or molesting in any manner whatsoever

28          the Receiver in the performance of the Receiver's duties herein described or

THE RYA    RM
A Professional Corporation

6

1  in the performance of any duties incidental thereto.

2   13. Bennett, St. John, and Allen are hereby ordered to pay over to the Receiver

3 any monies presently held by them, whether jointly or severally, that have been received

4 as refundable deposits for the Subject Property;

5   14. The Receiver is empowered to establish bank accounts at any bank as the

6 Receiver may determine;

7   15. Wells Fargo shall immediately file an applicant's bond under *Code of Civil*

8 *Procedure* section 566(b) in the amount of $ *10,000*.

9  ~~16. ORDER TO SHOW CAUSE RE CONFIRMATION:~~

10  ~~Pursuant to Rule 3.1176 of the *California Rules of Court*, requiring that a~~

11 ~~confirmation hearing take place within fifteen (15) days of the issuance of this order,~~

12  ~~The parties hereto are hereby ordered to appear on _____ at~~

13 ~~_____, in Department _____ of this Court, located at~~

14 ~~_____, to show cause, if any they have,~~

15 ~~why the Appointment of the Receiver should not be confirmed.~~

16  Wells Fargo is to serve this order and related documents upon all adverse parties

17 pursuant to *California Rules of Court*, rule 3.1176(b).

18

19  JUL 21 2011

20 DATED: _____

       JUDGE OF THE SUPERIOR COURT

21

22

23

24

25

26

27

28 r:\\8045-1267 norman allen v. wilshire\case no. 45679\law & motion\application for receivership on 40 acres\proposed order appointing receiver.doc

[Proposed] Order Appointing Receiver

# EXHIBIT D

ORIGINAL BY FAX

THE RYAN FIRM
A Professional Corporation

1  Timothy M. Ryan, Bar No. 178059
   Austin T. Beardsley, Bar No. 270046
2  THE RYAN FIRM
   A Professional Corporation
3  1100 N. Tustin Avenue, Suite 200
   Anaheim, California 92807
4  Telephone (714) 666-1362; Fax (714) 666-1443

5  Attorneys for Defendants/Cross-Complainants WELLS FARGO BANK, N.A., as Trustee
   for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a
6  limited partnership, successor by merger to Wilshire Credit Corporation, erroneously
   sued as BAC Home Loan Servicing, LLP
7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF LASSEN

10

11 NORMAN W. ALLEN,                    )  LEAD CASE NO.:  45679
                                       )  (Consolidated with Case Nos. 50324 &
12          Plaintiff,                 )  46190)
                                       )  Unlimited Jurisdiction
13 vs.                                 )  Date Action Filed:   Unknown.
                                       )
14                                     )
   SUMMIT FINANCIAL GROUP;             )  Assigned for All Purposes to
15 DANA CAPITAL CORP.; STEVE           )  Hon. Raymond J. Girdano, Judge
   WEICH; ROD HOSILYK; DWIGHT          )  Dept. 6
16 A. BENNETT; JUDITH A. ST. JOHN;     )
   WILSHIRE CREDIT                     )
17 CORPORATION; EVANS                  )  DEFENDANT/CROSS-COMPLAINANT
   APPRAISAL SERVICES, INC.; and       )  WELLS FARGO BANK, N.A.'S EX
18 DOES 1-10,                          )  PARTE APPLICATION FOR AN
                                       )  ORDER AUTHORIZING THE
19                                     )  RECEIVER TO SURRENDER
          Defendants.                  )  EQUINES TO THE COUNTY OF
20                                     )  LASSEN; MEMORANDUM OF POINTS
   NORMAN W. ALLEN,                    )  AND AUTHORITIES
21                                     )
          Plaintiff,                   )
22                                     )  Date:      July 29, 2011
   vs.                                 )  Time:      10:00 a.m.
23                                     )  Dept.:     3
                                       )
24 T.D. SERVICE COMPANY; WELLS         )  Trial Date:   None set.
   FARGO BANK, N.A., as Trustee for    )
25 the MLMI Trust Series 2005-HE3; and )
   DOES 1-10,                          )
26                                     )
                                       )
27        Defendants.                  )
                                       )
28 WELLS FARGO BANK, N.A., as          )

                                       1
   ─────────────────────────────────────────────────────────────
   Ex Parte Application for an Order Authorizing the Receiver to Surrender Equines

00428

Trustee for MLMI Trust Series 2005-
HE3; and BAC HOME LOANS
SERVICING, LP, a Texas limited
partnership, successor by merger to
Wilshire Credit Corporation,
erroneously sued as BAC Home Loan
Servicing, LLP,

           Cross-Complainants,

vs.

NORMAN W. ALLEN; DWIGHT A.
BENNETT; JUDITH A. ST. JOHN;
EVANS APPRAISAL SERVICES;
INC.; and ROES 1–10,

           Cross-Defendants.

AND ALL OTHER CROSS-
ACTIONS

    **TO THE COURT AND TO ALL INTERESTED PARTIES:**

    **PLEASE TAKE NOTICE** that Defendant/Cross-Complainant Wells Fargo Bank,

N.A., as Trustee for MLMI Trust Series 2005-HE3 ("Wells Fargo"), hereby applies for

an order authorizing the Receiver in this matter, Vicki Lozano, to surrender all animals

on the real property commonly referred to as 695-725 Highway 36, Susanville, California

96130 (the "Subject Property") to the County of Lassen Department of Public Works.

This application is made on the grounds that the animals on the Subject Property have

been subjected to severe neglect. Many of the animals perished as a result of this neglect,

their carcasses have not been properly disposed, and the remaining living animals are

malnourished. Further, the Receiver lacks the necessary funding to properly care for the

remaining animals, and turning custody of the animals over to the County is in the

animals' best interests and in the best interests of the Receivership Estate. The animals

will remain in the care of the County until ownership can properly be determined. The

gross mistreatment and malnourishment of the animals and the mounting expenses

incurred by the Receivership Estate justify ex parte relief.

2

---

Ex Parte Application for an Order Authorizing the Receiver to Surrender Equines

This application is based on the attached memorandum of points and authorities, and the declarations of Vicki Lozano, Timothy M. Ryan, and Tyler J. Kemp, filed concurrently herewith.

DATED:     July 27, 2011

THE RYAN FIRM
A Professional Corporation

By: _____

TIMOTHY M. RYAN
AUSTIN T. BEARDSLEY
Attorneys for Defendants/Cross-Complainants WELLS FARGO
BANK, N.A., as Trustee for MLMI
Trust Series 2005-HE3; and BAC
HOME LOANS SERVICING, LP, a
Texas limited partnership, successor by
merger to Wilshire Credit Corporation,
erroneously sued as BAC Home Loan
Servicing, LLP

3

Ex Parte Application for an Order Authorizing the Receiver to Surrender Equines

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.    INTRODUCTION**

On July 21, 2011, the Court issued an order appointing Vicki Lozano as the receiver over the real property commonly referred to as 695-725 Highway 36, Susanville, California 96130 (the "Subject Property"), which includes a stable and numerous animals (such as horses, donkeys and goats) that were previously under the care and control of Defendant/Cross-Defendant Dwight A. Bennett ("Bennett"). The Receiver conducted an inspection and took possession of the Subject Property on the afternoon of July 21, 2011. During her inspection, the Receiver noted that the conditions in which the animals on the Subject Property were kept were abhorrent, which included several horse carcasses littering the Subject Property, and that the animals had existed in a near starvation state for some time. The Receiver also learned that there is no ongoing horse boarding operation at Whispering Pines (aka, the Subject Property); instead, it is simply a starving, breeding, semi-feral horse heard, for all intents and purposes. Based on the condition of the animals and the economics involved in caring for a herd of this size, the Receiver believes that surrendering custody of the animals to the County of Lassen Department of Public Works is the correct course of action. The County has already identified a rescue shelter for these animals and stands ready to rescue these animals. It is therefore requested that the Court enter an order authorizing the Receiver to surrender the animals on the Subject Property.

**2.    THE ANIMALS ON THE SUBJECT PROPERTY SUFFERED FROM SEVERE NEGLECT AT THE HANDS OF BENNETT**

As fully detailed in the accompanying declarations of Vicki Lozano and Michael W. Russell, DVM, the conditions in which the animals are kept on the Subject Property are abhorrent. These conditions include:

- Rotting carcasses of approximately twenty-four horses (who likely perishes as a result of starvation), which were left for scavengers.
- A large herd of equines that is permitted to roam the Subject

1

THE RYAN FIRM
A Professional Corporation

Property, without any restraint.

- Stalls in the stable that are literally buried feet deep in horse dung.
- Broken fencing, comingling of mares and stallions, and indiscriminate breeding.
- Animals roaming freely amongst mountains of discarded personal property, such as toilets and old washing machines.
- Animals exhibiting severe malnutrition.

Astonishingly, these conditions were observed at the Subject Property as early as April 2011, when the County of Lassen confiscated several horses from Bennett due to neglect that resulted in imminent harm. At that time, the need for prompt action to correct the foregoing conditions was directly brought to Bennett's attention, and he went so far as to acknowledge the need for such action. Unfathomably, *Bennett took no action and these conditions persisted for over three months*—up to the point the Receiver took possession of the Subject Property and the animals thereon—and are only now being addressed.

