BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

1  Sharon Z. Weiss, California Bar No. 169446
BRYAN CAVE LLP
2  120 Broadway, Suite 300
Santa Monica, California 90401-2386
3  Telephone:      (310) 576-2100
Facsimile:      (310) 576-2200
4  sharon.weiss@bryancave.com

5  Bahareh Wullschleger, California Bar No. 258903
BRYAN CAVE LLP
6  560 Mission Street, 25th Floor
San Francisco, CA 94105
7  Telephone:      415-675-3400
Facsimile:      415-675-3434
8  Email:            bahareh.wullschleger@bryancave.com

9  Attorneys for
BANK OF AMERICA, N.A., as successor by merger to BAC HOME LOANS SERVICING, L.P.
10  and WELLS FARGO BANK, N.A. as Trustee for MLMI Trust Series 2005-HE3

11

12  **UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**
13

14  In re                                                    Case No. 11-40155
                                                            DC No. CLG-2
15  DWIGHT ALLAN BENNETT,
                                                            Converted to Chapter 7
16          Debtor.

17                                                          **OPPOSITION OF BANK OF AMERICA,**
**N.A., AS SUCCESSOR BY MERGER TO**
18                                                          **BAC HOME LOANS SERVICING, L.P.**
**AND WELLS FARGO BANK, N.A. AS**
19                                                          **TRUSTEE FOR THE MLMI TRUST**
**SERIES 2005-HE3 TO THE GRACE**
20                                                          **FOUNDATION'S MOTION TO STRIKE**
**DECLARATION OF MICHAEL RUSSELL,**
21                                                          **DVM AND FOR EQUITABLE LIEN**
**AGAINST DEBTOR'S REAL PROPERTY**
22

23                                                          Date:        March 10, 2014
                                                            Time:        10:00 a.m.
24                                                          Room:        Crtrm 28, Dept. A
                                                            Address:    501 I Street, Suite 3-200
25                                                                          Sacramento, CA 95814
                                                            Judge:      Hon. Michael McManus
26

27

28

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

I.      **<u>INTRODUCTION</u>**

The Grace Foundation seeks relief to which it is not entitled on either procedural or substantive grounds.  The Foundation has filed an out-of-context Motion to strike a declaration, untethered to a substantive motion.  In reality, the Grace Foundation brings an untimely motion to set aside this Court's Order that was entered over two and a half years ago, supposedly based on a declaration on which the Court did not rely.  More alarming, the Grace Foundation seeks relief in this Court that the Lassen County Superior Court has already denied on multiple occasions because the <u>exact same relief</u> is already the subject of a pending lawsuit in Orange County Superior Court – raising serious questions regarding the litigation tactics at play here.  And, to the extent that it is even relevant, the declaration at issue was both authorized and factually correct.

The Grace Foundation should not be permitted to use this Court to gain leverage in its concurrently pending state court action, or to obtain relief that another court has already denied.  It has made no procedural or substantive showing in support of the pending Motion, and has never made an intelligible request for relief.

Specifically, this Court should deny this Motion on the following grounds.

First, the Motion to Strike is procedurally defective.  It is an evidentiary objection that should have been brought at or before the time the *ex parte* Application was heard.

Second, the Motion to Strike is a disguised motion for relief from an October 21, 2011 Order of this Court.  This disguised motion fails because it should have been brought within a year of that order and there is no reasonable basis for this excessive delay.  It also fails because the Court did not rely on the Declaration of Dr. Michael Russell when it made its October 21, 2011 Order.

Third, the allegations of misrepresentations are simply false, and the declaration was made with the cooperation of the Grace Foundation and with the authority of Dr. Russell.

Fourth, the requested relief in the form of an equitable lien against the Debtor's real property is made with no legal or factual support.  The Grace Foundation has already asserted its alleged claims through a supposed lien that the Grace Foundation claims was filed in El Dorado Superior Court; has already asserted its alleged claims in an action brought by the Grace

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

1    Foundation and currently pending in Orange County Superior Court; and has already attempted to

2    assert its alleged claims by intervening in a Lassen County Superior Court action, which attempts

3    that Court has repeatedly denied.

