Case 11-40155    Filed 03/03/14    Doc 279

Christine L. Garcia, SBN 209701
The Animal Law Office
2404 California St., #4
San Francisco, CA 94115
Telephone: 415-297-3179
Facsimile: 415-358-9947
Email: Christine@animalattorney.com

Attorneys for Creditor The Grace Foundation of Northern California, A California Corporation

UNITED STATES BANKRUPTCY COURT

| IN RE: | ) CASE NO.  11-40155 |
|---|---|
| | ) DC No. CLG -2 |
| DWIGHT ALLEN BENNETT, | ) DECLARATION OF BETH DECAPRIO  IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO STRIKE DECLARATION OF MICHAEL RUSSELL, DVM AND FOR EQUITABLE LIEN AGAINST DEBTOR'S REAL PROPERTY |
| DEBTOR. | |
| | ) F.R.C.P. RULE 12(4) (F), LOCAL RULE 9014-1 |
| | ) Date:  March 10, 2014 |
| | ) Time: 10am |
| | ) Courtroom: 28 |
| | ) Location:  Department A, Sacramento Division, 501 I Street, 7th Floor |
| | ) Honorable Judge: Michael S. McMannus |

I, Beth Decaprio , do hereby declare as follow:

1. I make the following comments in regards to Document 268 filed on 2/24/14 the Declaration of Timothy Ryan in Opposition to the underlying Motion.

2. Dr. Russell and I were not dating or even talking at the time that Dr. Russell's declaration was drafted.  We had ended our relationship in May or June of

-1-
DECL. OF BETH DECAPRIO IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO STRIKE AND FOR EQUITABLE LIEN

2011, and as emails show, the relationship between Dr. Russell and I was stressed to say the least in August of 2011.

3. I had no additional contact information for Dr. Russell during the salient times. The Ryan Firm had communicated with Dr. Russell directly, less than three weeks prior to the filing of this declaration.

4. There are no emails existing between The Ryan Firm and myself that would verify the statements made by Mr. Ryan in his declaration. I have provided my phone records to further discredit the notion that there were communications between myself and The Ryan Firm during this time. I have reviewed all of the phone records that are currently in my possession, and there are no communications between 8/19/11 – 8/25/11. Attached hereto are true and correct copies of my phone records spanning this time. *See* Exhibit A: Telephone Records.

5. The Ryan Firm did not provide a declaration to me for approval. This is another misrepresentation to the court.

6. Mr. Ryan stated in his deposition that he did NOT tell me about the bankruptcy, or the August 25, 2011 motion. *See* Exhibit B: Deposition of Timothy Ryan.

7. I was not informed of the bankruptcy or of the Ex Parte filing until after September 2, 2011, and Mr. Ryan testified to this in his deposition.

8. Furthermore, I did not 'refuse to give The Ryan Firm Dr. Russell's contact information.' The Ryan Firm already had Dr. Russell's contact information, and

had been in contact with him as recently as three weeks prior, when they were drafting the only declaration Dr. Russell ever approved. The emails between Dr. Russell and Tyler Kemp (of the Ryan Firm) are proof of this. Further, in an email string between Dr. Russell and Pete Heimbigner, Dr. Russell references a phone call he had received from Mr. Ryan (or someone at The Ryan Firm).

9. I did not give approval for Dr. Russell's declaration to the Banks. It is a misrepresentation to this Court that I would state that Dr. Russell gave me his approval to copy and paste his signature from a previous declaration onto this one. Additionally, at the time of the drafting of this declaration, I was not informed nor did I have any idea that Mr. Bennett had filed for bankruptcy. Furthermore, I was not informed that there was a motion being filed that required an additional declaration from Dr. Russell.

10. If I had known about the bankruptcy filing, I would not have entered into an agreement with the Banks' Receiver and the County of Lassen that gave me ownership of the horses one day after the Motion filed by the Banks asking for a relief from the Automatic Stay had been filed.

