# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Case Title :** | Dwight Alan Bennett | **Case No :** | 11−40155 − A − 7 |
| | | **Date :** | 3/10/14 |
| | | **Time :** | 10:00 |

| | | |
|---|---|---|
| **Matter :** | [252] – Motion/Application to Strike [CLG−2] 18 Declaration Filed by Creditor The Grace Foundation of Northern California (fdis) | OPPOSED |

**Judge :** Michael S. McManus
**Courtroom Deputy :** Sarah Head
**Reporter :** Diamond Reporters
**Department :** A

**APPEARANCES for :**
**Movant(s) :**
    Creditor – Beth Decaprio
(by phone)  Creditor's Attorney – Christine Garcia
**Respondent(s) :**
(by phone)  Creditor's Attorney – Bahareh Wullschleger

MOTION was :
Denied
See final ruling below.

The court will issue a minute order.

Final Ruling: The motion will be denied.

The Grace Foundation of Northern California asks the court to strike a declaration executed by Michael Russell, DVM (Docket 18), filed by Wells Fargo Bank and BAC Home Loans Servicing with their motion to excuse turnover by a state court receiver, filed on August 25, 2011 and heard by the court on September 2, 2011. Dockets 14 & 18. The movant contends that Dr. Russell's declaration was forged, representing facts that were not true, including that the health of the debtor's horses in April 2011 was in "serious jeopardy.

The court denied the motion to excuse turnover on September 2, 2011. The court granted in part a later such motion on October 21, 2011. Dockets 46, 96, 103.

The movant also asks that the court impose an equitable lien against the debtor's real property.

Wells Fargo Bank and Bank of America, a successor in interest to BAC Home Loans Servicing, oppose the motion.

Opposition to the motion has been filed by the debtor as well.

Fed R. Civ. P. 12(f), as made applicable here by Fed. R. Bankr. P. 7012(b), provides that:

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Whittlestone, Inc. v. Handi Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). The disposition of a motion to strike lies within the discretion of the court and such motions are disfavored and infrequently granted. Garcia–Barajas v. Nestle Purina Petcare Co., No. 1:09–CV–00025 OWW DLB, 2009 WL 2151850, at *2 (E.D. Cal. July 16, 2009) (citing Legal Aid Serv. of Or. v. Legal Serv. Corp., 561 F. Supp. 2d 1187, 1189 (D. Or. 2008)).

The court will not strike the declaration filed in support of the motion to excuse turnover for several reasons.

First, the motion to strike is untimely because the court has already considered the subject declaration in adjudicating the motion.

The court cannot strike a pleading that it considered as part of the record of a motion that has been adjudicated. The court would have to first reconsider or vacate the order entered on the motion with which the pleading was submitted, before the court could even consider striking the declaration at issue.

More, striking the declaration as requested by the movant, without first reconsidering or vacating the order entered based on the record established, in part, by the declaration, would cause the court to collaterally undermine its own order disposing of the motion to excuse turnover. This makes no sense.

Stated differently, because the court has already ruled on the motion to excuse turnover and has considered the declaration in ruling on that motion, the declaration cannot be "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To the extent applicable, the court has considered the declaration as part of the record on the motion to excuse turnover and has ruled on that motion based on that record, including the declaration.

Second, by referring to a "defense or any redundant, immaterial, impertinent, or scandalous matter," Rule 12(f) implies that the striking of the "matter" may be done only while the matter is still actionable, i.e., pertaining to the resolution of a pending dispute. Once the dispute is no longer pending, the "matter" mentioned in Rule 12(f) can no longer be relevant to the resolution of the dispute and it makes no sense to strike it.

As the subject declaration was part of a motion that has been adjudicated already and it can no longer be relevant to the resolution of a dispute, relief under Rule 12(f) is improper.

Third, the only way for the declaration at issue to have an impact that goes beyond the dispute raised in the underlying motion, is for the declaration to have some impact under the doctrines of claim preclusion, issue preclusion, or judicial estoppel. This is not the case here.

The motion now before the court makes no mention of claim preclusion, issue preclusion or judicial estoppel.

Moreover, the movant was not a party to the motion to excuse turnover. The only parties to the motion were the former chapter 11 debtor, the bank, and the state court receiver. Although the movant may have had standing to contest the motion to excuse turnover, the court does not see how the statements in the declaration, to the extent adopted as findings by this court, could be binding on the movant for claim preclusion, issue preclusion or judicial estoppel purposes. This makes striking of the declaration unnecessary.

Fourth, even if the court were to deem the movant's motion to be a motion to reconsider or vacate the order entered on the motion to excuse turnover, the court cannot grant it.

There is no factual or legal basis in the motion for the court to reconsider its order on the motion to excuse turnover. The motion does not even attempt to brief the legal authority permitting the reconsideration or vacating of an order.