**3.   AS BENNETT CONTINUOUSLY FAILED TO FEED THE ANIMALS ON THE SUBJECT PROPERTY, THE RECEIVER IS NOW SHOULDERING THAT SUBSTANTIAL BURDEN**

As depicted in the photographs attached to the Declaration of Vicki Lozano, and as detailed in the report by Michael W. Russell, DVM, most of the equines on the Subject Property suffer from malnutrition to the point where their ribs show prominently. Based on Bennett's failure to feed the animals adequately, the Receiver was obliged to have a shipment of hay delivered to the Subject Property on the same day she was appointed by the Court. Further, as it is clear that Bennett will not shoulder the responsibility of feeding these animals, the Receiver must now bear the burden of ensuring that the animals do not starve. The Receivership Estate, however, lacks the funds necessary to sustain this burden as the Subject Property contains only one boarded horse and fails to generate sufficient income to cover the costs of feeding the large herd of animals. As set

THE RYAN FIRM
A Professional Corporation

2

1   forth previously, there is no operating business at the Subject Property. Instead, there is a

2   living, starving, breeding herd of horses running rampant.

3   **4.    THE COUNTY OF LASSEN WILL ARRANGE FOR THE ANIMALS TO**

4   **BE HOUSED AND CARED BY A RESCUE SHELTER, AND SUCH**

5   **RELOCATION IS IN THE ANIMALS' AND THE RECEIVERSHIP**

6   **ESTATE'S BEST INTERESTS**

7   As set forth in the statement by Peter Heimbigner, Deputy Director of the County

8   of Lassen Department of Public Works (a copy of which is attached to the Declaration of

9   Timothy M. Ryan), the County of Lassen is willing to take custody of the animals and to

10  arrange for their care by a rescue shelter. Further, the County of Lassen is willing to

11  assume responsibility for the animals pending final determination of their ownership, and

12  their owner(s)' ability to provide proper care. Given that the Receivership Estate cannot

13  sustain the burden of caring for these animals in their starved state, and Mr. Heimbigner's

14  professional evaluation that these animals are better served by receiving care from a

15  rescue shelter, the Court should grant this application and issue an order authorizing the

16  Receiver to surrender the animals to the County of Lassen for rescue.

17  **5.    THE ORDER APPOINTING THE RECEIVER ALREADY AUTHORIZES**

18  **HER TO SURRENDER THE ANIMALS, HOWEVER A FURTHER**

19  **COURT ORDER IS WARRANTED GIVEN THE UNPRECEDENTED**

20  **CONDITION OF THE ANIMALS AND BENNETT'S LITIGIOUS**

21  **NATURE**

22  On July 21, 2011, the Court entered an order appointing Vicki Lozano as the

23  Receiver over the Subject Property. Said order authorizes the Receiver to possess and

24  control the Subject Property, and to manage and dispose of any personal property

25  (including animals) on the Subject Property. Thus, the Order dated July 21, 2011 already

26  authorizes the Receiver to surrender the animals to the County of Lassen. However, in

27  this instance, a further order of this Court is necessary in order to clearly delineate the

28  Receiver's power to surrender the animals, and to further restrain Bennett and his agents

THE RYAN FIRM
A Professional Corporation

3

Memorandum of Points and Authorities

00433

from interfering with the Receiver's attempts to surrender the animals. Such an order is required based on Bennett's litigious nature and the Receiver's reasonable apprehension that Bennett will subject her to numerous court proceedings for her attempts to prioritize the animals' best interests. This specific language was not included in the original appointment order as all parties believed that an operational boarding facility existed at the Subject Property.[1]

## 6.    CONCLUSION

Based on the foregoing, Wells Fargo respectfully requests that the Court issue an order authorizing the Receiver to surrender the animals on the Subject Property to the County of Lassen.

DATED:    July 27, 2011

THE RYAN FIRM
A Professional Corporation


By: _____
TIMOTHY M. RYAN
AUSTIN T. BEARDSLEY
Attorneys for Defendants/Cross-Complainants WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, successor by merger to Wilshire Credit Corporation, erroneously sued as BAC Home Loan Servicing, LLP

THE RYAN FIRM
A Professional Corporation

---

[1] The Court is authorized to issue any order or adopt any process necessary to enforce is previous orders. (Code Civ. Proc. § 187.) .

4

Memorandum of Points and Authorities

00434

# EXHIBIT E

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF LASSEN

## MINUTE ORDER

Date: 07/29/11                                    Judge: David A. Mason
Clerk: Kim Gallagher

Norman Allen
                              Plaintiff

vs                                                Case No: 45679

Summit Financial Inc. et al.
                              Defendant

NATURE OF PROCEEDINGS:  Ex parte Motion and Order to Show Cause

The matter came on regularly on 7/29/11 at the hour of 10am and ended on 7/29/11 at the hour of 11:20 am for ex parte hearings before the Honorable David A. Mason appearing by court call.

Defendant/Cross complainant Wells Fargo Bank/BAC Counsel Tim Ryan and Mr. Beardsley present by court call. Mr. Bennett present in the courtroom in pro per status. Court Appointed Receiver Vickie Lozano is present in the courtroom.

The court indicates it has received and reviewed the pleadings however, makes notation to parties the documents were received late and a cursory review before hearing was completed.

The court inquires some clarification from Mr. Ryan and Mr. Beardsley on the order appointing receiver attached to the current documents seems vague as to personal property. Mr. Ryan indicates to the court that the property in question is a business that operates boarding and horseback riding curriculum and therefore the horses are part of the business that would be subject to the receiver's analysis and their request to remove equines from the property and place in Lassen County Animal Control Facility.

Mr. Bennett objects to the receivership as well as what is in her duties to perform and cites the requirements of the receiver under the code. Mr. Bennett objects to the ex parte motion to have the receiver relinquish the equines to the Lassen County Animal Control Facility stating the receiver isn't qualified to make those assessments and either his Veterinarian or the Animal Control Officer should be making those assessments. Mr. Bennett also objects to the motions since he was not served properly with the documents until 7/28/11 past 5pm. The documents he received refer to a paragraph 8 not listed on any of his documents they only go to paragraph 6.

Mr. Bennett indicates the animal control officer with a sheriff's deputy makes monthly visits and states the improvements to the animals have been made. Mr. Bennett also indicates he has a current video for the court to review and requests the court review the video tape and delay today's ruling or in the alternative continue the hearing to the date that the assigned judge can hear or advance the date from 8/19 to an earlier date. The court indicates he does not set or advance hearings for other judges and Mr. Bennett should defer this issue to all parties and Counsel.

The court instructs Mr. Bennett that his objection to the receiver isn't before him and the assigned judge who made that order will need to be motioned on his regular calendar. The court also indicates that Judge Mason is not the assigned judge in this action and is hearing only the ex parte motions added to his calendar in Lassen County.

Court announces its tentative decision as follows:

The order to show cause for contempt on Mr. Bennett for his failure to turn over the property to the court appointed receiver will be set on 8/19/11 at 10am before the assigned judge.

The court will grant the ex parte motion to turn over the equines to the Lassen County Animal Control Facility. The court has determined the photographs attached to the documents clearly reflect the status of the equines and property in question and Mr. Bennett's video is not necessary to make that determination.

The court also notes the proposed order is not prejudicial since the order reflects any party who can substantiate ownership of the animals in question will have those animals released upon providing proof of ownership including Mr. Bennett.

The court after hearing argument makes the tentative decision the order and signs the proposed order submitted.

Mr. Bennett objects to the tentative decision becoming the order and puts the court on notice he will appeal this ruling.

# EXHIBIT F

COPY

1   Timothy M. Ryan, Bar No. 178059
2   Austin T. Beardsley, Bar No. 270046
    THE RYAN FIRM
3   A Professional Corporation
    1100 N. Tustin Avenue, Suite 200
    Anaheim, California 92807
4   Telephone (714) 666-1362; Fax (714) 666-1443

5   Attorneys for Defendants/Cross-Complainants WELLS FARGO BANK, N.A., as Trustee
6   for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas
    limited partnership, successor by merger to Wilshire Credit Corporation, erroneously
7   sued as BAC Home Loan Servicing, LLP

ENDORSED FILED
JUL 29 2011

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LASSEN

10

11  NORMAN W. ALLEN,                          )  LEAD CASE NO.:  45679
12                                            )  (Consolidated with Case Nos. 50324 &
                Plaintiff,                    )  46190)
13                                            )  Unlimited Jurisdiction
    vs.                                       )  Date Action Filed:  Unknown.
14                                            )
15  SUMMIT FINANCIAL GROUP;                   )  Assigned for All Purposes to
    DANA CAPITAL CORP.; STEVE                 )  Hon. Raymond J. Girdano, Judge
16  WEICH; ROD HOSILYK; DWIGHT                )  Dept. 6
    A. BENNETT; JUDITH A. ST. JOHN;           )
17  WILSHIRE CREDIT                           )  [PROPOSED] ORDER GRANTING
    CORPORATION; EVANS                        )  DEFENDANT/CROSS-COMPLAINANT
18  APPRAISAL SERVICES, INC.; and             )  WELLS FARGO BANK, N.A.'S EX
    DOES 1–10,                                )  PARTE APPLICATION FOR AN
19                                            )  ORDER AUTHORIZING THE
                                              )  RECEIVER TO SURRENDER
20              Defendants.                   )  EQUINES TO THE COUNTY OF
                                              )  LASSEN
21  NORMAN W. ALLEN,                          )
                                              )
22              Plaintiff,                    )  Date:      July 29, 2011
                                              )  Time:      10:00 a.m.
23  vs.                                       )  Dept.:     3
                                              )
24  T.D. SERVICE COMPANY; WELLS               )  Trial Date:   None set.
    FARGO BANK, N.A., as Trustee for          )
25  the MLMI Trust Series 2005-HE3; and       )
    DOES 1–10,                                )
26                                            )
                                              )
27              Defendants.                   )
                                              )
28  WELLS FARGO BANK, N.A., as                )

                                    I

EXHIBIT
7 (3 pgs)
Lozano 12.11.13

[Proposed] Order

1    Trustee for MLMI Trust Series 2005-
     HE3; and BAC HOME LOANS
2    SERVICING, LP, a Texas limited
     partnership, successor by merger to
3    Wilshire Credit Corporation,
     erroneously sued as BAC Home Loan
4    Servicing, LLP,

5              Cross-Complainants,

6    vs.