4          The Motion to Strike should be denied in its entirety.

5    **II.    STATEMENT OF FACTS**

6          On August 25, 2011, the Banks, through their prior counsel, the Ryan Firm, filed an *ex*

7    *parte* Application to Excuse Turnover by Receiver.  (Docket Entry 14.)  The *ex parte* Application

8    was based in part on the need for a Lassen County Superior Court-appointed Receiver to transfer

9    dozens of injured horses off real property located at 695-725 Highway 36, Susanville, California

10   96130 (the "Subject Property").  The Lassen County Superior Court had previously entered an

11   order permitting the Receiver to surrender the horses to Lassen County, which would then transfer

12   the horses to the Grace Foundation.  (Docket Entries 261 and 265, Ex. F to Request for Judicial

13   Notice in Support of the Grace Foundation's Motion to Strike.)  The Debtor, Mr. Bennett, filed a

14   voluntary Chapter 11 bankruptcy after the Lassen Court's order but before the horses were

15   transferred.  Mr. Bennett claimed both the Subject Property and the horses as assets.  (*See*

16   Debtor's Summary of Schedules, Docket Entry 40.)  The Banks filed the *ex parte* Application in

17   order to ensure the welfare of the horses while avoiding any complications regarding the

18   bankruptcy stay.  In support of their *ex parte* Application, the Banks filed declarations from Dr.

19   Michael Russell, DVM (Docket Entry 18), Vicki Lozano – the Lassen County Superior Court-

20   appointed Receiver (Docket Entry 17), and then counsel for the Banks Austin T. Beardsley and

21   Timothy M. Ryan (Docket Entries 15-16).

22         Dr. Russell had provided an earlier declaration in relation to the Lassen County matter.

23   (Declaration of Timothy M. Ryan in Support of Opposition ("Ryan Decl."), at ¶ 7.)  When The

24   Ryan Firm contacted Dr. Russell to provide a declaration containing the same information in

25   support of the Banks' *ex parte* Application in this Court, they learned Dr. Russell was in Peru.

26   (Ryan Decl. at ¶ 7.)  The Grace Foundation's executive director, Beth DeCaprio, offered to help

27   The Ryan Firm communicate with Dr. Russell while he was out of the country.  (Ryan Decl. at

28   ¶ 8.)  Because time was of the essence,  because the prior declaration by Dr. Russell contained all

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

2

of the needed information, and because The Ryan Firm understood from Ms. DeCaprio that Dr. Russell was the staff veterinarian for the Grace Foundation and had a close personal relationship with Ms. DeCaprio, The Ryan Firm agreed.  (Ryan Decl. at ¶ 8.)  The Ryan Firm restated the original information in the body of a new declaration.  (Ryan Decl. at ¶ 9.)  Ms. DeCaprio declined to provide Dr. Russell's contact information to The Ryan Firm, but agreed that she would go over the issues with him, and obtain his permission to utilize his signature on the declaration. (Ryan Decl. at ¶ 10.)  Prior to filing Dr. Russell's Declaration, Ms. DeCaprio informed The Ryan Firm that Dr. Russell was in agreement with the contents of his declaration and that Dr. Russell agreed that The Ryan Firm could affix his signature to the declaration.  (Ryan Decl. at ¶ 11; *see generally* Declaration of Austin Beardsley ("Beardsley Decl.").)

The Banks requested their *ex parte* Application be heard on shortened time, and the Court set the matter for hearing on September 2, 2011.  (Docket Entries 13 and 27.)  After hearing, the Court **denied** the *ex parte* Application without prejudice.  (Docket Entries 35-36.)

On September 19, 2011, the Banks filed a noticed Motion for Relief from Automatic Stay and to Excuse Turnover by Receiver.  (Docket Entry 46.)  The Motion was set for hearing on regular notice for October 17, 2011.  (Docket Entry 47.)  In support of this Motion, the Banks filed only two declarations, one on behalf of Receiver Vicki Lozano and one on behalf of Timothy Ryan.  (Docket Entries 48-49.)  The Banks did not resubmit Dr. Russell's Declaration at this time because the horses had already been transferred before the Motion was filed.  (Ryan Decl. at ¶ 14.) After briefing and argument, this Court entered a ruling on October 17, 2011, granting the Motion in part, and excusing the turnover by Receiver.  (Docket Entry 96.)  The Court entered an Order setting forth its ruling on October 21, 2011.  (Docket Entry 103.)