11. I would never give authority for The Ryan Firm to create a declaration on behalf of anyone else, including Dr. Russell, nor would I authorize the copying and pasting of a signature onto a declaration. Further, I would not authorize a declaration without first seeing the declaration, and I would not have authorized this declaration because it contained notable errors.

12. I have ordered the phone records from this time period to show all communications between The Ryan Firm and myself. The records have arrived and the salient dates are attached hereto as <u>Exhibit A</u>.

13. I dispute the allegations asserted in paragraph 8(a)(b), namely "at that time The Grace Foundation's executive director Beth DeCaprio informed The Ryan Firm (either Mr. Ryan or Mr. Beardsley) that she would help communicate with Dr. Russell.  A prior declaration by Dr. Russell had all of the information we needed.  We agreed to this, as time was of the essence and we understood from DeCaprio that:
   1.  Dr. Russell was the staff veterinarian for The Grace Foundation; and
   2.  Dr. Russell and DeCaprio had a close relationship."

14. Dr. Russell and I were not in a relationship at this time.  We were not in communication except for work related matters.  The only personal emails during this time are relating to our split.  I have an email that was sent while Dr. Russell was on his trip, but no mention of the declaration is made.  I also have an email from when he returned that clearly states the knowledge that I had at the time about our ability to place the horses, etc.... at no time is the declaration or bankruptcy mentioned in either of these emails.  *See* Exhibit C: Emails.

15. I was not part of the communication during the drafting of Dr. Russell's authentic declaration, and I would not have been involved in drafting a second.  The Ryan Firm could and would have emailed Dr. Russell. The Ryan Firm already had Dr. Russell's contact information.  If a representative from The Ryan Firm had asked me to communicate with Dr. Russell at this time, I would have told them to email him.

16. I dispute paragraph #10 which states: "DeCaprio declined to provide the contact information for Dr. Russell, but she agreed that she would go over the

-4-
DEC. OF CHRISTINE GARCIA RE MOTION TO STRIKE AND FOR EQUITABLE LIEN

issues with him, and obtain his permission to utilize his signature from the prior declaration on the new declaration. Mr. Beardsley worked with DeCaprio to be sure that Dr. Russell agreed with all of the information in his new declaration and agreed to allow us to put his signature from the old declaration onto the new declaration and file it with the court."

17. I dispute paragraphs 12 and 13 herein which state: "we were informed by DeCaprio that she was going to try to alert the media to the hearing and bring more publicity to the plight of these Whispering Pines horses, and thus to The Grace Foundation"... and "the motion was heard on September 2, 2011, and once the court learned that the Whispering Pines horses were removed and safe, the court deemed the "emergency" resolved, denied the motion, and directed The Ryan Firm that the motion should be..."

18. I was not aware of the bankruptcy filing or the bankruptcy motion. I knew nothing about the hearing, and therefore could not have 'alerted the media' about a bankruptcy filing, motion and hearing that I knew nothing about. All of our media releases are sent through Constant Contact, and Constant Contact shows that no press releases were sent out during this time.

19. The Judge in the Bankruptcy court did not deem the "emergency resolved"; the motion was denied. The courts were confused as to why the motion was filed 'ex parte', and the Judge thought the horses were still on the Whispering Pines property. Beardsley never informed the Judge that the horses' ownership had been signed over and they'd been transferred to The Grace Foundation on August 26, 2011 , one day after the ex parte motion was filed.

20. The Judge asked Mr. Beardsley directly if The Grace Foundation believed they

owned the horses or thought they could sell or place them, and under oath Mr. Beardsley responded "no." Clearly The Grace Foundation DID believe that they owned the horses since they'd been given Final Disposition (ownership) papers signed by representatives from Lassen County and the Banks' Receiver.'

21. The attached Exhibits are all true and correct copies of the documents that they purport themselves to be.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of March, 2014 at El Dorado County, California.

BETH DECAPRIO—DECLARANT