Further, the court denied the motion to excuse turnover on September 2, 2011 without prejudice, meaning that the court did not find the motion meritorious at that time. Dockets 35 & 36. Asking the court to reconsider or vacate the order denying the motion makes no sense because by denying the motion the court implicitly did not find the subject declaration helpful.

Although the court granted in part a subsequent motion to excuse turnover on October 21, 2011 and the court's ruling on that motion mentioned that the horses were in "seriously poor health," that is not the sole reason the court excused the receiver from the turnover requirements of 11 U.S.C. § 543. Docket 96 at 4;

Dockets 18, 46, 103. Most notable was the fact that the court was granting relief from stay for the state court action to be completed and the basis for that relief was the debtor's bad faith in filing this bankruptcy case. Docket 96 at 2, 4. Other factors upon which the court based its decision included: the lack of pre–petition insurance coverage for the improvements on the debtor's 40–acre property, the banks' failure to receive payments on a loan for over two years, the debtor's position in state court that the improvements should have been subject to the deed of trust securing the loan, and the debtor's overall mismanagement of the business operated on the property. Docket 96 at 3–4.

Therefore, this court is not persuaded that the outcome of the second motion to excuse turnover would change, even if the court were to agree with the movant that the banks or their counsel forged Dr. Russell's declaration.

A motion to reconsider or vacate the order entered on the motion to excuse turnover also is untimely.

Fed. R. Civ. P. 60(b), as made applicable here by Fed. R. Bankr. P. 9024, allows the court to set aside or reconsider an order or a judgment for:

"(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

"A motion under Rule 60(b) must be made within a reasonable time and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

The motion does not explain why it has taken over two and one–half years for the movant to move to reconsider or vacate the order on the motion to excuse turnover. A motion under Rule 60(b) based on reasons (1), (2) and / or (3) would be no longer timely.

Fifth, the movant's principal complaint in the motion is that this court should strike Dr. Russell's declaration because it misrepresents information pertaining to the treatment of the debtor's horses during the time the state court had appointed a receiver to oversee the care of the animals.

However, this court no longer has subject jurisdiction over any claims pertaining to the horses, given that the chapter 7 trustee obtained an order from this court abandoning the horses back to the debtor. Dockets 135 & 136; 11 U.S.C. § 554(a). And, it was the state court that appointed the receiver, not this court, meaning that the state court should be resolving disputes relating to alleged misconduct by the receiver and the movant's entitlement to compensation or reimbursement for the case of the houses. Hence, disputes such as these between the movant, the debtor, the receiver, and the banks should be resolved by the state court that appointed the receiver and ordered the removal of the horses.

Sixth, while the court has located Dr. Russell's declaration indicating that he did not authorize changes to his declaration filed by the banks in support of to excuse turnover (Docket 238), the court has also located Dr. Russell's report on the horses, where he states that "[t]he conditions of the horses . . . are seriously concerning," with an average Henneke body condition score of 3.0 out of 9.0. Docket 256 at 2 and 3. According to Dr. Russell, the score indicated to him that "many horses are less than 3.0 which indicates starvation." Docket 256 at 3. He also noted that the "sanitary conditions of the facilities are very poor," with "[a]ccumulated fecal matter" present. Docket 256 at 3.

In other words, regardless of whether Dr. Russell's declaration was altered without his permission, Dr. Russell's report on the horses agrees with the court's findings of fact in its ruling on the banks' second motion to excuse turnover that "a veterinarian found the horses at the property to be in seriously poor health." Docket 96 at 4.

Thus, even if the court were to reconsider its order on the banks' second motion to excuse turnover and it were to strike Dr. Russell's declaration (Docket 18), to the extent it had been altered without his permission, the outcome on that motion would still be the same – the motion would still be granted. And, it still would have been granted, for the reasons explained above, for reasons independent of the condition of the horses.

The movant also argues that the banks or their counsel misrepresented that the horses were turned over to it by order of the state court based on Dr. Russell's evaluation of the horses' condition. They argue that the

debtor instead voluntarily turned them over to it. Assuming this is true, again the result would be the same because there were other grounds for granting the underlying motion.

Finally, the court will deny the movant's request for the imposition of an equitable lien on the debtor's real property for the movant's expenses in caring for the horses. As the court noted above, the bankruptcy trustee abandoned the horses to the debtor. The movant then should look to the debtor for payment of the expenses incurred for the care of the horses.

More important, as the court recalls, the real property upon which the movant seeks to impose a lien is still property of the estate. The court sees no basis for imposing a lien on estate property for expenses incurred to preserve property that no longer belongs to the estate.

Further, any lien arising from the car of the horses should arguably be impressed on the horses, not the real property. If the movant's services preserved anything, it was the horses, not the real property.

And, even if there were grounds for imposing a lien on the real property, such relief requires an adversary proceeding. See Fed. R. Bankr. P. 7001(2), (7). The court cannot grant such relief on a motion. The motion will be denied.