7    NORMAN W. ALLEN; DWIGHT A.
     BENNETT; JUDITH A. ST. JOHN;
8    EVANS APPRAISAL SERVICES;
     INC.; and ROES 1–10,
9

10             Cross-Defendants.

11   AND ALL OTHER CROSS-
     ACTIONS
12

13

14       The Court, having considered the ex parte application of Defendant/Cross-

15   Defendant Wells Fargo Bank, N.A., as Trustee for MLMI Trust Series 2005-HE3, for an

16   order authorizing the Receiver to surrender the animals located on the real property

17   located at 695-725 Highway 36, Susanville, CA 96130 (the "Subject Property") to the

18   County of Lassen, having considered the arguments raised in support of an opposition to

19   said application, and good cause appearing, hereby orders as follows:

20       IT IS ORDERED THAT the court appointed Receiver over the Subject Property,

21   Vicki Lozano, is authorized to surrender any and all animals on or from the Subject

22   Property to the County of Lassen.

23       IT IS FURTHER ORDERED THAT Defendant/Cross-Defendant Dwight A.

24   Bennett ("Bennett"), his agents, servants, employees, assignees, successors,

25   representatives, and all persons acting under, in concert with, or for him, are restrained

26   and enjoined during the pendency of this action from engaging in, committing or

27   performing, directly or indirectly, any act to hinder, interfere, or otherwise meddle with

28   the Receiver's surrender of animals subject to this order.

THE RYAN FIRM
A Professional Corporation

2

1    IT IS FURTHER ORDERED THAT Bennett, his agents, servants, employees,

2    assignees, successors, representatives, and all persons acting under, in concert with, or for

3    him are to relinquish possession of the animals subject to this Order, and shall fully

4    cooperate with the Receiver in her execution of acts performed under the authorization

5    granted by this Order.

6    IT IS FURTHER ORDERED THAT the County of Lassen Department of Public

7    Works may release any animals surrendered by the Receiver to its owner upon a

8    sufficient showing by the purported owner of his or her ownership, and upon a sufficient

9    showing by the purported owner that he or she can adequately care for the claimed

10    animal.

11    IT IS SO ORDERED.

12

13    DATED: 7-29-11

14

15    JUDGE OF THE SUPERIOR COURT

16    (Assigned)

17

18

19

20

21

22

23

24

25

26    r:\8045-1267 norman allen v. wilshire\case no. 45679\law & motion\ex parte application to surrender horses\proposed order.doc

27

28

THE RYAN FIRM
A Professional Corporation

3

[Proposed] Order

# DEPARTMENT of PUBLIC WORKS

*County of Lassen*



**LARRY MILLAR,** *Director*
*Public Works/Transportation*
*County Engineer*

**Administration Building**
**707 Nevada Street, Suite 4**
**Susanville, CA 96130**

**530/251-8288**
**FAX: 530/251-2674**
**FAX: 530/251-2675**

## LASSEN COUNTY ANIMAL CONTROL

Final Disposition of Animals at Whispering Pines Stables with a Physical Address of 695-725 Highway 36, Susanville, CA 96130. (APN 099-260-69 and 099-260-70)

Pursuant to court order dated 7/29/11, in the Lassen Superior Court, by Judge David A. Mason, the Receiver for above noted property was authorized to surrender any and all animals on or from property to the County of Lassen.

The following animals are hereby surrendered to Lassen County Animal Control from Whispering Pines Stables:

1) Male dog – "Mr. Fox", Australian Shepard mix, red sable ticked, long hair.
2) Female dog – "Ms. Fox", Healer mix, red ticked, short hair.

Dated: 8/23/11

**Court Appointed Receiver**

Vicki Lozano
Receiver

Further, the animals detailed above are hereby relinquished to the Grace Foundation of Northern California, an animal rescue and adoption organization.

The Grace Foundation of Northern Ca.
501(c)(3) ID# 52-2444981

Dated: 8/26/11

Beth DeCaprio
**Chief Executive Officer**

County of Lassen

Dated: 8/23/11

Peter C. Heimbigner
**Public Works Deputy Director**

Page 1 of 1



EXHIBIT
8 (1pg)
Lozano 12.11.15

# EXHIBIT I



August 25, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003726972

1   Timothy M. Ryan, Bar No. 178059
    Austin T. Beardsley, Bar No. 270046
2   THE RYAN FIRM
    A Professional Corporation
3   1100 N. Tustin Avenue, Suite 200
    Anaheim, California 92807
4   Telephone (714) 666-1362; Fax (714) 666-1443

5   Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust
6   Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited
    partnership,

7                    UNITED STATES BANKRUPTCY COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10
11  In re:                           )  CASE NO.: 11-40155
                                     )  Chapter: 11
12  Dwight Bennett                   )  Dated Filed: August 18, 2011
                                     )
13             Debtor,               )  Assigned for All Purposes to
                                     )  Hon. Michael S. McManus
14                                   )  Courtroom: 28
                                     )
15                                   )  **APPLICATION FOR AN ORDER**
                                     )  **SHORTENING TIME ON A HEARING**
16                                   )  **TO EXCUSE TURNOVER BY**
                                     )  **RECEIVER PURSUANT TO 11 U.S.C.**
17                                   )  **543 (D)**
                                     )
18                                   )  Trial Date:    None set.
                                     )
19                                   )
                                     )
20                                   )
                                     )
21
22          Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-

23  HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, (hereafter

24  referred to as "Creditors") hereby bring this application for an order setting a hearing on

25  shortened notice pursuant to LBR 9014-1 (f) (3).

26          Creditors seek a hearing on shortened notice for their motion to excuse turnover

27  by receiver pursuant to 11 U.S.C. §543 (d) (1), including an annulment of the stay so that

28  the filing of the subject bankruptcy petition does not affect post-petition acts, and to

                                    1

THE RYAN FIRM
A Professional Corporation

TGF 00465

1   allow all issues regarding the subject Receivership to be determined by the Receiver's

2   appointing Court as if this bankruptcy case had not been commenced.  A hearing on

3   shortened notice is necessary to prevent debtor Dwight Bennett's ("Bennett") abject

4   mismanagement of the improvements, natural resources and livestock located on the real

5   property commonly known as 695-725 Highway 36, Susanville, California 96130 (the

6   "Subject Property").  To summarize, Bennett's "management" of the Subject Property

7   includes his:

8        •   Failure to properly feed and care for a herd of horses on the Subject

9           Property resulting in the rescue of approximately twenty (20) horses by an

10          animal rescue shelter in April 2011.

11       •   Failure to properly feed and care for the remaining, approximately thirty

12          four (34), horses on the Subject Property, resulting in the deaths of several

13          horses from starvation (their carcasses still litter the Subject Property's

14          acreage) and the imminent threat of starvation to all horses who have not

15          yet perished.

16       •   Failure to maintain the improvements on the subject property, including

17          allowing a professional horse arena and riding stable to be inundated with

18          horse excrement.

19       •   Failure to maintain insurance on the horse stables and single family home

20          on the Subject Property.

21       •   Allowance of transients to inhabit the Subject Property's grounds, wherein

22          they are engaged in the practice of burning garbage during the height of the

23          fire season.

24      In contrast, the Receiver, Vicki Lozano, who was appointed by the Lassen County

25  Superior Court on July 21, 2011, has begun the arduous process of revitalizing the

26  Subject Property by:

27       •   Providing adequate food and water to the remaining horses from July 21,

28          2011, to the present date.

2

---

THE RYAN FIRM
A Professional Corporation

TGF 00466

- Identifying a rescue shelter for the remaining horses and procuring a grant in the amount of $40,000.00 from Creditors to cover the costs of transportation, medical care, and food for their stay at the shelter.
- Undertaking the task of rehabilitating the Subject Property by repairing damage to the stables, barn and riding arena.

This application is supported by Creditors' motion to excuse turnover by receiver ("Motion"), attached hereto as Exhibit 1 and incorporated herein by reference

Therefore, due to the great exigencies involved in their Motion, Creditors request that the Motion be heard on Monday, August 29, at 10:00 a.m. in Suite 3-200 of the above-entitled court.