Over a year later, on December 13, 2012, Beth DeCaprio, Executive Director of the Grace Foundation, contacted current counsel for the Banks, Emma Dill, and explained that the Grace Foundation believed that the Declaration of Dr. Russell had been altered.  (Declaration of Emma L. Dill in Support of Opposition ("Dill Decl."), ¶ 2.)  That same day – and on several subsequent days – the Grace Foundation sent an email to Ms. Dill confirming the conversation regarding Dr. Russell's Declaration.  (*Id.* at ¶ 2, Exs. A-C.)

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

Almost another year later, on or about September 23, 2013, current counsel for the Grace Foundation, Christine Garcia, contacted Ms. Dill requesting that the Banks stipulate to strike the Declaration of Dr. Michael Russell. (*Id.* at ¶ 3.) The Banks did not stipulate because Ms. Garcia did not provide any basis to strike the declaration. (*Id.*) On or about September 27, 2013, the Grace Foundation filed a Notice of Motion to Strike. (Docket Entry 237.) However, it failed to include a Motion or a Memorandum of Points and Authorities in Support of that Motion. The Banks' counsel alerted the Grace Foundation to the flaw (Dill Decl. at ¶ 4) and thereafter the Grace Foundation withdrew its Notice of Motion to Strike (Docket Entry 248).

Despite acknowledging its awareness of the allegedly "false" declaration in December 2012, and attempting to file this same Motion to Strike in September 2013, the Grace Foundation waited until February 2014 to file the instant version of the Motion to Strike. (Docket Entry 252.)

In the year between this Court's October 21, 2011 Order and the Grace Foundation's first conversations with the Banks' counsel about Dr. Russell's Declaration on December 13, 2012, the Grace Foundation filed suit in El Dorado County Superior Court against various parties (including the Banks and Debtor Mr. Bennett), seeking damages for the care of the horses that are the subject of the instant Motion. (Dill Decl. ¶ 5, Ex. G.) That case was subsequently transferred to Orange County Superior Court as Case No. 30-2012-00612863-CU-BC-CJC (the "Orange County Suit"). (Dill Decl. ¶ 5.) The operative Fourth Amended Complaint seeks compensatory and punitive damages in excess of $2,000,000, and asserts various claims for quantum meruit, fraud, negligent misrepresentation, and indemnification against parties including the Banks, their former counsel Mr. Ryan and his firm, the Receiver, and Lassen County who assisted in the transfer of the horses. (Dill Decl. ¶ 5. Ex. F.) That action is now quickly approaching summary judgment, and is set for trial in mid-July 2014. (Dill Decl. ¶ 5.)

Since filing the Orange County Suit, the Grace Foundation has sought duplicative relief in multiple courts. First, the Grace Foundation has apparently attempted to assert a lien similar to the one it requests here in El Dorado Superior Court. (Dill Decl. ¶ 7, Ex. H.) The Grace Foundation has also attempted to assert a similar lien against parties in the Lassen County Superior Court action where the Receiver was appointed and the horses were transferred – Case No. 45679 and

4

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

1    related cases.  (Dill Decl. at ¶ 8.)  These cases involve various parties' rights to the Subject

2    Property, including Wells Fargo Bank as Trustee's rights to an equitable lien and equitable

3    mortgage.  (Dill Decl. at ¶ 6.)  The Lassen Court has repeatedly refused to allow the Grace

4    Foundation to assert any lien or other claims related to the care of the horses because the requested

5    relief would duplicate the pending Orange County Suit.  (Dill Decl.  ¶ 8, Ex. I.)[1]

6    **III.    ARGUMENT**

7            **A.    The Grace Foundation's Motion To Strike Is Procedurally Improper As It Is**

8                    **An Evidentiary Objection That Should Have Been Brought At Or Prior To**

9                    **The Hearing On The Matter.**

10           The Grace Foundation seeks to strike the Declaration of Dr. Russell in a vacuum.  Dr.

11   Russell's Declaration was filed over two and a half years ago to support the Banks' *ex parte*

12   Application to Excuse Turnover by Receiver.  (Docket Entry 14 and 18.)  The Grace Foundation's

13   Motion to Strike is an evidentiary motion that is not tied to any substantive motion.  It is therefore

14   procedurally defective and the Motion should be denied for that reason alone.