DATED:      August 25, 2011                    THE RYAN FIRM
                                               A Professional Corporation


By: _____
    TIMOTHY M. RYAN
    AUSTIN T. BEARDSLEY
    Attorneys for Creditors WELLS
    FARGO  BANK, N.A., as Trustee for
    MLMI Trust Series 2005-HE3; and
    BAC HOME LOANS  SERVICING,
    LP

3

TGF 00467

Case 11-40155    Filed 02/10/14    Doc 265

# EXHIBIT 1

1    Timothy M. Ryan, Bar No. 178059
2    Austin T. Beardsley, Bar No. 270046
     THE RYAN FIRM
     A Professional Corporation
3    1100 N. Tustin Avenue, Suite 200
     Anaheim, California 92807
4    Telephone (714) 666-1362; Fax (714) 666-1443

5    Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust
6    Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited
     partnership,

7
                    UNITED STATES BANKRUPTCY COURT
8
                    EASTERN DISTRICT OF CALIFORNIA
9

10
11   In re:                          )   CASE NO.: 11-40155
                                      )   Chapter: 11
12   Dwight Bennett                   )   Dated Filed: August 18, 2011
                                      )
13              Debtor,               )   Assigned for All Purposes to
                                      )   Hon. Michael S. McManus
14                                    )   Courtroom: 28
                                      )
15                                    )   **NOTICE OF MOTION AND
                                      )   CREDITORS WELLS FARGO BANK,
16                                    )   N.A. AND BAC HOME LOANS
                                      )   SERVICING, LP'S MOTION TO
17                                    )   EXCUSE TURNOVER BY RECEIVER
                                      )   PURSUANT TO 11 U.S.C. §543 (D);
18                                    )   MEMORANDUM OF POINTS AND
                                      )   AUTHORITIES**
19                                    )
20                                    )   Date:        August 29, 2011
                                      )   Time:        10:00 a.m.
21                                    )   Courtroom:   28
                                      )
22                                    )   Trial Date:  None set.
23                                    )

24        **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25        **PLEASE TAKE NOTICE THAT** on Monday, August 29, 2011, at 10:00 a.m. in

26   Department A, Courtroom 28 of the above entitled court located at 501 I Street, Suite 3-

27   200, Sacramento, California 95814, Creditors WELLS FARGO BANK, N.A., as Trustee

28   for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas

                                    1

                        Notice of Motion and Motion

THE RYAN FIRM
A Professional Corporation

TGF 00469

1   limited partnership, (hereafter referred to as "Creditors") will move and hereby do move

2   the court for an order to excuse turnover by receiver pursuant to 11 U.S.C. §543 (d) (1),

3   including an annulment of the stay so that the filing of the subject bankruptcy petition

4   does not affect post-petition acts, and to allow all issues regarding the subject

5   Receivership to be determined by the Receiver's appointing Court as if this bankruptcy

6   case had not been commenced.

7        This motion is based on the attached memorandum of points and authorities, the

8   request for judicial notice and the declarations of Michael Russell, Vicki Lozano, Austin

9   T. Beardsley and Timothy M. Ryan filed concurrently herewith.

10  DATED:      August 25, 2011            THE RYAN FIRM
                                           A Professional Corporation
11

12

13                                         By:  /S/ AUSTIN T. BEARDSLEY
14                                               TIMOTHY M. RYAN
                                                 AUSTIN T. BEARDSLEY
15                                               Attorneys for Creditors WELLS
                                                 FARGO  BANK, N.A., as Trustee for
16                                               MLMI Trust Series 2005-HE3; and
                                                 BAC HOME LOANS  SERVICING,
17                                               LP

18

19

20

21

22

23

24

25

26

27

28

THE RYAN FIRM
A Professional Corporation

2

Notice of Motion and Motion

TGF 00470

1           **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **1.**      **INTRODUCTION AND SUMMARY**

3           Creditors FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3;

4 and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, (hereinafter

5 referred to as "Creditors") seek an order excusing turnover of estate property by receiver

6 Vicki Lozano ("Receiver") pursuant to 11 U.S.C. §543 (D) to debtor Dwight Bennett

7 ("Bennett"). Creditors further seek an order annulling the stay so that the filing of the

8 subject bankruptcy petition does not affect post-petition acts, allowing all issues

9 regarding the subject Receivership to be determined by the Receiver's appointing Court.

10           The relief sought is necessary there because there is no likelihood of Bennett's

11 ability to reorganize because there are no funds available for reorganization.

12 Furthermore, all of the problems plaguing the subject property, commonly known as 695-

13 725 Highway 36, Susanville, California 96130 (the "Subject Property"), including the

14 death by starvation of more than a score of horses (whose corpses still litter the acreage

15 of the Subject Property) have been caused directly by Mr. Bennett's "management."

16 Therefore, this motion should be granted and the stay should be annulled, restoring the

17 Receiver's authority over the Subject Property as directed by the Lassen County Superior

18 Court.

19           Furthermore, this motion should be heard on shortened notice under LBR §9014-1

20 (f) (3) because the bankruptcy stay clouds the Receiver's authority to manage the ailing

21 property. Specifically, the bankruptcy stay impedes the Receiver's ability to transfer the

22 remaining, severely neglected, thirty four (34) horses ("Remaining Horses"), as ordered

23 by the Lassen County Superior Court, from the dilapidated Subject Property to a

24 rehabilitation facility where the horses will receive necessary and immediate medical

25 treatment.

26    **2.**      **FACTS**

27           On or about July 21, 2011, the Receiver was appointed by the Lassen County

28 Superior Court over the Subject Property. (*See* Request for Judicial Notice "RFJN"

THE RYAN FIRM
A Professional Corporation

1

TGF 00471

THE RYAN FIRM
A Professional Corporation

1    Exhibit 4)  According to the receivership order ("Receivership Order"), the Receiver was

2    empowered to take possession of the Subject Property and to undertake any necessary

3    endeavors to stabilize the financial condition of the Subject Property, including the affairs

4    of what was thought to be an operating horse ranch.  (*See* RFJN Ex. 4 ¶¶ 3-4, attached to

5    the List of Exhibits filed concurrently herewith) On or about the same day, July 21, 2011,

6    the Receiver entered the Subject Property.  (*See* Declaration of Vicki Lozano, "Dec. of

7    Lozano," ¶ 3).  Instead of an operating horse ranch, the Receiver beheld a surreal scene of

8    disarray, decay and even death.  The Subject Property's stables were inundated with

9    mounds of horse feces inside and out.  (Dec. of Lozano ¶ 5 (i), Ex.3, photographs 66-72,

10    attached to the List of Exhibits filed concurrently herewith).  The horses, unable to be

11    housed in the stables, ran wild as a herd.  (Dec. of Lozano ¶ 5 (a), Ex. 3, photographs 1-4,

12    attached to the List of Exhibits filed concurrently herewith).  Most of the horses appeared

13    severely malnourished and under weight.  (Dec. of Lozano ¶ 5 (b), Ex. 3, photographs 5-

14    9, attached to the List of Exhibits filed concurrently herewith).  The only horses that

15    appeared to be above average weight were mares that had been impregnated by the

16    stallion with whom they had been allowed to roam free.  (Dec. of Lozano ¶ 5 (c), Ex.3,

17    photograph 10-12, attached to the List of Exhibits filed concurrently herewith).  Most

18    troubling, however, was the sight of several horse carcasses, in differing states of decay,

19    littering the formerly idyllic meadows of the Subject Property.  (Dec. of Lozano ¶ 5 (e),

20    Ex. 3, photographs 28-33, attached to the List of Exhibits filed concurrently herewith).  In

21    addition to the tragic state of the horses on the Subject Property, the Receiver discovered

22    that the stables and horse arena were in a state of extreme disrepair, and the once steady

23    horse-boarding business had dwindled to one boarded horse.  (Dec. of Lozano ¶ 5 (d), Ex.

24    3, photograph 13-27, attached to the List of Exhibits filed concurrently herewith).

25        Furthermore, prior to appointment of the Receiver, in or about April 2011,

26    representatives of the County of Lassen Department of Public Works ("Department")

27    began inspecting the Subject Property.  (Declaration of Michael Russell, "Dec. of

28    Russell," ¶ 4).  Upon discovering the tragic state of the animals on the Subject Property,

2

TGF 00472

1    the Department hired a veterinarian to assess their condition.  (Dec. of Russell ¶ 4).

2    According to the veterinarian, who evaluated the horses on or about April 12, 2011, the

3    entire herd was in extremely poor health.  (Dec. of Russell ¶ 6 (a)-(j), Ex. 1, attached to

4    the List of Exhibits filed concurrently herewith).  The collective condition of the herd

5    reflected an extreme lack of proper feeding and care.  (Dec. of Russell ¶ 6 (a)-(j), Ex. 1,

6    attached to the List of Exhibits filed concurrently herewith.)  The state of approximately

7    twenty (20) horses at that time was so dire that that they were immediately removed in

8    order to save their lives.  (Dec. of Russell ¶ 4).  During the intervening months, until the

9    appointment of the Receiver in late July, 2011, the Remaining Horses' health did not

10   improve.  (Dec. of Lozano ¶ 5).  However, since the appointment of the Receiver, the

11   Remaining Horses have been fed regularly.  (Dec. of Lozano ¶ 6).

12        To address the critical state of the Remaining Horses on the Subject Property, the

13   Receiver worked closely with the Department and a non-profit rescue shelter ("Shelter")

14   to provide a stable solution for rehabilitating them.  (Dec. of Lozano ¶ 7).  The receiver,

15   working with the Shelter, secured a $40,000.00 grant from Creditors to fund the transfer

16   of the Remaining Horses.  (Declaration of Timothy M. Ryan, "Dec. of Ryan," ¶ 6).  This

17   grant includes funds sufficient to provide proper medical care, food and shelter to all of

18   the Remaining Horses for a period of six (6) months.  (Dec. of Ryan ¶ 6).  Upon a

19   showing of this grave necessity, the Lassen County Superior Court signed an order

20   ("Surrender Order") granting the Receiver authority to surrender the Remaining Horses

21   to the Shelter through the County.  (RFJN Ex. 5, attached to the List of Exhibits filed

22   concurrently herewith).  The Receiver, the Department and the Shelter seek to make this

23   transfer immediately, as most of the horses require immediate medical attention, and a

24   handful of the pregnant horses are preparing to foal.  (Dec. of Lozano ¶¶ 5, 8).  The

25   turnover requirement jeopardizes this transfer because Bennett insists that he will not

26   surrender custody of the Remaining Horses to anyone.  (Dec. of Lozano ¶ 9).