15           Under Federal Rule of Civil Procedure ("FRCP") 12(f), made applicable by Federal Rule

16   of Bankruptcy Procedure 7012, a court "may order stricken from any *pleading* any insufficient

17   defense or any redundant, immaterial, impertinent, or scandalous matter."  Only pleadings are

18   subject to such motions to strike.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885

19   (1983).  Dr. Russell's Declaration is not a pleading, but instead, was evidence submitted in support

20   of an *ex parte* Application to Excuse Turnover by Receiver. The Grace Foundation does not set

21   forth the legal basis for its Motion to Strike, but it appears to be framed as an evidentiary objection

22   to the Declaration of Dr. Russell.  (Docket Entry 14 and 18.).  The Grace Foundation's reliance on

23

24           [1] The Banks respectfully request that the Court take judicial notice of the existence of the
     Orange County case and the Grace Foundation's original Complaint and Fourth Amended

25   Complaint (attached to the Declaration of Emma L. Dill as Exhibits G and F, respectively), as well
     as the Grace Foundation's El Dorado County Superior Court Notice of Lien and the Orders of the

26   Lassen County Superior Court (attached to the Declaration of Emma L. Dill as Exhibits H and I,
     respectively).  Fed. R. of Evid. 201(b) ("The court may judicially notice a fact that is not subject to

27   reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose
     accuracy cannot reasonably be questions.") and (c) ("The court . . . (2) must take judicial notice if

28   a party requests it and the court is supplied with the necessary information.").

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

1  Local Rule 9014-1(d)(6) is misplaced.  To the extent it has any relevance, this evidentiary

2  objection should have been raised at the time the *ex parte* Application was filed in August 2011,

3  when it had notice of the hearing, and it should have been raised in conjunction with an

4  Opposition or other motion in response to the *ex parte* Application.  The Grace Foundation's

5  Motion comes too late, without context, and should be denied.

6        **B.**      **The Motion To Strike Is A Disguised Motion For Relief From Order And**

7              **Should Be Denied As Untimely And Unnecessary.**

8        The Grace Foundation's Motion, though noticed as a Motion to Strike, appears to be a

9  disguised Motion for Relief from Order or Judgment, which would have to be brought pursuant to

10  Federal Rule of Civil Procedure 60(b), made applicable by Federal Rule of Bankruptcy Procedure

11  9024.  Specifically, the Grace Foundation appears to argue that the Court should reconsider its

12  October 21, 2011 Order Excusing Turnover by Receiver pursuant to 11 U.S.C. § 543(d)(1)

13  because the Declaration of Dr. Russell, which the Grace Foundation asserts the Court relied on,

14  was allegedly falsified. (Docket Number 103.)  The Court should reject this disguised motion for

15  two reasons.  First, the request for relief from the Order has been brought well beyond the one-

16  year time period for relief.  Second, this Court never relied on Dr. Russell's Declaration when

17  issuing its Order Excusing Turnover by Receiver.

18             1.      Pursuant To Bankruptcy Rule 9024, The Grace Foundation's Motion

19                  Should Have Been Brought No Later Than October 2012.

20        Bankruptcy Rule 9024 provides that Federal Rule of Civil Procedure 60 ("FRCP 60")

21  applies to nearly all situations in which a party seeks relief from a judgment or order.[2]  FRCP

22  60(b) provides that:

23             On motion and just terms, the court may relieve a party or its legal

24             representative from a final judgment, order, or proceeding for the

25             following reasons:

26             . . .

27          [2]     Bankruptcy Rule 9024 provides three exceptions where Fed. R. Civ. Proc. 60 does

28  not apply in seeking relief from a judgment or order, none of which are applicable to this Motion.