27        During the pendency of the Receivership, Bennett has failed to comply with all of

28   the requirements of the Receivership Order, including the requirements that Bennett

THE RYAN FIRM
A Professional Corporation

3

Memorandum of Points and Authorities

TGF 00473

1  relinquish possession of the Subject Property and turn over all records relating to the

2  operation of the horse ranch. (RFJN Ex. 4, ¶¶ 8-9, attached to the List of Exhibits filed

3  concurrently herewith; Dec. of Lozano ¶ 9). In fact, on August 19, 2011, Bennett was

4  found in contempt of the Receivership Order for failing to turn over possession of the

5  Subject Property and the requisite business records and was sentenced to serve five (5)

6  days in Lassen County Jail. (Dec. of Ryan ¶ 7, Ex. 2, attached to the List of Exhibits

7  filed concurrently herewith). Bennett also encourages a group of squatters to retain

8  possession of the Subject Property in defiance of the Receivership Order. (Dec. of

9  Lozano ¶ 10). These squatters continually jeopardize the safety of the Subject Property

10 by burning garbage on the Subject Property during the peak of fire season. (Dec. of

11 Lozano ¶ 11; Dec. of Ryan ¶ 4).

12     Last, according to his bankruptcy petition, Bennett has an income of no more than

13 $680.00 per month[1] making it all but impossible to care for himself and the Remaining

14 Horses, as well as making all of the necessary repairs to the distressed horse stable and

15 arena. (*See* Bennett's Bankruptcy Schedule I).

16 **3.    THE RECEIVER SHOULD BE EXCUSED FROM TURNOVER AND THE**

17 **STAY SHOULD BE ANNULLED BECAUSE THERE IS NO LIKELIHOOD**

18 **THAT BENNETT WILL BE ABLE TO REORGANIZE, AND THE DESPERATE**

19 **CONDITION OF THE SUBJECT PROPERTY IS THE RESULT OF BENNETT'S**

20 **MISMANAGEMENT**

21     Typically, a receiver who has notice of a bankruptcy must immediately turn over

22 all assets of the bankruptcy estate to the bankruptcy trustee. (11 U.S.C. § 543 (a) and (b);

23 *In re Lizeric Realty Corp.*, (1995), 188 B.R. 499, 506). However, bankruptcy courts have

24 discretion to waive that requirement if the interests of creditors would be better served by

25 continuing the receiver in possession. (*In re Corporate and Leisure Event Productions,*

26 *Inc.,* (2006), 351 B.R. 724, 732). Courts use a three pronged test in deciding whether to

27 ─────────────────────

[1] Bennett's sole source of income is a stipend from the state for a foster child. (*See*

28 Bennett bankruptcy Schedule I, Number 13). Subsequent to his arrest on August 19,
2011, Child Protective Services removed the child from his custody. (Dec. of Ryan ¶ 8).

4

TGF 00474

THE RYAN FIRM
A Professional Corporation

1  waive this turnover requirement. Specifically, courts examine: 1. The debtor's

2  likelihood of reorganization; 2. The probability that funds required for reorganization will

3  be available; and 3. Whether the evidence shows mismanagement of the property by the

4  debtor. (*In re Bryan Manor, LLC*, (2010), 422 B.R. 278, 289). According to the facts set

5  forth above, each of these tests weighs overwhelmingly in favor of excusing the turnover

6  requirement and annulling the bankruptcy stay as it relates to the Lassen County Superior

7  Court Receivership Order.

8      **a.**    **There is no likelihood that Bennett will be able to reorganize because**

9  **there are absolutely no funds available to Bennett for reorganization**

10      According to all of the facts set forth above, there is no likelihood that Bennett

11  will be able to reorganize. First, Bennett's sole source of income is a foster-child stipend

12  totaling $680.00 per month. Currently, that source of income is in jeopardy. (*See*

13  Footnote 1 above). Furthermore, the operation of a horse-boarding business on the

14  Subject Property has ground to a halt, and cannot improve until all of the necessary,

15  extensive, costly repairs are made to the facilities. Therefore, there are absolutely no

16  funds available to Bennett for reorganization.

17      Likewise, it will likely require thousands of dollars and months of labor before the

18  Subject Property is in any condition resume business activities. Clearly, Bennett is in no

19  financial position to effectuate reorganization.

20      **b.**    **Bennett has severely mismanaged the Subject Property**

21      According to the extensive facts set forth above, Bennett is solely

22  responsible for the current state of the Subject Property. These conditions include:

23      •     Rotting carcasses of approximately twenty-four horses (who likely

24      perishes as a result of starvation), which were left for scavengers.

25      •     A large herd of equines that is permitted to roam the Subject

26      Property, without any restraint.

27      •     Stalls in the stable that are literally buried feet deep in horse dung.

28      •     Broken fencing, co-mingling of mares and stallions, and

**THE RYAN FIRM**
A Professional Corporation

5

TGF 00475

indiscriminate breeding.

- Animals roaming freely amongst mountains of discarded personal property, such as toilets and old washing machines.

- Animals exhibiting severe malnutrition.

- A horse boarding business that has been decimated and cannot be revived without extensive repairs to the facilities on the Subject Property.

- A group of squatters living on the Subject Property who refuse to leave, at Bennett's urging, and who burn garbage on the Subject Property during fire season.

- Default on a loan held by Creditors that is secured by the Subject Property.

Clearly, these facts establish egregious mismanagement by Bennett. Turnover of the Subject Property to Bennett will obviously cause a remission of all of the progress made by the Receiver since July 21, 2011.

**c.    The Receiver should be excused from the turnover requirement of 11 U.S.C. §543 (a) and (b) and the bankruptcy stay should be annulled, allowing all issues regarding the Receivership to be determined by the Lassen County Superior Court**

As has been established in sections 3(a) and (b) above, the facts of this case establish grounds for excuse of the turnover requirement. In stark contrast to Bennett's reckless mismanagement of the Subject Property, the Receiver has begun the arduous task of repairing the harm done by Bennett. As established above, the Receiver has made arrangements for the transfer of the remaining horses to the Shelter where they will receive necessary medical and rehabilitation care. The Receiver has identified all issues and implemented a plan whereby the decline in the facilities on the Subject Property may be halted and the assets preserved for the benefit of creditors. The necessity for maintaining the Receiver could not be more clear.

Therefore, Creditors request that the turnover requirement be excused under 11

---

Memorandum of Points and Authorities

THE RYAN FIRM
A Professional Corporation

TGF 00476

U.S.C. §543 (d).  Furthermore, Creditors request an order annulling the bankruptcy stay, thereby ratifying all of the Receiver's post-petition acts and restoring authority over the Receivership estate to the Lassen County Superior Court.

**4.      THIS MOTION SHOULD BE HEARD ON SHORTENED NOTICE PURSUANT TO LBR 9014-1 (f) (3) BECAUSE OF THE MANY EXIGENCIES INVOLVED IN MANAGING THE SUBJECT PROPERTY**

Creditors request that this motion be heard on Monday, August 29, 2011. Creditors request this hearing on shortened notice because the bankruptcy stay and the turnover requirement cloud the Receiver's ability to perform her duties, some of which are extremely urgent.  Most importantly, the turnover requirement and bankruptcy stay disrupt the Receiver's transfer of the Remaining Horses to the Shelter.  Many of the horses are malnourished, some are pregnant, and others are in desperate need of hoof care by a farrier.  Every day that this transfer is delayed puts the health and safety of the horses in further jeopardy.  Also, the turnover requirement and bankruptcy stay prevents the Receiver from removing the reckless squatters.  Last, Bennett is due to be released from jail on the morning of August 24, 2011, where, without an order from this court excusing the turnover requirement and annulling the bankruptcy stay, he is sure to interfere with all of the Receiver's court appointed duties, causing harm to the Subject Property and everything on it.  (Dec. of Ryan ¶ 7, Ex. 2, attached to the List of Exhibits filed concurrently herewith).  Therefore, this motion must be heard immediately, Monday August 29, 2011, being the soonest possible hearing date.

Furthermore, there has been no delay in the filing of this motion.  Creditors and the Receiver received notice of this bankruptcy on August 19, 2011.  (Declaration of Austin T. Beardsley, "Dec. of Beardsley," ¶ 3).  Upon receipt of notice, counsel for Creditors immediately began research on the effect of the bankruptcy on the Receivership.  (Dec. of Beardsley ¶ 4).  Since that time, Austin T. Beardsley, an associate of The Ryan Firm, counsel for Creditors, has devoted all of his work time to researching and drafting this motion, and procuring all of the necessary declarations.  (Dec. of

7

THE RYAN FIRM
A Professional Corporation

TGF 00477

1    Beardsley ¶ 5).  This motion and its accompanying application for hearing on shortened

2    notice are being filed with the court immediately upon completion.  (Dec. of Beardsley ¶

3    6).  Therefore, this court should grant Creditors' application and set this motion for

4    hearing at 10:00 a.m. on Monday, August 29, 2011.