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

1       (3) fraud (whether previously called intrinsic or extrinsic),

2           misrepresentation, or misconduct by an opposing party . . . .

3       Here, the Grace Foundation argues that the "false" Declaration of Dr. Russell caused the

4   Court to issue its Order Excusing Turnover by Receiver and, though never expressly stated, it

5   appears that the Grace Foundation is arguing that the October 21, 2011 Order to Excuse Turnover

6   should therefore be set aside.  (Motion to Strike, 12:18-15:6; *see also* Docket Entry 103.)  Such

7   motion should have been brought no later than October 21, 2012.  Rule 60 provides specific

8   timing for motions under Rule 60(b):

9           *Timing.* A motion under Rule 60(b) must be made within a

10          reasonable time – and for reasons (1), (2), and (3) <u>no more than a</u>

11          <u>year after the entry of the judgment or order or the date of the</u>

12          <u>proceeding.</u>

13  FRCP 60(c)(1) (emphasis added).

14      The Grace Foundation cites to the Court's October 17, 2011 Minute Order, apparently

15  arguing that the Court relied on the Declaration of Dr. Russell when it made its ruling.  (Motion to

16  Strike, 14:17-22 (quoting Civil Minutes, Docket Entry 96).)  This ruling was entered as an Order

17  on October 21, 2011.  (Docket Entry 103.)  Pursuant to FRCP 60(c), any motion to set aside would

18  have to be brought "no more than a year after the entry of the . . . order or the date of the

19  proceeding."  Therefore, the latest the Grace Foundation could bring such Motion would have

20  been October 21, 2012, nearly a year and a half ago.

21      Even assuming for argument's sake that the Grace Foundation did not know about the

22  allegedly false declaration before October 21, 2012, and assuming for argument's sake only that

23  the Court has authority to act outside the one-year time limit – the facts are undisputed that the

24  Grace Foundation, through Beth DeCaprio, its founder and executive director, knew of the

25  allegedly false declaration by no later than December 13, 2012.  It was on this date that Ms.

26  DeCaprio called Emma Dill, counsel for the Banks, claiming that the declaration had been altered

27  or forged; and on December 13, 14, and 20, 2012, Ms. DeCaprio sent email communications

28  regarding the declaration to Ms. Dill.  (Dill Decl. at ¶2, Exs. A-C.)  The Grace Foundation's

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

7

1  counsel even acknowledges that Ms. Dill and Ms. DeCaprio spoke about this alleged false

2  declaration in December 2012.  (Dill Decl. at ¶ 3, Ex. D.)  Despite acknowledging its awareness of

3  the allegedly false declaration, the Grace Foundation waited over a year to file its Motion.[3/]

4      Such delay is unreasonable and unjustified.  The Court should reject the Grace

5  Foundation's disguised Motion to Set Aside Order for this independent reason.

6      2.    The Court Did Not Rely On The Allegedly False Declaration In Issuing Its

7          Order To Excuse Turnover.

8      Even assuming this disguised Motion was brought in a timely fashion, which it was not, it

9  should still be denied because the Court did not rely on the alleged false declaration in issuing its

10 Order to Excuse Turnover.  (Docket Entry 103.)

11     The Declaration of Dr. Russell was filed in support of an *Ex Parte* Application to Excuse

12 Turnover, which was filed by prior counsel for the Banks, The Ryan Firm, on August 25, 2011.

13 (Docket Entries 14-23.)  The Ryan Firm simultaneously requested that the Application to Excuse

14 Turnover be heard on shortened time.  (Docket Entry 13.)  The Court set the matter for hearing on

15 September 2, 2011, at which time it **denied** the Application to Excuse Turnover without prejudice.

16 (Docket Entries 27 and 35-37.)

17     Subsequent to the denial of the *Ex Parte* Application to Excuse Turnover, the Banks filed a

18 properly noticed Motion to Excuse Turnover by Receiver on September 19, 2011, with a hearing

19 set on regular notice for October 17, 2011.  (Docket Entries 46-56.)  In support of their Motion,

20 the Banks offered only the declarations of Vicki Lozano and Timothy M. Ryan. (Docket Entries

21 48-49.)  The Banks did not refile the Declaration of Michael Russell in support of their Motion,

22 nor did they rely on the declaration in bringing their Motion to Excuse Turnover, because the

23 horses had already been transferred off the Subject Property and so the information set forth in Dr.