5    **5.    CONCLUSION**

6          As a result of the foregoing, Creditors' motion should be granted in its entirety,

7    and this court should issue an order excusing the Receiver from the turnover requirement

8    and annulling the bankruptcy stay as it relates to the Receivership.

9    DATED:        August 25, 2011                    THE RYAN FIRM
                                                      A Professional Corporation
10

11

12
                                              By:   /S/ AUSTIN T. BEARDSLEY
13                                                  TIMOTHY M. RYAN
                                                    AUSTIN T. BEARDSLEY
14                                                  Attorneys for Creditors WELLS
                                                    FARGO  BANK, N.A., as Trustee for
15                                                  MLMI Trust Series 2005-HE3; and
                                                    BAC HOME LOANS  SERVICING,
16                                                  LP

17

18

19

20

21

22

23

24

25

26

27

28

THE RYAN FIRM
A Professional Corporation

8

TGF 00478

# EXHIBIT J

FILED
August 25, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003726976

1 Timothy M. Ryan, Bar No. 178059
Austin T. Beardsley, Bar No. 270046
2 THE RYAN FIRM
A Professional Corporation
3 1100 N. Tustin Avenue, Suite 200
Anaheim, California 92807
4 Telephone (714) 666-1362; Fax (714) 666-1443

5 Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust
Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited
6 partnership,

7                    UNITED STATES BANKRUPTCY COURT

8                     EASTERN DISTRICT OF CALIFORNIA

9

10

11 In re:                              ) CASE NO.: 11-40155
                                       ) Chapter: 11
12 Dwight Bennett                      ) Dated Filed: August 18, 2011
                                       )
13            Debtor,                  ) Assigned for All Purposes to
                                       ) Hon. Michael S. McManus
14                                     ) Courtroom: 28
                                       )
15                                     ) DECLARATION OF VICKI LOZANO IN
                                       ) SUPPORT OF CREDITORS WELLS
16                                     ) FARGO BANK, N.A. AND BAC HOME
                                       ) LOANS SERVICING, LP'S MOTION TO
17                                     ) EXCUSE TURNOVER BY RECEIVER
                                       )
18                                     ) Date:       August 29, 2011
                                       ) Time:       10:00 a.m.
19                                     ) Courtroom: 28
                                       )
20                                     ) Trial Date:  None set.
21                                     )

22     I, Vicki Lozano, declare:

23         1.    I am over the age of eighteen and I am competent to make this declaration.

24         2.    I am the court appointed receiver of the real property commonly referred to

25 as 695-725 Highway 36, Susanville, CA 96130 (the "Subject Property"). I was appointed

26 as the receiver by the Court in a written order issued on July 21, 2011. I have personal

27 knowledge of the facts stated in this declaration, and if called upon to do so, I could and

28 would competently testify thereto.

                                        1

                            Declaration of Vicki Lozano

THE RYAN FIRM
A Professional Corporation

5.

00504

THE RYAN FIRM
A Professional Corporation

3.      On the same day I was appointed the receiver in this matter (July 21, 2011), I personally visited the Subject Property in order to begin my investigation and inventory of the items present.

4.      During my inspection, I took photographs of the conditions present on the Subject Property, some of which are attached as Exhibit 3 to the List of Exhibits, filed concurrently herewith.  These photographs depict my observation of the conditions of the Subject Property and the animals thereon.  I am familiar with the content of the photographs because I personally reviewed them when I downloaded them from my camera, and when I transmitted them to counsel for Wells Fargo Bank, N.A.  I am therefore familiar with the content depicted therein, and the photographs fairly and accurately depict the conditions I observed during my inspection.

5.      During my inspection, I observed the following conditions:

a)      That the equines on the Subject Property were roaming freely, without restraint.  (See Ex.3, photographs 1-4, attached to List of Exhibits filed herewith.)

b)      That many of the equines on the Subject Property appeared malnourished, and had ribs markedly showing.  (See Ex. 3, photographs 5-9, attached to List of Exhibits filed concurrently herewith)

c)      That several of the equines on the Subject Property appeared to be pregnant, due to the fact that a stallion is allowed to roam free among over thirty (30) mares.  (See Ex. 3, photographs 10-12, attached to the List of Exhibits.)

d)      That the fencing and stables are in a high degree of disrepair and largely inadequate to pen in any animals.  (See Ex. 3, photographs 13-27, attached to the List of Exhibits filed concurrently herewith.)  I have determined, upon counseling with several contractors, that repairs will cost many thousands of dollars.

e)      That there are approximately twenty-four horse carcasses in various states of decay that had been left to rot.  (See Ex.3, photographs 28-34, attached to List of Exhibits filed concurrently herewith.)

2

Declaration of Vicki Lozano

00505

f) That there are several vehicles, trailers, and farm equipment littering the Subject Property, and that these vehicles, trailers, and farm equipment appear to be inoperable. (See Ex. 3, photographs 35-40, attached to List of Exhibits.)

g) That the Subject Property is littered with discarded personal items, such as a toilet, washing machine, plastic hampers, and other debris, and that the animals on the Subject Property are freely roaming amongst the garbage heaps. (See Ex. 3, photographs 41-59, attached to the List of Exhibits filed concurrently herein.)

h) That the equines are kept in filthy conditions, such as un-cleaned "muck" (i.e., voluminous horse feces). For example, the majority of the stalls in the stable are filled with mountains of feces. One of these stalls has a front loading tractor in it, indicating that someone was attempting to clean up the stalls immediately prior to my arrival. (See Ex. 3, photographs 66-72, attached to the List of Exhibits filed concurrently herewith.)

6. During my inspection, I also observed that the equines appeared to have been in a near starvation state for quite some time. For example, when I had hay delivered to the Subject Property on July 21, 2011, the equines immediately flocked around and followed the delivery truck and tried eating directly from the truck bed. Since that time, I have been providing regular feedings of hay to alleviate their hunger.

7. Upon my discovery of the state of the horses I immediately contacted the County of Lassen. Since that date, I have worked with the County of Lassen and a horse shelter known as The Grace Foundation of Northern California ("Grace Foundation") in order to provide immediate necessary care for the horses. We have secured funding and established a plan for transfer of the horses to the Grace Foundation where they will be provided all necessary food, shelter and medical care.

8. The County of Lassen and the Grace Foundation are prepared to immediately execute the transfer of the horses.

9. During my interactions with Dwight Bennett since I was appointed Receiver over the Subject Property, he has insisted, and continues to insist that he will

3

Declaration of Vicki Lozano

THE RYAN FIRM
A Professional Corporation

1    not relinquish possession of the Subject Property, turn over any business records, or

2    cooperate with any effort to have the horses relocated to the Grace Foundation.

3        10.    Furthermore, there are three squatters who inhabit the Subject Property. I

4    have requested that they relinquish possession of the Subject Property pursuant to the

5    order appointing receiver. On or about August 22, 2011, they informed me that they will

6    not leave because Dwight Bennett has advised them to retain possession of the Subject

7    Property.

8        11.    On more than one occasion, I have observed these squatters burning garbage

9    on the Subject Property, establishing a serious threat of danger to the property.

10        I declare under penalty of perjury under the laws of the State of California that the

11    foregoing is true and correct. Executed on [illegible] , at Susanville, California.

12

13

14                        VICKI LOZANO – DECLARANT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Declaration of Vicki Lozano

THE RYAN FIRM
A Professional Corporation

00507

# EXHIBIT L

August 25, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003726973

1  Timothy M. Ryan, Bar No. 178059
   Austin T. Beardsley, Bar No. 270046
2  THE RYAN FIRM
   A Professional Corporation
3  1100 N. Tustin Avenue, Suite 200
   Anaheim, California 92807
4  Telephone (714) 666-1362; Fax (714) 666-1443

5  Attorneys for Creditors WELLS FARGO BANK, N.A., as Trustee for MLMI Trust
6  Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited
   partnership,

7                 UNITED STATES BANKRUPTCY COURT

8                 EASTERN DISTRICT OF CALIFORNIA

9

10

11  In re:                              )  CASE NO.: 11-40155
                                        )  Chapter: 11
12  Dwight Bennett                      )  Dated Filed: August 18, 2011
                                        )
13              Debtor,                 )  Assigned for All Purposes to
                                        )  Hon. Michael S. McManus
14                                      )  Courtroom: 28
                                        )
15                                      )  **NOTICE OF MOTION AND**
                                        )  **CREDITORS WELLS FARGO BANK,**
16                                      )  **N.A. AND BAC HOME LOANS**
                                        )  **SERVICING, LP'S MOTION TO**
17                                      )  **EXCUSE TURNOVER BY RECEIVER**
                                        )  **PURSUANT TO 11 U.S.C. §543 (D);**
18                                      )  **MEMORANDUM OF POINTS AND**
                                        )  **AUTHORITIES**
19                                      )
                                        )
20                                      )  Date:      August 29, 2011
                                        )  Time:      10:00 a.m.
21                                      )  Courtroom: 28
                                        )
22                                      )  Trial Date:  None set.
                                        )
23                                      )

24          **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25          **PLEASE TAKE NOTICE THAT** on Monday, August 29, 2011, at 10:00 a.m. in

26  Department A, Courtroom 28 of the above entitled court located at 501 I Street, Suite 3-

27  200, Sacramento, California 95814, Creditors WELLS FARGO BANK, N.A., as Trustee

28  for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas

TGF 00479

*(Left margin, vertical text)* THE RYAN FIRM / A Professional Corporation

1   limited partnership, (hereafter referred to as "Creditors") will move and hereby do move

2   the court for an order to excuse turnover by receiver pursuant to 11 U.S.C. §543 (d) (1),

3   including an annulment of the stay so that the filing of the subject bankruptcy petition

4   does not affect post-petition acts, and to allow all issues regarding the subject

5   Receivership to be determined by the Receiver's appointing Court as if this bankruptcy

6   case had not been commenced.