24

25 [3/]  The Grace Foundation originally filed its Notice of Motion to Strike on September 30, 2013 (Docket Entry 236), but it failed to file a corresponding Motion or Memorandum of
26 Points and Authorities in Support of its Motion.  The Grace Foundation withdrew its procedurally deficient Notice of Motion on October 20, 2013 (Docket Entry 248) after the Banks' counsel
27 noted the deficiency.  At that time, the Grace Foundation's counsel indicated that the Memorandum of Points and Authorities had been inadvertently omitted and that the full papers
28 would be refiled in the next two weeks.  (Dill Decl. ¶ 4, Ex. E.)

8
OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

1   Russell's Declaration was no longer relevant.  (*See generally*, Memorandum of Points and

2   Authorities in Support of Motion for Relief from Stay and to Excuse the Turnover Requirement,

3   Docket Entry 55; Ryan Decl. at ¶ 14.)

4        The Grace Foundation quotes from the Court's October 17, 2011 ruling to assert that the

5   Court relied on the Declaration of Dr. Russell in making its ruling.  (Motion to Strike, 14:17-22.)

6   This quote is out of context.  Read in its entirety, the Court's ruling was premised on its decision

7   to grant relief from stay to the Banks for purposes of finalizing judgment in the state court action

8   and because of the mismanagement of the business located on the subject property.  (Civil

9   Minutes, Docket Entry 96, pp. 3-4.)

10       The Grace Foundation has presented no legitimate basis to disturb the Court's Order to

11  Excuse Turnover.  The Court should deny its Motion as a result.

12       **C.      <u>The Allegations Regarding Dr. Russell's Declaration Are Simply False.</u>**

13       Aside from the numerous procedural issues with this Motion, the Grace Foundation's

14  Motion to Strike should also be denied because it mischaracterizes the circumstances surrounding

15  Dr. Russell's Declaration.  As set forth in the Declaration of Timothy M. Ryan, Dr. Russell's

16  Declaration was actually obtained with the help and assistance of the Grace Foundation –

17  including Ms. DeCaprio, the executive director of the Grace Foundation, who submits a

18  declaration in support of the instant Motion. (Ryan Decl. at ¶¶ 8-12; *see also* Beardsley Decl. at

19  ¶¶ 2-4.)

20       As Mr. Ryan explains, Dr. Russell had provided an earlier declaration for the Lassen

21  County matter. (Ryan Decl. at ¶ 7.)  When The Ryan Firm contacted Dr. Russell to provide a

22  declaration in support of the *ex parte* Application, they learned Dr. Russell was in Peru.  (Ryan

23  Decl. at ¶ 7.)  The Grace Foundation's executive director, Beth DeCaprio, offered to help The

24  Ryan Firm communicate with Dr. Russell while he was out of the country. (Ryan Decl. at ¶ 8.)

25  Because time was of the essence, because Dr. Russell's prior declaration contained all the

26  necessary information, and because The Ryan Firm was aware that Dr. Russell was the Grace

27  Foundation's staff veterinarian and had a close personal relationship with Ms. DeCaprio, The

28  Ryan Firm agreed and restated the information from Dr. Russell's prior declaration in a new

9

declaration.  (Ryan Decl. at ¶¶ 8-9.)  Ms. DeCaprio declined to provide Dr. Russell's contact

information to The Ryan Firm, but agreed that she would go over the issues with him, and obtain

his permission to utilize his signature from the original declaration on the second declaration.

(Ryan Decl. at ¶ 10.)  Before The Ryan Firm filed Dr. Russell's Declaration, Ms. DeCaprio

informed The Ryan Firm that Dr. Russell was in agreement with the contents of his declaration

and that Dr. Russell agreed that The Ryan Firm could affix his signature to the declaration.  (Ryan

Decl. ¶ 11; *see generally* Beardsley Decl..)