7          This motion is based on the attached memorandum of points and authorities, the

8   request for judicial notice and the declarations of Michael Russell, Vicki Lozano, Austin

9   T. Beardsley and Timothy M. Ryan filed concurrently herewith.

10  DATED:        August 25, 2011              THE RYAN FIRM
                                               A Professional Corporation
11

12

13                                             By:   /S/ AUSTIN T. BEARDSLEY
14                                                  TIMOTHY M. RYAN
                                                   AUSTIN T. BEARDSLEY
15                                                 Attorneys for Creditors WELLS
                                                   FARGO  BANK, N.A., as Trustee for
16                                                 MLMI Trust Series 2005-HE3; and
                                                   BAC HOME LOANS  SERVICING,
17                                                 LP

18

19

20

21

22

23

24

25

26

27

28

2

Notice of Motion and Motion

**TGF 00480**

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION AND SUMMARY

Creditors FARGO BANK, N.A., as Trustee for MLMI Trust Series 2005-HE3; and BAC HOME LOANS SERVICING, LP, a Texas limited partnership, (hereinafter referred to as "Creditors") seek an order excusing turnover of estate property by receiver Vicki Lozano ("Receiver") pursuant to 11 U.S.C. §543 (D) to debtor Dwight Bennett ("Bennett"). Creditors further seek an order annulling the stay so that the filing of the subject bankruptcy petition does not affect post-petition acts, allowing all issues regarding the subject Receivership to be determined by the Receiver's appointing Court.

The relief sought is necessary there because there is no likelihood of Bennett's ability to reorganize because there are no funds available for reorganization. Furthermore, all of the problems plaguing the subject property, commonly known as 695-725 Highway 36, Susanville, California 96130 (the "Subject Property"), including the death by starvation of more than a score of horses (whose corpses still litter the acreage of the Subject Property) have been caused directly by Mr. Bennett's "management." Therefore, this motion should be granted and the stay should be annulled, restoring the Receiver's authority over the Subject Property as directed by the Lassen County Superior Court.

Furthermore, this motion should be heard on shortened notice under LBR §9014-1 (f) (3) because the bankruptcy stay clouds the Receiver's authority to manage the ailing property. Specifically, the bankruptcy stay impedes the Receiver's ability to transfer the remaining, severely neglected, thirty four (34) horses ("Remaining Horses"), as ordered by the Lassen County Superior Court, from the dilapidated Subject Property to a rehabilitation facility where the horses will receive necessary and immediate medical treatment.

## 2.    FACTS

On or about July 21, 2011, the Receiver was appointed by the Lassen County Superior Court over the Subject Property. (*See* Request for Judicial Notice "RFJN"

1

TGF 00481

THE RYAN FIRM
A Professional Corporation

Exhibit 4) According to the receivership order ("Receivership Order"), the Receiver was

empowered to take possession of the Subject Property and to undertake any necessary

endeavors to stabilize the financial condition of the Subject Property, including the affairs

of what was thought to be an operating horse ranch. (*See* RFJN Ex. 4 ¶¶ 3-4, attached to

the List of Exhibits filed concurrently herewith) On or about the same day, July 21, 2011,

the Receiver entered the Subject Property. (*See* Declaration of Vicki Lozano, "Dec. of

Lozano," ¶ 3). Instead of an operating horse ranch, the Receiver beheld a surreal scene of

disarray, decay and even death. The Subject Property's stables were inundated with

mounds of horse feces inside and out. (Dec. of Lozano ¶ 5 (i), Ex.3, photographs 66-72,

attached to the List of Exhibits filed concurrently herewith). The horses, unable to be

housed in the stables, ran wild as a herd. (Dec. of Lozano ¶ 5 (a), Ex. 3, photographs 1-4,

attached to the List of Exhibits filed concurrently herewith). Most of the horses appeared

severely malnourished and under weight. (Dec. of Lozano ¶ 5 (b), Ex. 3, photographs 5-

9, attached to the List of Exhibits filed concurrently herewith). The only horses that

appeared to be above average weight were mares that had been impregnated by the

stallion with whom they had been allowed to roam free. (Dec. of Lozano ¶ 5 (c), Ex.3,

photograph 10-12, attached to the List of Exhibits filed concurrently herewith). Most

troubling, however, was the sight of several horse carcasses, in differing states of decay,

littering the formerly idyllic meadows of the Subject Property. (Dec. of Lozano ¶ 5 (e),

Ex. 3, photographs 28-33, attached to the List of Exhibits filed concurrently herewith). In

addition to the tragic state of the horses on the Subject Property, the Receiver discovered

that the stables and horse arena were in a state of extreme disrepair, and the once steady

horse-boarding business had dwindled to one boarded horse. (Dec. of Lozano ¶ 5 (d), Ex.

3, photograph 13-27, attached to the List of Exhibits filed concurrently herewith).

Furthermore, prior to appointment of the Receiver, in or about April 2011,

representatives of the County of Lassen Department of Public Works ("Department")

began inspecting the Subject Property. (Declaration of Michael Russell, "Dec. of

Russell," ¶ 4). Upon discovering the tragic state of the animals on the Subject Property,

THE RYAN FIRM
A Professional Corporation

2

TGF 00482

1  the Department hired a veterinarian to assess their condition.  (Dec. of Russell ¶ 4).

2  According to the veterinarian, who evaluated the horses on or about April 12, 2011, the

3  entire herd was in extremely poor health.  (Dec. of Russell ¶ 6 (a)-(j), Ex. 1, attached to

4  the List of Exhibits filed concurrently herewith).  The collective condition of the herd

5  reflected an extreme lack of proper feeding and care.  (Dec. of Russell ¶ 6 (a)-(j), Ex. 1,

6  attached to the List of Exhibits filed concurrently herewith.)  The state of approximately

7  twenty (20) horses at that time was so dire that that they were immediately removed in

8  order to save their lives.  (Dec. of Russell ¶ 4).  During the intervening months, until the

9  appointment of the Receiver in late July, 2011, the Remaining Horses' health did not

10  improve.  (Dec. of Lozano ¶ 5).  However, since the appointment of the Receiver, the

11  Remaining Horses have been fed regularly.  (Dec. of Lozano ¶ 6).

12      To address the critical state of the Remaining Horses on the Subject Property, the

13  Receiver worked closely with the Department and a non-profit rescue shelter ("Shelter")

14  to provide a stable solution for rehabilitating them.  (Dec. of Lozano ¶ 7).  The receiver,

15  working with the Shelter, secured a $40,000.00 grant from Creditors to fund the transfer

16  of the Remaining Horses.  (Declaration of Timothy M. Ryan, "Dec. of Ryan," ¶ 6).  This

17  grant includes funds sufficient to provide proper medical care, food and shelter to all of

18  the Remaining Horses for a period of six (6) months.  (Dec. of Ryan ¶ 6).  Upon a

19  showing of this grave necessity, the Lassen County Superior Court signed an order

20  ("Surrender Order") granting the Receiver authority to surrender the Remaining Horses

21  to the Shelter through the County.  (RFJN Ex. 5, attached to the List of Exhibits filed

22  concurrently herewith).  The Receiver, the Department and the Shelter seek to make this

23  transfer immediately, as most of the horses require immediate medical attention, and a

24  handful of the pregnant horses are preparing to foal.  (Dec. of Lozano ¶¶ 5, 8).  The

25  turnover requirement jeopardizes this transfer because Bennett insists that he will not

26  surrender custody of the Remaining Horses to anyone.  (Dec. of Lozano ¶ 9).

27      During the pendency of the Receivership, Bennett has failed to comply with all of

28  the requirements of the Receivership Order, including the requirements that Bennett

THE RYAN FIRM
A Professional Corporation

3

TGF 00483

1  relinquish possession of the Subject Property and turn over all records relating to the

2  operation of the horse ranch.  (RFJN Ex. 4, ¶¶ 8-9, attached to the List of Exhibits filed

3  concurrently herewith; Dec. of Lozano ¶ 9).  In fact, on August 19, 2011, Bennett was

4  found in contempt of the Receivership Order for failing to turn over possession of the

5  Subject Property and the requisite business records and was sentenced to serve five (5)

6  days in Lassen County Jail.  (Dec. of Ryan ¶ 7, Ex. 2, attached to the List of Exhibits

7  filed concurrently herewith).  Bennett also encourages a group of squatters to retain

8  possession of the Subject Property in defiance of the Receivership Order.  (Dec. of

9  Lozano ¶ 10).  These squatters continually jeopardize the safety of the Subject Property

10 by burning garbage on the Subject Property during the peak of fire season.  (Dec. of

11 Lozano ¶ 11; Dec. of Ryan ¶ 4).

12       Last, according to his bankruptcy petition, Bennett has an income of no more than

13 $680.00 per month[1] making it all but impossible to care for himself and the Remaining

14 Horses, as well as making all of the necessary repairs to the distressed horse stable and

15 arena.  (*See* Bennett's Bankruptcy Schedule I).

16 **3.     THE RECEIVER SHOULD BE EXCUSED FROM TURNOVER AND THE**

17 **STAY SHOULD BE ANNULLED BECAUSE THERE IS NO LIKELIHOOD**

18 **THAT BENNETT WILL BE ABLE TO REORGANIZE, AND THE DESPERATE**

19 **CONDITION OF THE SUBJECT PROPERTY IS THE RESULT OF BENNETT'S**

20 **MISMANAGEMENT**

21       Typically, a receiver who has notice of a bankruptcy must immediately turn over

22 all assets of the bankruptcy estate to the bankruptcy trustee.  (11 U.S.C. § 543 (a) and (b);

23 *In re Lizeric Realty Corp.*, (1995), 188 B.R. 499, 506).  However, bankruptcy courts have

24 discretion to waive that requirement if the interests of creditors would be better served by

25 continuing the receiver in possession.  (*In re Corporate and Leisure Event Productions,*

26 *Inc.,* (2006), 351 B.R. 724, 732).  Courts use a three pronged test in deciding whether to

27 _____

28 [1] Bennett's sole source of income is a stipend from the state for a foster child.  (*See*
Bennett bankruptcy Schedule I, Number 13).  Subsequent to his arrest on August 19,
2011, Child Protective Services removed the child from his custody.  (Dec. of Ryan ¶ 8).

4

THE RYAN FIRM
A Professional Corporation

1  waive this turnover requirement.  Specifically, courts examine:  1. The debtor's

2  likelihood of reorganization; 2. The probability that funds required for reorganization will

3  be available; and 3. Whether the evidence shows mismanagement of the property by the

4  debtor.  (*In re Bryan Manor, LLC*, (2010), 422 B.R. 278, 289).  According to the facts set

5  forth above, each of these tests weighs overwhelmingly in favor of excusing the turnover

6  requirement and annulling the bankruptcy stay as it relates to the Lassen County Superior

7  Court Receivership Order.

8        **a.**      **There is no likelihood that Bennett will be able to reorganize because**

9  **there are absolutely no funds available to Bennett for reorganization**

10        According to all of the facts set forth above, there is no likelihood that Bennett

11  will be able to reorganize.  First, Bennett's sole source of income is a foster-child stipend

12  totaling $680.00 per month.  Currently, that source of income is in jeopardy.  (*See*

13  Footnote 1 above).  Furthermore, the operation of a horse-boarding business on the

14  Subject Property has ground to a halt, and cannot improve until all of the necessary,

15  extensive, costly repairs are made to the facilities.  Therefore, there are absolutely no

16  funds available to Bennett for reorganization.

17        Likewise, it will likely require thousands of dollars and months of labor before the

18  Subject Property is in any condition resume business activities.  Clearly, Bennett is in no

19  financial position to effectuate reorganization.

20        **b.**      **Bennett has severely mismanaged the Subject Property**

21        According to the extensive facts set forth above, Bennett is solely

22  responsible for the current state of the Subject Property.  These conditions include:

23        •      Rotting carcasses of approximately twenty-four horses (who likely

24        perishes as a result of starvation), which were left for scavengers.

25        •      A large herd of equines that is permitted to roam the Subject

26        Property, without any restraint.

27        •      Stalls in the stable that are literally buried feet deep in horse dung.

28        •      Broken fencing, co-mingling of mares and stallions, and

THE RYAN FIRM
A Professional Corporation

5

TGF 00485

THE RYAN FIRM
A Professional Corporation

1  indiscriminate breeding.

2  •  Animals roaming freely amongst mountains of discarded personal
3  property, such as toilets and old washing machines.

4  •  Animals exhibiting severe malnutrition.

5  •  A horse boarding business that has been decimated and cannot be
6  revived without extensive repairs to the facilities on the Subject Property.

7  •  A group of squatters living on the Subject Property who refuse to
8  leave, at Bennett's urging, and who burn garbage on the Subject Property
9  during fire season.

10  •  Default on a loan held by Creditors that is secured by the Subject
11  Property.

12  Clearly, these facts establish egregious mismanagement by Bennett. Turnover of
13  the Subject Property to Bennett will obviously cause a remission of all of the progress
14  made by the Receiver since July 21, 2011.

15  **c.  The Receiver should be excused from the turnover requirement of 11**
16  **U.S.C. §543 (a) and (b) and the bankruptcy stay should be annulled, allowing all**
17  **issues regarding the Receivership to be determined by the Lassen County Superior**
18  **Court**

19  As has been established in sections 3(a) and (b) above, the facts of this case
20  establish grounds for excuse of the turnover requirement. In stark contrast to Bennett's
21  reckless mismanagement of the Subject Property, the Receiver has begun the arduous
22  task of repairing the harm done by Bennett. As established above, the Receiver has made
23  arrangements for the transfer of the remaining horses to the Shelter where they will
24  receive necessary medical and rehabilitation care. The Receiver has identified all issues
25  and implemented a plan whereby the decline in the facilities on the Subject Property may
26  be halted and the assets preserved for the benefit of creditors. The necessity for
27  maintaining the Receiver could not be more clear.

28  Therefore, Creditors request that the turnover requirement be excused under 11

6

Memorandum of Points and Authorities

1  U.S.C. §543 (d).  Furthermore, Creditors request an order annulling the bankruptcy stay,

2  thereby ratifying all of the Receiver's post-petition acts and restoring authority over the

3  Receivership estate to the Lassen County Superior Court.

4  **4.      THIS MOTION SHOULD BE HEARD ON SHORTENED NOTICE**

5  **PURSUANT TO LBR 9014-1 (f) (3) BECAUSE OF THE MANY EXIGENCIES**

6  **INVOLVED IN MANAGING THE SUBJECT PROPERTY**

7        Creditors request that this motion be heard on Monday, August 29, 2011.

8  Creditors request this hearing on shortened notice because the bankruptcy stay and the

9  turnover requirement cloud the Receiver's ability to perform her duties, some of which

10  are extremely urgent.  Most importantly, the turnover requirement and bankruptcy stay

11  disrupt the Receiver's transfer of the Remaining Horses to the Shelter.  Many of the

12  horses are malnourished, some are pregnant, and others are in desperate need of hoof care

13  by a farrier.  Every day that this transfer is delayed puts the health and safety of the

14  horses in further jeopardy.  Also, the turnover requirement and bankruptcy stay prevents

15  the Receiver from removing the reckless squatters.  Last, Bennett is due to be released

16  from jail on the morning of August 24, 2011, where, without an order from this court

17  excusing the turnover requirement and annulling the bankruptcy stay, he is sure to

18  interfere with all of the Receiver's court appointed duties, causing harm to the Subject

19  Property and everything on it.  (Dec. of Ryan ¶ 7, Ex. 2, attached to the List of Exhibits

20  filed concurrently herewith).  Therefore, this motion must be heard immediately, Monday

21  August 29, 2011, being the soonest possible hearing date.

22        Furthermore, there has been no delay in the filing of this motion.  Creditors and

23  the Receiver received notice of this bankruptcy on August 19, 2011.  (Declaration of

24  Austin T. Beardsley, "Dec. of Beardsley," ¶ 3).  Upon receipt of notice, counsel for

25  Creditors immediately began research on the effect of the bankruptcy on the

26  Receivership.  (Dec. of Beardsley ¶ 4).  Since that time, Austin T. Beardsley, an associate

27  of The Ryan Firm, counsel for Creditors, has devoted all of his work time to researching

28  and drafting this motion, and procuring all of the necessary declarations.  (Dec. of

**THE RYAN FIRM**
A Professional Corporation

7

---

Memorandum of Points and Authorities

Case 11-40155    Filed 02/10/14    Doc 265

1   Beardsley ¶ 5).  This motion and its accompanying application for hearing on shortened

2   notice are being filed with the court immediately upon completion.  (Dec. of Beardsley ¶

3   6).  Therefore, this court should grant Creditors' application and set this motion for

4   hearing at 10:00 a.m. on Monday, August 29, 2011.

5   **5.      CONCLUSION**

6          As a result of the foregoing, Creditors' motion should be granted in its entirety,

7   and this court should issue an order excusing the Receiver from the turnover requirement

8   and annulling the bankruptcy stay as it relates to the Receivership.

9   DATED:       August 25, 2011              THE RYAN FIRM
                                              A Professional Corporation
10

11

12

13                                           By:   /S/ AUSTIN T. BEARDSLEY
                                                   TIMOTHY M. RYAN
14                                                 AUSTIN T. BEARDSLEY
                                                   Attorneys for Creditors WELLS
15                                                 FARGO  BANK, N.A., as Trustee for
                                                   MLMI Trust Series 2005-HE3; and
16                                                 BAC HOME LOANS  SERVICING,
                                                   LP.
17

18

19

20

21

22

23

24

25

26

27

28

THE RYAN FIRM
A Professional Corporation

8

Memorandum of Points and Authorities

TGF 00488