The Grace Foundation's attempts to now strike that declaration – and Ms. DeCaprio's

attempts in particular – are therefore entirely baseless.  The Court should deny the Grace

Foundation's Motion.

**D.     The Grace Foundation's Request To Enforce Its Lien Against The Debtor's
Real Property Is Meritless And Should Be Denied.**

The Grace Foundation lastly demands that this Court "exercise its discretion to permit TGF

to assert its lien against Debtor's real property."  This assertion is made with absolutely no legal or

factual basis.  Indeed, the Grace Foundation does not cite any authority allowing imposition of a

lien on assets of a bankruptcy estate – or even any authority allowing imposition of a lien on

property under any circumstances.  (*See* Motion at p. 16.)  Nor is there any reason to allow such a

lien.

As an initial matter, the Grace Foundation is already a creditor in this Bankruptcy,

claiming it is entitled to $2,000,000 from the bankruptcy estate.

More importantly, the Grace Foundation initiated a state court case that is currently

pending in Orange County Superior Court, Case No. 30-2012-00612863-CU-BC-CJC, wherein it

seeks to recover damages for the care of the horses that are the subject of the instant Motion.  (Dill

Decl. at ¶ 5.)  In that case, the Grace Foundation seeks compensatory and punitive damages in

excess of $2,000,000, asserting various claims for quantum meruit, fraud, negligent

misrepresentation, and indemnification against parties including the Banks, their former counsel

Mr. Ryan and his firm, the court-appointed Receiver, and Lassen County who assisted in the

transfer of the horses.  (Dill Decl. ¶ 5, Ex. F.)  In fact, the Grace Foundation originally included

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

10

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

1    the Debtor Mr. Bennett in that action.  (Dill Decl. ¶ 5, Ex. G.)  That action is now quickly

2    approaching summary judgment, and is set for trial in mid-July 2014.  (Dill Decl. ¶ 5.)

3         In addition to its bankruptcy claim and the Orange County Suit, the Grace Foundation has

4    apparently also attempted to assert a similar lien in El Dorado Superior Court.  (Dill Decl. ¶ 7. Ex.

5    H.)  Not only that, the Grace Foundation has also attempted to assert a similar lien against parties

6    in the related Lassen County Superior Court action where the Receiver was appointed and the

7    horses were transferred.  (Dill Decl. ¶ 8, Ex. I.)  The Lassen County Court has repeatedly refused

8    to allow the Grace Foundation to assert any lien or other claims related to the care of the horses

9    because the requested relief would duplicate the pending Orange County Suit.  (*Id.*)

10        Now having lost in the Lassen County Court, and apparently having tired of its own

11   Orange County Suit, the Grace Foundation appears to be trying its hand here.  It would be unjust

12   and inequitable to allow the Grace Foundation to assert a lien against the Debtor's real property

13   without any legal basis, where it has already affirmatively chosen to pursue its alleged damages in

14   the state courts, and where it has already been denied similar relief by another court.

15        Nor should this Court be required to expend additional resources on the issues raised by

16   the Grace Foundation.  Indeed, this Court already resolved any issues related to the well-being of

17   the horses that are the subject of the Grace Foundation's motion – first when the horses were

18   abandoned by the estate (Docket Entry 136), and then when this Court lifted the automatic stay in

19   order to allow the Lassen County Superior Court to enter orders related to the horses (Docket

20   Entry 222).  There is nothing left to be done.  The Grace Foundation's Motion comes too late.

21        The Grace Foundation's Motion should be denied.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL

## IV.    CONCLUSION

For the reasons set forth above, the Court should deny the Grace Foundation's Motion to Strike in its entirety.

Dated:  February 24, 2014

**BRYAN CAVE LLP**

By:  /s/ Bahareh Wullschleger
    Bahareh Wullschleger
Attorneys for BANK OF AMERICA, N.A., as successor by merger to BAC HOME LOANS SERVICING, L.P. and WELLS FARGO BANK, N.A. as Trustee for MLMI Trust Series 2005-HE3

BRYAN CAVE LLP
560 MISSION STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105

OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL